1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

Kirti Tiwari, Seung Yoon Yang, Amandeep
Singh, Duncan Makau, Valdeta Mehanja,
Luobin Sun, and Rui Zhang,

                    Plaintiff,

          v.

James Mattis, Secretary, U.S. Department of
Defense, in his official capacity,

                    Defendant.

No.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF BASED ON
DEPRIVATION OF CONSTITUTIONAL
RIGHTS

Plaintiffs Kirti Tiwari, Seung Yoon Yang, Amandeep Singh, Duncan Makau, Valdeta

Mehanja, Luobin Sun, and Rui Zhang, by and through their counsel of record, Atkinson Conway

& Gagnon and MacDonald Hoague & Bayless, hereby claim and allege as follows:

**JURISDICTION AND VENUE**

1.       This action challenges unconstitutional national origin discrimination imposed by

Department of Defense (DoD) guidance memoranda that summarily deny Plaintiffs -- who are

all naturalized U.S. citizens -- the ability to apply for security clearances until after the term of

their initial military enlistment, thereby crippling their military careers and preventing them from

using their talents for the benefit of the national defense.

2.       This action arises under the United States Constitution.  This Court has

jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 1

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1   U.S.C. § 2201 – 2202 (the Declaratory Judgment Act); and the Constitution.  Venue in this

2   District is authorized by 28 U.S.C. § 1391(e)(1)(C) (judicial district in which a plaintiff resides).

3                               **THE MAVNI PROGRAM**

4       3.      The Military Accessions Vital to National Interest (MAVNI) Program was

5   designed to address critical shortages of personnel in the U.S. Armed Services by allowing

6   noncitizens to enlist in the U.S. military if they were legally present in the United States and did

7   not yet have "green cards" (lawful permanent residence) but met certain other requirements.

8       4.      The MAVNI program was initially authorized by Secretary of Defense Robert

9   Gates in November 2008.  Secretary Gates authorized the U.S. Armed Services to recruit two

10  categories of MAVNI enlistees: (1) Health Care Professionals (HCPs), who were legally present

11  noncitizens with certain U.S. medical licenses or credentials, and (2) language enlistees, who

12  were legally present noncitizens who had demonstrated expertise in certain strategic foreign

13  languages.  MAVNI enlistees were required to meet all of the usual requirements for enlistment

14  except that they were required to score higher on the Armed Forces Qualification Test (AFQT)

15  than other military recruits and were ineligible for any "moral" or conduct waivers.

16      5.      MAVNI recruits were required to apply for naturalization as United States

17  citizens as part of the enlistment contract process.  The naturalization process requires the

18  noncitizen to complete USCIS Form N-400, undergo extensive Department of Homeland

19  Security background checks (including an FBI name check), pass English and civics tests, be

20  interviewed by a United States Citizenship and Immigration Services (USCIS) Officer, and

21  participate in a naturalization oath ceremony.

22      6.      The MAVNI program initially began recruiting people in 2009.  Recruits enlisted

23  through the MAVNI program were assured repeatedly, both orally and in writing, that they

24  would have the same career opportunities, once naturalized, as any other United States citizen

25  serving in the United States Armed Forces.  For example, the MAVNI Information Paper

26  (updated September 2012) states:

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 2

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

> Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible.  To become an officer, you must be a U.S. citizen and you must also be eligible to receive a security clearance.  You must be recommended to become an officer, and you will most likely have to work in your unit for at least a year so that your commander will have time to evaluate you and make a recommendation.

(Exhibit 1, pp. 6-7, see also Exhibit 2, pp. 6-7)

7.     Most jobs in the military require a security clearance, and promotion to higher ranks almost universally requires a security clearance.

8.     All officers must have a security clearance, so someone who cannot obtain a security clearance cannot become an officer.

9.     For example, all Army doctors are officers, so an individual cannot serve as an Army doctor without obtaining a security clearance.

10.     Individuals also cannot serve in many enlisted and non-commissioned officer positions without obtaining a security clearance, including all positions in Military Linguistics, Military Police, Military Intelligence, Signal Corps, Special Operations, Psychological Operations, the Defense Attache System, and Civil Affairs.  Even many positions within non-sensitive branches of the Service (i.e., Transportation, Quartermaster, Artillery, Engineering, etc. require a security clearance.  For example, soldiers having access to advanced military technology (i.e., advanced artillery fire control systems), or even simply administrative access to other soldiers' Social Security numbers, must have a security clearance.

11.     The MAVNI Program has resulted in measureable benefits to the U.S. Armed Forces.  The DoD commissioned an independent consulting firm, Human Resources Research Organization (HumRRO), to review and evaluate the program.  Their February 20, 2013, report concludes variously that:  "[b]ased on characteristics in our analyses, MAVNI Soldiers compare exceptionally well to non-MAVNI Soldiers. . . . [They] bring a significantly higher level of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 3

kb158503

language proficiency to the Army than do their Army Special Operations Forces (ARSOF)-trained and Defense Language Institute (DLI)-tested counterparts, thereby increasing the Army's capability in critical languages. . . . [They] have higher predicted performance than non-MAVNI Soldiers based on the GT [General Technical] score even when the model controls for education, sex, and race. . . . The majority of supervisors indicated that proficiency in reading, writing, speaking, and understanding English among [Critical Foreign Language] CFL-MAVNI Soldiers was the same as or better than native-English speaking Soldiers. . . . Evaluation results indicate that CFL-MAVNI Soldiers are of high 'quality' – findings that are consistent with the selection of a CFL-MAVNI recruit as the Army's 2012 Soldier of the Year. . . . More than half [of MAVNIs] indicated that they would probably or definitely stay in the Army until retirement."

12.     Naturalized citizens who had been recruited through the MAVNI program have, since 2009, received all levels of security clearances, including Top Secret clearances, and have gone on to successful careers as linguists, intelligence officers, doctors, military police officers, and other careers requiring a security clearance.

13.     Initially, under the Bush Administration, MAVNI recruits were subject to the normal military and DHS security checks required of noncitizens entering the U.S. Armed Services.  Once MAVNI recruits became naturalized U.S. citizens, they could apply for security clearances just like any other U.S. citizen serving in the U.S. Armed Services. They could also apply to "re-classify" into jobs that required a security clearance.

14.     The U.S. Government has different types of security clearances, which allow access to certain types of classified information.  Information may be classified as Confidential, Secret, and Top Secret, as well as "Top Secret—Sensitive Compartmentalized Information" or "TS/SCI."  The levels of clearance correspond to the level of access the person is permitted to have to classified information.  A person serving in the United States Armed Services must have the level of clearance required for his or her job in order to hold that position, with limited exceptions.  For example, a person who wants to be an officer on active duty in the U.S. Army must hold, at a minimum, a "Secret" clearance, which allows the person to access information

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 4

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1    stamped "Secret" or "Confidential, " but does not allow the person to access "Top Secret"

2    information.

3        15.    To obtain a security clearance, a person must undergo a background investigation.

4    The level and type of investigation corresponds to the type of clearance the person is seeking.  A

5    Single Scope Background Investigation (SSBI) is typically reserved for people requiring a Top

6    Secret security clearance and access to sensitive compartmented information (SCI).  An SSBI is

7    typically not required for persons who only seek access to Secret, Confidential, or lower level

8    information.

9        16.    An SSBI is a time consuming and detailed investigation.  The SSBI investigation

10   covers at least ten years of finances, education, and professional activities, and seven (7) years of

11   personal information such as relationships and character references.  The individual must

12   complete an exhaustive questionnaire and is interviewed personally by a trained investigator,

13   often for several hours.  The individual's close relatives, references, employers, neighbors, and

14   colleagues are interviewed.  Various checks are also run, including credit checks and criminal

15   background checks.

16       17.    United States citizens who enlist in the United States Armed Services are only

17   required to undergo an SSBI if their job requires a Top Secret clearance.  Beginning on or about

18   2012, however, the DoD ordered all MAVNI recruits to undergo an SSBI.  Once they were

19   citizens, however, MAVNIs were treated like all other U.S. citizens serving in the U.S. Armed

20   Services.  Specifically, MAVNIs were eligible for the clearances available to any U.S. citizen

21   who could pass the security check required for that level of clearance.  This equal treatment

22   changed, however, in the fall of 2016.

23       18.    On September 30, 2016, Peter Levine, Acting Under Secretary of Defense for

24   Personnel and Readiness, signed and issued a DoD memorandum entitled "Military Accessions

25   Vital to the National Interest Pilot Program Extension," which was distributed by DoD to the

26   Army, Navy, and Air Force.  (Exhibit 3)  This memo extends the MAVNI program through

27   September 30, 2017, but also implements significantly revised accession, eligibility, and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 5

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1   screening protocols.  Per the memo, DoD states "this guidance will serve as a single source

2   document for the administration of the MAVNI program and replaces all previously issued

3   program guidance."  Significantly, the memo states that "MAVNIs will be designated . . . as not

4   eligible for an interim security clearance or access until the completion of first enlistment and a

5   positive national security determination is made by the DoD CAF [Consolidated Adjudications

6   Facility]." (Id., p. 6, emphasis added.)

7       19.     The September 30, 2016 DoD memo had an immediate and negative impact on

8   naturalized U.S. citizens who had enlisted in the U.S. Armed Services through the MAVNI

9   Program.  U.S. citizens who had entered the Army through the MAVNI Program were told that

10  they were no longer eligible for any form of security clearance and therefore could no longer

11  progress in their jobs, become officers, sign ROTC contracts, attend OCS, or reclassify into other

12  jobs in the military -- such as military linguist -- that require a security clearance.  The bar to

13  obtaining a security clearance also applied in their civilian jobs, for example, if they were

14  Reservists who sought work with defense contractors or Federal agencies.

15      20.     On January 6, 2017, the Department of the Army, Office of the Assistant

16  Secretary Manpower and Reserve Affairs, issued a guidance memoranda which similarly

17  provided that "MAVNI enlistees . . . are ineligible to reclassify, apply for officer producing

18  programs or positions/programs that require a security clearance during their initial term of

19  enlistment."  (Exhibit 4, p. 2)

20      21.     MAVNI naturalized U.S. citizens are now being treated differently from other

21  U.S. citizens who serve in the military.  Other U.S. citizens serving in the military -- who have

22  undergone far less background screening than MAVNI recruits -- are not barred from obtaining

23  security clearances during their first term of service.  Natural-born U.S. citizens can immediately

24  apply for a security clearance when they enlist, even if they have not undergone any of the

25  background checks required of MAVNIs.

26      22.     There is no rational, much less compelling, basis for barring U.S. citizens who

27  entered the military through the MAVNI program from applying for security clearances during

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 6

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

their first term of enlistment.  There is no rational, much less compelling, basis for barring them from applying to become officers or barring them from numerous other positions – such as a military linguist – that require a security clearance.

23.     The DoD, in issuing the September 30, 2016 and January 6, 2017 guidance memoranda, neglected to review the legality of adopting a blanket prohibition on naturalized MAVNI soldiers applying for security clearances including, in particular, failing to review the decision in Huynh v. Carlucci, 679 F. Supp. 61, 66 - 67 (D.D.C. 1988) ("Defendant has offered insufficient evidence that national security would be prejudiced if the Defense Department were required to accord newly naturalized citizens the same case-by-case security review given other security clearance applicants.").

**THE PLAINTIFFS**

**A.     Kirti Tiwari**

24.     Plaintiff KIRTI TIWARI is a United States citizen who naturalized on August 25, 2015.

25.     TIWARI is presently an Army Health Care Specialist (E4) assigned to 514th Medical Company (Ground Ambulance), Joint Base Lewis-McChord near Tacoma, Washington.

26.     TIWARI is a native of India.  TIWARI obtained a Bachelor of Technology degree in Biotechnology from the National Institute of Technology, in Allahabad, India, in 2010. TIWARI enrolled in the University of Houston in the spring of 2011.  He obtained a Master's degree in Molecular Biology from the University of Houston in the fall of 2012.

27.     TIWARI remained in lawful immigration status during his time in the United States by holding an F-1 student visa or performing Optional Practical Training (OPT).  After graduation from the University of Houston, TIWARI worked as a Research Specialist at the Baylor College of Medicine and Texas Children's Hospital.

28.     TIWARI enlisted in the United States Army under the MAVNI Program on June 24, 2014 for an eight (8) year term of service; the first four (4) years being Active Duty, with the remainder in the Army Reserve.  TIWARI qualified for the MAVNI program based on his

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 7

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1  fluency in English and Hindi, academic accomplishments, excellent Army test scores, and

2  physical fitness.

3       29.    TIWARI was told by his recruiter that after he became a naturalized U.S. citizen

4  and graduated from Basic Combat Training (BCT) and Advanced Individual Training (AIT), he

5  would be treated like any other American soldier including with regard to applying for or

6  attending officer-producing programs.

7       30.    After TIWARI enlisted, he was required to undergo an extensive Single Scope

8  Background Investigation (SSBI).  His SSBI was reported back favorably on or about February

9  19, 2015.

10       31.    Over several months in 2016, TIWARI assembled materials to submit to the

11  Army Medical Department (AMEDD) Accession Board for promotion to Area of Concentration

12  (AOC) 71A (Microbiologist) or 71E (Clinical Laboratory Scientist), which would result in him

13  becoming a commissioned officer.  If so advanced, TIWARI would likely have been assigned to

14  Walter Reed Army Institute of Research (WRAIR).  After gaining further experience as a

15  research Army Microbiologist or Scientist, TIWARI intended to apply to a doctoral program

16  through the Army Long Term Health Education and Training (LTHET) Program.

17       32.    In addition to applying to the AMEDD Accession Board, TIWARI also applied in

18  2016 to the NASA Astronaut Candidate Program.

19       33.    TIWARI was required to obtain letters of recommendations from his prior

20  employers as part of the AMEDD Accession Board application process.  His thesis advisor at the

21  University of Houston wrote that "[a]mong the top notch students that I have taught, I would rate

22  him in the top 10%."  The research professor he subsequently worked with at the Baylor College

23  of Medicine and Texas Children's Hospital wrote:

24

25         I consider him as one of the most diligent and rigorous researchers
       I have come across.  . . .  We were able to publish two manuscripts

26         from the data generated during his time here and that speaks
       volumes about his work.  He was first author on both of those

27         manuscripts.  His research work has been presented in various

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 8

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

conferences and has been published in international journals.  His
acceptance of responsibility and constructive criticism and
feedback is commendable.  His decision-making skills, attention to
detail, intellectual and leadership abilities set him apart from his
peers.

I am confident he will become an outstanding professional in his
field of expertise.  He will be a great mentor and a leader for any
organization to have.  I can attest to the fact that Kirti is exactly the
kind of skilled, talented and dedicated leader you need in an
organization like the Army and he will not hesitate to put
organizational interest above anything else.

34.    TIWARI's commanding officer wrote in support of his AMEDD Accession Board
application that:

SPC Tiwari is an excellent junior leader.  His ability to listen and
appropriately interpret orders is a testament to his mission success.
His peers listen and trust him to lead them and he is looked highly
upon by seniors and subordinates alike.  . . .  I highly recommend
SPC Tiwari be selected for commissioning.  It would be an
extreme disservice to the Army and our country to not invest in
this intelligent and confident young leader.  It is a privilege and
honor to serve with him.  Select now!

35.    TIWARI's Brigade Commander wrote in support of his AMEDD Accession
Board application that:

Immediately he demonstrated extensive leadership abilities and
superb fitness.  His contribution to the unit has been outstanding in
every way, as he has demonstrated solid adherence to Army
values, outstanding competence, tremendous energy, and
humbleness of spirit.  People enjoy working with SPC Tiwari!  . . .
Our command was recently formally notified of his acceptance as
an Army nominee into the NASA Astronaut program, notably as
an enlisted soldier.  . . .  Without reservation, I recommend SPC
Tiwari for accession as an officer.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 9

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1    36.    On November 2, 2016, TIWARI was informed through his Recruiting Station

2    Commander of the unofficial AMEDD Board results that included TIWARI for promotion and

3    commissioning to AOC, 71A, Microbiologist.

4    37.    Shortly thereafter, however, TIWARI was told that, because of the September 30,

5    2016, memo from Acting Under Secretary of Defense for Personnel and Readiness Peter Levine,

6    naturalized MAVNI soldiers such as TIWARI are ineligible to apply for or obtain a security

7    clearance during their initial term of enlistment.  Accordingly, TIWARI has now been deemed

8    retroactively ineligible to receive a commission as a Microbiologist with AMEDD.  TIWARI has

9    also now been required to abandon his goal of joining the NASA Astronaut Program.

10   38.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all

11   naturalized U.S. citizens -- from applying for or receiving security clearances during their initial

12   term of enlistment severely limits TIWARI's ability to serve his country, denies TIWARI the

13   opportunity to advance in his chosen career in the U.S. Army, and treats TIWARI as a second

14   class citizen.

### B.    Seung Yoon Yang

15

16   39.    Plaintiff SEUNG YOON YANG is a United States citizen who naturalized on

17   February 17, 2016.

18   40.    YANG is presently an Army Specialist (E4) serving as a Combat Engineer in a

19   Sapper Platoon with A Company, 6th Brigade Engineer Battalion (ABN), 4th Infantry Brigade

20   Combat Team, 25th Infantry Division (4-25 IBCT) at Joint Base Elmendorf-Richardson (JBER)

21   in Anchorage, Alaska.

22   41.    YANG is a native of South Korea but spent much of his life in the United States.

23   His father attended an MBA program at MIT beginning in 2002 and YANG attended 5th, 6th

24   and 7th grade in Newton, Massachusetts.  YANG went to high school at Portsmouth Abbey

25   School, a boarding school in Portsmouth, Rhode Island.  YANG attended the University of

26   Chicago graduating in 2015 with dual degrees (Bachelor of Science in Statistics and Bachelor of

27   Arts in Economics).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 10

1     42.    YANG remained in lawful immigration status during his time in the United States

2  by holding an F-1 student visa or performing Optional Practical Training (OPT).  YANG worked

3  variously as a research assistant at the University of Chicago Crime Lab and as a research

4  assistant at the Woodrow Wilson International Center for Scholars in Washington, D.C.

5     43.    YANG enlisted in the United States Army under the Military Accessions Vital to

6  National Interest (MAVNI) Program on January 14, 2015 for an eight (8) year term of service,

7  the first four (4) years and sixteen (16) weeks being Active Duty; with the remainder in the

8  Army Reserve.

9     44.    YANG qualified for the MAVNI program based on his fluency in English and

10  Korean, his academic accomplishments, his excellent Army test scores, and his physical fitness.

11     45.    YANG was assured orally by his recruiter and in writing by the ARMY that

12  MAVNI was simply an enlistment option and that once he joined the ranks and became a U.S.

13  citizen he would be treated the same as all other soldiers.  In particular, YANG was assured that

14  he would be given the same opportunities for advancement including the ability to apply to

15  officer-producing programs.  For example, YANG was provided with a MAVNI Information

16  Paper signed by his Recruiter and the Recruiter's Station Commander which stated that: "[o]nce

17  you enter the Army, you will have all the same opportunities afforded to you as any other Soldier

18  in the U.S. Army.  If you are eligible and meet all the requirements, you can apply for Officer

19  Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other

20  Army school or program for which you are eligible."

21     46.    In April 2016, YANG 's leadership recommended that he apply for Officer

22  Candidate School (OCS).  YANG then attempted to obtain a security clearance in order to apply

23  for OCS.  YANG, however, was told in late fall 2016 that a recent DoD guidance memo now

24  prohibits MAVNI soldiers from applying for a security clearance until after their first term of

25  enlistment.

26     47.    YANG subsequently learned that a security clearance was not required to initiate

27  an application packet for the Army's Green to Gold Scholarship Program.  He began to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 11

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

alternatively pursue that route to eventually become an officer and simultaneously further his education.  His commanding officers stated in his Chain of Command Evaluation for his application that "SPC Yang has the skills, intellect, and discipline to be an Army Officer.  . . . SPC Yang has excellent intellectual skills and a strong desire to learn.  . . .  He is a humble and smart Soldier . . .  He is Airborne qualified and has progressed as an Arctic Paratrooper over the last 8 months.  . . .  Soldiers of equal rank in the Company look up to SPC Yang based on his qualities and his achievements.  I feel he is an excellent candidate for the Army's Green to Gold program."

48.     As part of the Green to Gold application process, YANG obtained offers of admission from Columbia University and Georgetown University Master's Degree Programs in Statistics.

49.     On January 6, 2017, however, DoD issued a new memorandum stating that MAVNI soldiers are not allowed to even apply to officer-producing programs (i.e., even if a security clearance was not required during the initial phase of the program).

50.     In addition to now being prohibited from applying to any officer producing programs, YANG 's inability to apply for or obtain a security clearance also seriously limits his service as an enlisted soldier.  For example, YANG cannot attend any specialized training designed for Combat Engineers without a security clearance, such as the Explosive Ordinance Clearance Agent Course.  YANG will also need a clearance waiver to attend the Basic Leader Course, which is a prerequisite for obtaining a promotion to Sergeant, since he cannot apparently now obtain a security clearance or initate a National Agency Background Investigation.

51.     Army leadership is highly unlikely to promote junior enlisted soldiers who cannot receive appropriate training or attend important schools due to clearance issues, especially in combat Military Occupational Specialties (such as YANG 's MOS) where hands-on skills are crucial for junior leaders.

52.     The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 12

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1  term of enlistment severely limits YANG 's ability to serve his country, denies YANG the

2  opportunity to advance in his chosen career in the U.S. Army, and treats YANG as a second class

3  citizen.

### C.      Amandeep Singh

5      53.    Plaintiff AMANDEEP SINGH is a United States citizen who naturalized on July

6  27, 2016.

7      54.    SINGH is presently an active U.S. Army Reservist and Logistics Specialist (E4)

8  with the HHC, 518 Sustainment Brigade (SUS BDE) located in Knightdale, North Carolina.

9      55.    SINGH is a native of India.  SINGH came to the United States in the fall of 2001

10  at the age of 18 on an F-1 visa to attend college at Texas Tech University in Lubbock, Texas.

11  SINGH graduated from Texas Tech in 2007 with a Bachelor of Science degree in

12  electrical/electronic engineering.

13      56.    After graduating from Texas Tech, SINGH remained in lawful immigration status

14  in the United States while performing Optional Practical Training (OPT) and then by holding a

15  H-1B (professional work) visa.

16      57.    Since graduating from Texas Tech, SINGH has worked continuously in the

17  wireless and RF (radio frequency) fields for a number of employers, including as a field test

18  engineer for Blackberry Ltd. and as a contracted verification test engineer for Microsoft

19  Corporation.

20      58.    On July 23, 2015, SINGH enlisted in the United States Army Reserve under the

21  MAVNI Program for an eight (8) year term of service.

22      59.    SINGH qualified for the program based on his fluency in English, Punjabi and

23  Hindi, his academic achievements, his excellent Army test scores, and his physical fitness.

24      60.    During the MAVNI recruiting process, the recruiter told SINGH that, after one

25  year as an enlisted soldier, he could apply to Officer Candidate School (OCS) and other officer-

26  producing programs.  SINGH, along with his Recruiter, the Center Commander, and the

27  Guidance Counselor, all signed a MAVNI "Information Paper" reiterating those same promises.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 13

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

61.   After SINGH enlisted through the MAVNI program, SINGH was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

62.   As an individual holding an engineering degree with extensive professional experience in his field, SINGH is a logical candidate for selection to OCS.

63.   In late 2016, SINGH learned of a recent DoD memo stating that MAVNI soldiers cannot apply for or receive a security clearance until after their first term of enlistment.  This new rule precludes SINGH from applying to any officer-producing programs.

64.   SINGH now faces a delay of at least five (5) years before he can apply for a security clearance -- this despite the fact that he just recently passed an SSBI.

65.   The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment severely limits SINGH's ability to serve his country, denies SINGH the opportunity to advance in his chosen career in the U.S. Army, and treats SINGH as a second class citizen.

### D.     Duncan Makau

66.   Plaintiff DUNCAN MAKAU is a United States citizen who naturalized on September 15, 2016.

67.   MAKAU is presently a Unit Supply Specialist (E4) in Headquarter and Headquarter Company (HHC), 4th Engineer Battalion, 36th Engineer Brigade, in Fort Carson, Colorado Springs, Colorado.

68.   MAKAU is a native of Kenya who came to the United States in 2007 to attend college at the United States Military Academy at West Point (USMA).  MAKAU graduated from the USMA with a Bachelor of Science degree in General Engineering in 2011.

69.   MAKAU also obtained a Master in Business Administration degree from North Central College in Naperville, Illinois in 2016.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 14

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

70. MAKAU qualified for the MAVNI program based on his fluency in English and Swahili, his academic achievements, his excellent Army test scores, and his physical fitness.

71. MAKAU's initial term of enlistment, which began on March 22, 2016, is for eight (8) years; the first four (4) years and twenty one (21) weeks being Active service, with the remainder in the Army Reserve.

72. After MAKAU enlisted through the MAVNI Program he was required to undergo an extensive Single Scope Background Investigation (SSBI). His SSBI was reported back favorably on or about September 24, 2015.

73. At the time MAKAU enlisted through the MAVNI Program, he was advised he would be able to apply for positions that required a security clearance, such as Special Operations. He was also told that he would be able to apply for an officer commission since he had graduated from the USMA.

74. In late 2016, MAKAU learned of a DoD memo stating that MAVNI soldiers cannot apply for or receive a security clearance until after their first term of enlistment.

75. Because his eight-year enlistment began March 22, 2016, MAKAU has over seven (7) years remaining before he can apply for a security clearance – this despite having just passed an SSBI and having graduated from the USMA.

76. The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment severely limits MAKAU's ability to serve his country, denies MAKAU the opportunity to advance in his chosen career in the U.S. Army, and treats MAKAU as a second class citizen.

### E.     Valdeta Mehanja

77. Plaintiff VALDETA MEHANJA is a United States citizen who naturalized on January 13, 2016.

78. MEHANJA is presently a U.S. Army 15T Specialist (E4) assigned to Joint Multinational Readiness Center (JMRC) Hohenfels, Germany where she works as a crew chief

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 15

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1  on a LUH-72 Lakota Helicopter.  She is also certified as a UH-60-A/L/M Blackhawk Helicopter

2  mechanic.

3       79.     MEHANJA is a native of Kosovo.  Her family fled Kosovo in 1991 when she

4  was seven (7) years old.  Her family lived as refugees in Germany until returning to Kosovo after

5  the war in 2000.  Kosovo had been ravaged by the war and her family faced extreme poverty and

6  worked hard to make ends meet.

7       80.     At age 17, while finishing high school in Kosovo, MEHANJA was hired for

8  various clerical positions by contractors from the European Union and United Nations

9  organizations who gave her on-the-job IT training.  She was eventually recognized as one of

10  their top young employees.  MEHANJA was subsequently hired by DynCorp, an American

11  contracting company that was supporting NATO troops in Kosovo.  DynCorp sent her to Iraq

12  from 2004 to 2005.  There she was promoted to IT Team Leader with responsibility for installing

13  numerous complex data and radio networks in Baghdad, Tikrit and other locations.

14       81.     After taking time off to obtain several IT certifications, MEHANJA returned to

15  work for DynCorp in 2006, this time in Afghanistan.  There she installed and supported

16  sophisticated voice and data communication systems that were often used in both overt and

17  covert U.S. State Department counter narcotics law enforcement operations.  This work included

18  extensive involvement with ground-to-air and aircraft-to-aircraft communications and often

19  involved working in hostile areas of the country.

20       82.     After four years in Afghanistan, MEHANJA recognized that she needed to further

21  her education.  Because of her experience with aircraft communication and her admiration for

22  the pilots with whom she worked and flew (and who had at times come to her team's rescue

23  under fire), she decided to apply to an aeronautical university.  MEHANJA was accepted at

24  Embry-Riddle University in Daytona Beach, Florida and began school there in the fall of 2010.

25  MEHANJA paid for college and her flight training with the money she had saved while working

26  in Iraq and Afghanistan.  MEHANJA graduated from Embry-Riddle with a degree in

27  Aeronautical Science in 2013.  She continued on at Embry-Riddle after graduation to work on a

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 16

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1  Master's Degree in Science in Aeronautics with an emphasis in Aviation Aerospace Safety

2  System.

3    83.    While at Embry-Riddle MEHANJA earned licenses and ratings including:  fixed

4  wing and rotor private and commercial pilot licenses; fixed wing and rotor instrument ratings;

5  Airline Transport Pilot (ATP) license, multi-engine; Flight Instructor, fixed wing, single engine

6  and multi-engine, instrument rating; and Flight Instructor, rotor aircraft, instrument rating.

7    84.    MEHANJA began working as a flight instructor for Embry-Riddle beginning in

8  her third year of school there.  In March 2015, she was selected "Flight Instructor of the Month"

9  out of a highly competitive group of 180 flight instructors at the University.  She was selected by

10  Embry-Riddle in 2013 and again in 2014 to serve as Pilot-in-Command of the school's entry in

11  the Women's Air Race Classic, a four-day transcontinental flight competition.  Her team won the

12  collegiate division both years and finished third overall in 2013 and second overall in 2014.

13  MEHANJA served as Flight Supervisor and Acting Chief Flight Instructor at Embry-Riddle.

14  She presently has approximately 2,000 hours of flight time.

15    85.    MEHANJA enlisted in the United States Army under the Military Accessions

16  Vital to National Interest (MAVNI) Program on February 27, 2015.  Under the delayed entry

17  program, she shipped out to Basic Combat Training (BCT) on September 1, 2015.  Her

18  enlistment term is for six (6) years in the Regular Army.  MEHANJA qualified for the MAVNI

19  program based on her fluency in English and Albanian (she is also fluent in German); academic

20  accomplishments; excellent Army test scores; and physical fitness.

21    86.    Prior to her enlistment, MEHANJA remained in lawful immigration status during

22  her time in the United States by holding an F-1 student visa or an H-1B work visa.

23    87.    At Basic Combat Training (BCT), MEHANJA was selected to be an Assistant

24  Platoon Guide and graduated with the highest female Army Physical Fitness Test score in her

25  platoon.  She graduated Advanced Individual Training (AIT) as a UH-60 Blackhawk repairer

26  with a 97% GPA and honors from the Aviation Logistics School.  She also served as squad

27  leader.  While serving as a Blackhawk Repairer and Lakota Helicopters Crew Chief at her

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 17

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1    current duty station in Hohenfels, Germany, MEHANJA was selected as the Joint Multinational

2    Readiness Center Soldier of the Month in September 2016.

3        88.    Critical to MEHANJA's decision to enlist through the MAVNI Program was the

4    assurances she received from her Recruiter and the MAVNI Information Paper that she would be

5    able to apply to Warrant Officer Candidate School (WOC) or Officer Candidate School (OCS).

6    As a Warrant Officer, she would be able to ensure that her ultimate assignment was that of a

7    pilot (MOS 153A, rotary wing aviator).  Her goal was to become a Blackhawk Helicopter pilot.

8        89.    MEHANJA was repeatedly told that after she naturalized as a U.S. citizen and

9    completed her initial training, she would have the same career opportunities as any other soldier

10   in the Army.  The MAVNI "Information Paper" that she signed, and that was also signed by her

11   Recruiter, the Recruiting Center Commander, and the Recruiting Center Guidance Counselor,

12   promised the same thing:  "Once you enter the Army, you will have all the same opportunities

13   afforded to you as any other Soldier in the U.S. Army.  If you are eligible and meet all the

14   requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant

15   Officer Candidate School (WOC) or any other Army school or program for which you are

16   eligible."

17       90.    After her enlistment, MEHANJA was required to undergo an extensive Single

18   Scope Background Investigation (SSBI).  That investigation reported back favorably.

19       91.    After completing her introductory training, MEHANJA began the lengthy process

20   of preparing a packet for the Warrant Officer Board, which included obtaining a security

21   clearance.  After a thorough investigation (and pending issuance of a final security clearance by

22   the DoD Central Adjudicative Facility (CAF) in Fort Meade, Maryland), the Army Joint

23   Multinational Readiness Center (JMRC) in Hohenfels, Germany, issued MEHANJA an Interim

24   Security Clearance on November 9, 2016.  At that time, both MEHANJA and JMRC were

25   unaware that the September 30, 2016 memo from Acting Under Secretary of Defense Peter

26   Levine, which announced that MAVNI soldiers were no longer eligible to receive a security

27   clearance, would apply to already naturalized MAVNIs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 18

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

92.     As part of the packet for the Warrant Officer Board, MEHANJA was required to obtain letters of recommendation.  The Lieutenant Colonel (Ret.) who worked with MEHANJA in Afghanistan wrote in his recommendation letter that "I have known her since 2006 when she was serving as a contractor Communications Technician in a State Department Aviation Program in Afghanistan.  She was the 'go-to' person for any communications issues we had.  As the Deputy Director (GS15) for the DOS Air Wing, I personally relied on her for the entire time she was in Afghanistan. . . .  She has a great work ethic and moral standards – I don't know where she learned it but she will pick the harder right instead of the easier wrong. . . .  I give her my unconditional recommendation for Warrant Officer Flight Training.  The Army needs people like SPC Mehanja in the Officer Corps."

93.     MEHANJA's Brigade Commander during her Advanced Individual Training (AIT) wrote in his recommendation letter that "[SPC Mehanja] has thus far set the bar high in competence, character and commitment in all her training.  She has earned the respect of her entire chain of command, from her Drill Sergeants to the Post Commander, and is deeply respected for her personal life story of courage and selflessness.  . . .  SPC Mehanja is a must select for the Warrant Officer Candidate School.  She is dedicated and driven, constantly seeking self-improvement and ways to exceed her professional Army and personal goals.  She is the extremely rare candidate that already possesses the qualities and requisite skills to become a U.S. Army Aviator as the Aviation Branch seeks to fill its quality Warrant Officer ranks.  SPC Mehanja has unlimited potential and I give her my absolute highest recommendation for selection."

94.     MEHANJA's current Executive Officer at JMRC Hohenfels, Germany, wrote in his recommendation letter "I served as the Flight Detachment Executive Officer over SPC Mehanja for 8 months and witnessed her superior disciple, confident leadership, and problem solving abilities on a daily basis.  . . .  SPC Mehanja should be your top selection as an Officer candidate  . . ." Her present Battalion Commander wrote "[s]he is without a doubt one of the most competent, caring, and professional leaders I have worked with in 22 years of service.  She

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 19

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

possesses a strong intellect, physical presence, professional competence, moral character, and has served as a role model for all of the Soldiers and Leaders within our unit. . . . She is the leader that every Battalion Commander wants to have at the decisive point; and proves her worth every time. . . . It would be a great disservice to the United States Army to not appoint her into the U.S. Army Officer Candidate School."

95. A few weeks after MEHANJA received her Interim Security Clearance, MEHANJA was told that because she is a naturalized MAVNI soldier, she is no longer eligible for a security clearance under the new DoD guidance and that she could no longer apply to become a Warrant Officer.

96. If MEHANJA is required to wait until after the end of her initial six (6) year term of enlistment to apply for a security clearance, she will be several years past the age cutoff for application to either Warrant Officer Candidate School or Officer Candidate School; her flight currency will expire; and she will no longer be as competitive (if competitive at all) for a Warrant Officer 153A position. Not only will this derail her Army career, but it will also have a large negative impact on any subsequent civilian career because airlines and aviation organizations typically only hire "current" pilots who are recent with their flight hours and have recent working familiarity with applicable regulations.

97. The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment severely limits MEHANJA's ability to serve her country, denies MEHANJA the opportunity to advance in her chosen career in the U.S. Army, and treats MEHANJA as a second class citizen.

### F. Luobin Sun

98. Plaintiff LUOBIN SUN is a United States citizen who naturalized on March 18, 2015.

99. SUN is presently an active U.S. Army Reservist, Specialist Rank (E4), with the 346th Psychological Operations Unit located in Columbus, Ohio.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 20

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

100.     SUN is a native of China.  SUN came to the United States in 2011 on an F-1 visa to attend college at Ohio State University in Columbus, Ohio.

101.     SUN worked as a Student Officer with the Ohio State University Police Department through most of college.  In October 2014, SUN received a Merit Award, his Police Department's second highest police honor, for coming to the rescue of a Police Sergeant who was being strangled by an intoxicated suspect.  SUN was the first non-sworn officer at the University to ever receive such an honor.

102.     On March 5, 2014, while attending Ohio State, SUN enlisted in the United States Army Reserve under the MAVNI Program for an eight (8) year term of service.

103.     SUN qualified for the MAVNI Program based on his fluency in English and Mandarin Chinese, his academic achievements, his excellent Army test scores, and his physical fitness.

104.     SUN was told orally by his recruiter that he could apply to Officer Candidate School (OCS) after he obtained his college degree and completed one year of service.  This same information was repeated in the MAVNI Program "Information Paper" he received.

105.     After SUN enlisted through the MAVNI program, he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on or about November 3, 2014.

106.     SUN returned to Ohio State after completing his initial Army Reserve training in June 2015.  SUN graduated from Ohio State in December 2016 with a Bachelor of Science, double majoring in Business Administration and International Studies.

107.     On December 18, 2015, SUN became employed part-time with the Department of Homeland Security, Transportation Security Administration (TSA) as a Federal Officer providing security at Columbus International Airport.

108.     SUN began preparing his OCS application package in 2015.  His commanding officer wrote on September 28, 2015 that "SPC Sun is a talented member of the 1001st Quartermaster Company, he has performed with distinction as a 92F, (Petroleum Supply

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 21

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

Specialist).  I fully understand and support his aspirations to become a commissioned officer through the Officer Candidate School.  SPC Sun will make an exceptional officer."  SUN's Platoon Leader similarly wrote that "SPC Sun has excellent potential to become a fine officer.  I am convinced that SPC Sun's intelligence, professionalism and foreign language skills will make him an asset to the Officer Corps."

109.    In late 2016, SUN learned that a recent DoD memorandum prohibited him from applying for or obtaining a security clearance during his initial term of service.

110.    SUN will be 32-years-old when his eight (8) year initial enlistment ends in 2022 and he finally becomes eligible to apply for a security clearance under the recent DoD guidance. With a background check and OCS package likely taking a year or more to compete, he will then be 33 years old and past the 32-year maximum age to attend OCS.

111.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment severely limits SUN's ability to serve his country, denies SUN the opportunity to advance in his chosen career in the U.S. Army, and treats SUN as a second class citizen.

### G.    Rui Zhang

112.    Plaintiff RUI ZHANG is a United States citizen who naturalized on May 2, 2014.

113.    ZHANG is presently an Army Specialist (E4) serving as a Dental Specialist at Tripler Army Medical Center in Honolulu, Hawaii.

114.    ZHANG is a native of China, however, he moved with his mother to Japan at age 13 and never thereafter returned to China.  After completing high school in Japan, ZHANG came to the United States in 2006 at the age of 19 on an F-1 visa to attend college.  ZHANG obtained a Bachelor of Science degree from UCLA in Molecular Cell Development Biology in 2013.

115.    Since arriving in the United States, and prior to becoming a citizen, ZHANG remained in lawful immigration status either on an F-1 student visa or while performing Optional Practical Training (OPT).  ZHANG has worked variously as a math teaching assistant, a math tutor, an assistant in an ophthalmology clinic, and as an EMT.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 22

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

116.    ZHANG initially enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on July 16, 2013 for an eight (8) year term of service, the first six (6) years being Active Duty, with the remainder in the Army Reserve.

117.    ZHANG qualified for the MAVNI program based on his fluency in English, Japanese, and Mandarin Chinese, academic background, excellent Army test scores, and physical fitness.

118.    After ZHANG enlisted through the MAVNI program, ZHANG was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

119.    ZHANG was told by his recruiter that, after one year of service, he would be able to apply to officer-producing programs such as Officer Candidate School, Reserve Officer Candidate Corps (ROTC), and Healthcare Professions Scholarship Program (HPSP).  The official MAVNI "Information Paper" he received said the same thing.  Many of ZHANG's MAVNI friends had previously gone to, and successfully completed, OCS.

120.    The Health Professions Scholarship Program (HPSP) offers potential military physicians, dentists, nurses, and other health care professionals a paid medical education in exchange for an additional military service commitment.  All individuals joining the HPSP (if they are not already officers) are commissioned as a Second Lieutenant, which in turn requires a security clearance.

121.    In order to be selected for the HPSP, an applicant has to apply to and be accepted by the school they wish to attend.  ZHANG's goal was to enter medical school in the fall of 2017.  Towards that end, ZHANG spent many months taking additional prerequisite classes, preparing for and taking the MCAT, writing applications and school-specific essays, and obtaining recommendations.  Because admission to medical school is highly competitive, ZHANG has applied to many medical schools (like many other applicants) and has paid substantial application fees.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 23

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1   122.   Based on ZHANG's strong academics, language skills, and the fact that he is

2   already an Army soldier with an exemplary record, ZHANG's chances for acceptance to the

3   HPSP program and medical school were very high.

4   123.   On September 6, 2016, ZHANG's Officer in Charge (OIC) wrote to the U.S.

5   Army Central Personnel Security Clearance Facility stating "[r]equest to expedite Secret

6   Clearance of SPC Zhang, Rui investigation which is currently scheduled to close for favorable

7   adjudication.  This action is required to upgrade to attend the Officer's Commissioned School for

8   Army Health Professions Scholarship Program (HPSP)."

9   124.   Approximately a month after submitting the September 6, 2016 memorandum,

10  ZHANG learned that DoD had issued a new guidance memo stating that MAVNIs must wait

11  until the end of the first term of enlistment -- six (6) years in ZHANG'S case – before applying

12  for or receiving a security clearance.  This will delay for years ZHANG's dream of becoming a

13  doctor and create much more work and expense. Specifically, all ZHANG's present efforts to

14  apply to medical school and HPSP will have been wasted.  ZHANG will have to retake some of

15  the prerequisite courses and the MCAT as they will have expired.  ZHANG will then have to

16  begin the application process to medical schools and HPSP all over again.

17  125.   The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all

18  naturalized U.S. citizens -- from applying for or receiving security clearances during their initial

19  term of enlistment severely limits ZHANG's ability to serve his country, denies ZHANG the

20  opportunity to advance in his chosen career in the U.S. Army, and treats ZHANG as a second

21  class citizen.

**CLAIM FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS**

23  126.   The subject DoD guidance memoranda unconstitutionally discriminate against

24  Plaintiffs based on their national origin in violation of Plaintiffs' equal protection rights as

25  guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

26

27

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 24

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

kb158503

1    127.    Plaintiffs are entitled to a declaration that a blanket prohibition on MAVNI

2  soldiers applying for or receiving a security clearance in their initial term of enlistment is

3  unconstitutional, invalid, and of no force and effect.

4    128.    Plaintiffs are further entitled to preliminary and permanent injunctions prohibiting

5  Defendant from enforcing any guidance memoranda or other rule prohibiting MAVNI soldiers as

6  a class from applying for or receiving a security clearance in their initial term of enlistment.

7    WHEREFORE, Plaintiffs pray for relief as follows:

8    1.    Declaratory and injunctive relief as set forth in the Complaint;

9    2.    An award of costs and attorney fees pursuant to the Equal Access to Justice Act

10  (EAJA), 28 U.S.C. § 2412(d), and/or any other statute or rule of law that provides for an award

11  of costs and attorney fees in this situation; and

12    3.    Other relief deemed equitable or applicable by the Court.

13

DATED this 16th day of February, 2017.

14

15    ATKINSON, CONWAY & GAGNON
      Attorneys for Plaintiffs

16    By: *s/Neil T. O'Donnell*
      Neil T. O'Donnell, Esq.
17    420 L Street, Suite 500
      Anchorage, AK 99501
18    Phone:  (907) 276-1700
      Fax:  (907) 272-2082
19    nto@acglaw.com
      Alaska Bar No. 8306049
20    *Pro Hac Vice application submitted herewith*

21

22    MACDONALD HOAGUE & BAYLESS
      Attorneys for Plaintiffs, *Local Counsel*

23

24    By: *s/Joseph R. Shaeffer*
      Joseph R. Shaeffer, WSBA #33273
25    1500 Hoge Building
      705 Second Avenue
26    Seattle, Washington  98104
      Phone (206) 622-1604
27    Fax:  (206) 343-3961
      joe@mhb.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS - 25

kb158503

## **EXHIBIT 1**

TO

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS

### Military Accessions Vital to the National Interest (MAVNI) Information Paper

#### Updated September 2012

This information paper answers some of the common questions you may have about the MAVNI program. Read this information paper in its entirety because it contains valuable information that will help you in your new Army career.  Most sections apply to both MAVNIs who enlisted due to expertise in foreign languages and those who entered as Health Care Professionals (referred to as HCPs in the rest of this document).  A section that applies to only one group is so noted. You may ask your Recruiter, Station Commander, or Guidance Counselor any questions you have at any time, but remember that only written information in your <u>contract</u> is legally binding. Before continuing your enlistment process, you must read and sign this document on the last page.

### A. SOLDIER FIRST

A MAVNI Soldier is first and foremost a Soldier in the US Army and is subject to a strict military code of discipline. As a Soldier, you are sworn to support and defend the Constitution of the United States.  You will serve at locations to support the needs of the Army in the United States and overseas. You may be deployed overseas, just like any Soldier, and you may be ordered to serve in a combat zone.

### B. PURPOSE OF THE MAVNI PROGRAM

The MAVNI program expands recruiting to legal non-citizens (non-green card holders) who are fully licensed health care professionals in critically short specialties, or who speak one of 44 strategic languages.  The language portion of MAVNI recruits highly qualified Soldiers to provide increased language and cultural diversity to the force.  These Soldiers will help the Army maintain a constant state of readiness in strategic language capabilities in order to be prepared for current and future world-wide operations. For those enlisting through the language program you are not enlisting as a linguist unless you are in MOS 09L. All other language dependent MOSs require a Top Secret security clearance which can only be granted to U.S. citizens.  You will enlist into an MOS that does not require a security clearance and <u>IF</u> needed <u>MAY</u> be called upon to use your language.  Therefore you must choose your MOS wisely and be happy serving in that MOS as it is possible that you may never be called to use your language.

### C. ARMY DISCHARGE AND YOUR IMMIGRATION STATUS

When you enlist in the Army, there is always a chance you may be discharged.  You may get injured at Basic Training or may not successfully complete training.  If you are discharged from the Army before you become a citizen, you may no longer have a valid immigration status.  For example, if you are on an H1B worker visa prior to joining the Army and are later discharged without citizenship, you will have no legal status. This is a risk you take when entering the program.  If you are not able to obtain another visa you may be forced to leave the country.  You should consider this risk before signing your enlistment contract.

### D. AKO E-MAIL AND MAVNI PROGRAM INFORMATION CENTER PORTAL

All Soldiers who enlist in the Army are required to sign up for an Army Knowledge Online (AKO) account.  Your recruiter will show you how to get an AKO account.  Once you have an AKO account, you will have access to the MAVNI Program Information Center portal.  Important information is posted on this website and will be updated as needed.  Below are directions on how to find the MAVNI portal:

EXHIBIT 1
Page 1 of 8

1. Log into AKO at www.us.army.mil

2. Use the search engine on the home page and type in "MAVNI Program Information Center."

3. Click on the very first entry.

## E. MAVNI IS AN ENLISTMENT OPTION

MAVNI is an enlistment option and not a specific MOS. Most individuals outside of the recruiting environment do not know what MAVNI is. Do not be surprised to meet people who have never heard of MAVNI when you attend Basic Combat Training (BCT), Advanced Individual Training (AIT), or arrive at your first duty station. Once you enter the Army, you will be treated like any other Soldier in the U.S Army, but may be called upon to use your language skills at some point.

## F. INFORM YOUR COMMAND OF YOUR LANGUAGE CAPABILITIES

When you arrive at your first duty station, please inform your Chain of Command that you have native language and associated cultural skills and are able to support operations using these language skills if the need arises. As stated above, MAVNI is an enlistment program, or a means of entering the Army. Because MAVNI is not an MOS, your Chain of Command will most likely not be aware that you are a MAVNI or even know what MAVNI is. It is your responsibility to let your Chain of Command know that you posses language and cultural skills. HCPs were enlisted for medical or dental expertise, but your language skills may also be beneficial while treating patients who may speak your language. You should also inform your commander of all languages you speak.

## G. POSSIBLE OPPORTUNITY TO SERVE WITH ARMY SPECIAL OPERATIONS COMMAND

The US Army Special Operations Forces (ARSOF) is very interested in the language capabilities of MAVNI Soldiers. Every ARSOF Soldier must have a basic understanding of a foreign language. Native-level language expertise among ARSOF units helps in the very important mission of training indigenous foreign forces or conducting joint exercises or training with foreign countries. While in BCT or AIT you may be approached by an ARSOF recruiter and asked if you would like to volunteer to be assigned to an ARSOF unit. You will not be an ARSOF Soldier, which takes very specialized training, though this is something you might aspire to in the future; instead, you will be providing support to ARSOF Soldiers. You are not required to sign an ARSOF volunteer statement and it will not reflect poorly on you if you choose not to volunteer. The ARSOF recruiters are looking for specific languages and other capabilities. Being chosen for assignment to an ARSOF unit is an honor, as these are the Army's elite forces with very important missions, but it is your choice whether to accept.

## H. TRAVEL ADVISORY FOR MAVNI ENLISTEES

The Army recommends that MAVNI enlistees stay inside the United States between the time that they sign their enlistment contract and their ship date to Basic Combat Training. MAVNIs who travel internationally do so at their own risk. If a MAVNI enlistee fails to return to the United States and ship to Basic Training as scheduled, the Army will cancel the enlistment contract and give the quota number to another MAVNI enlistee. The Army cannot assist a MAVNI in getting a visa to return to the United States after foreign travel; there is no US visa category for MAVNI enlistees.

Here is a further explanation of this issue:

2

EXHIBIT 1
Page 2 of 8

Once a person has signed a MAVNI enlistment contract, the person has shown an intent to serve in the Army and become a US citizen. This means that the person no longer has "non-immigrant intent" because the person intends to reside in the United States permanently.

The Department of State issues visas. The Army is part of the Department of Defense, a separate cabinet department of the US Government. The Army does not issue visas and cannot control whether the Department of State issues a visa. The Department of State requires non-immigrant visa applicants to demonstrate "non-immigrant intent" in order to get a non-immigrant visa, such as a student visa (F-1).

A MAVNI enlistee who travels internationally must have a visa to re-enter the US after travel. There is no law that allows the State Department to issue a visa to someone who has enlisted in the Army; there is no "MAVNI" visa. In addition, a MAVNI recruit cannot enter the United States under the Visa Waiver Program (VWP) since the law requires VWP applicants to also demonstrate "non-immigrant intent." For this reason, among others, MAVNI is only open to persons who are already living inside the United States.

A person who has enlisted in the Army under MAVNI is no longer eligible for an F-1 student visa or any other visa that requires the applicant to show "non-immigrant intent." Thus, if a MAVNI travels outside the US and applies for an F-1 student visa in order to return, the Department of State will deny the visa application. The MAVNI will likely be unable to return to the United States and will be unable to ship to BCT. When the MAVNI fails to ship, the Army will treat the MAVNI as a "failure to ship" case and will give the MAVNI's quota number to someone else.

The Army cannot help a MAVNI who is outside the United States and is denied a visa by the Department of State. The Department of State must follow US law, which does not contain a visa category for MAVNIs. MAVNI enlistees should therefore avoid international travel after signing the MAVNI enlistment contract. Once a MAVNI obtains US citizenship and a US passport, the MAVNI will no longer need a US visa in order to return to the US and can safely engage in international travel. For further questions, please consult an attorney who is experienced in US immigration law issues.

*NOTE: Some MAVNI enlistees may have heard that there is an exemption in US immigration law that allows alien members of the US Armed Forces to enter the United States without visas. This exemption does not apply to MAVNI enlistees before they report to Basic Training. MAVNI enlistees who depart the United States prior to Basic Training are subject to being denied admission and immediately removed upon return.*

## I. CITIZENSHIP

The Army, along with United States Citizenship and Immigration Services (USCIS) has implemented expedited citizenship processing for all non-citizens at each of the Army's Basic Combat Training (BCT) locations. USCIS officers are present at each of the BCT locations on a weekly basis to collect citizenship packets, interview and test Soldiers, and administer oaths. You should be given time to meet with a USCIS officer either while at the Reception Battalion or during BCT. DO NOT MAIL YOUR CITIZENSHIP PACKET BEFORE YOU SHIP TO BCT. Please ensure that you ship to BCT with a complete citizenship packet filled out and ready for processing. There is no application fee for a Soldier to submit a citizenship packet. Before you ship, you should be fingerprinted at a local USCIS Application Support Center. You should also obtain two passport-style photos to include with your citizenship packet. All documentation including the N-426 will be signed at BCT. Your recruiter does not need to sign or mail anything for you. You should carry your completed citizenship packet with you to BCT. Your recruiter may provide you with

EXHIBIT 1
Page 3 of 8

a citizenship filing instruction memo, or you can find one on AKO in the MAVNI Program Information Center in the folder named "Road to Naturalization." Please note there are three separate instructions, one for Language Enlistees, one for HCPs and one for Green Card Holders. Ensure you have the correct document. You should also ship to BCT prepared for your citizenship interview and test. The Army's goal is to ensure that all non-citizen Soldiers take their oath of citizenship prior to or concurrent with graduation from BCT. Once you receive your citizenship, you may apply for adjustment (Green Card) for your spouse and eligible family members if you choose; the Army does not do this for you. You will also need to pay application fees for their adjustment of status packets. Please note that neither USCIS nor the Army guarantees any Soldier US Citizenship, or that the Soldier will receive citizenship prior to graduation from BCT.

If you do not receive your citizenship prior to graduation from BCT, notify USCIS as soon as possible. You must inform USCIS that you have moved to a new military installation. Give them your new mailing address so the old USCIS office knows to transfer your file to the USCIS office in your new location. The best way to do this is by calling the Military Help Line at 877-CIS-4MIL (877-247-4645) or sending an email to: militaryinfo.nsc@dhs.gov .

## J. DISCRIMINATION

The U.S. Army has zero tolerance for discrimination of any kind. If you feel you are being discriminated against because of your race, ethnicity, religion, sex, gender or any other characteristic, you have many solutions available to you. You can speak to the individual who offended you to let them know that their actions or words insulted you. If you do not feel comfortable confronting this individual you can speak with your Chain of Command, the Chaplain, your Equal Opportunity Representative or Advisor, the Inspector General or the Provost Marshall.

## K. PUBLIC AFFAIRS (MEDIA) GUIDANCE

**SPECIAL NOTICE TO THOSE OF MIDDLE EASTERN OR AFGHAN DESCENT, THOSE FROM PAKISTAN OR IRAN, AND OTHERS CONCERNED ABOUT THE RELEASE OF THEIR NAMES OR LIKENESSES:**

Be aware that Soldiers participate in ceremonies and other events to which the public and the news media are invited. Unless you choose otherwise, your name and the country or city you are from could be released to the public. You also could be seen on video or in photos made available to the public. If you join the U.S. Army via the MAVNI program, you should consider asking not to take part in any public Army event if you would fear for your safety or the safety of your family (in the U.S. or overseas) if your identity as a U.S. Soldier were revealed. If you are of Middle Eastern or Afghan descent, are from Pakistan or Iran, or otherwise have concerns about the release or your name or photo, you do not have to agree to be photographed for public affairs events.

## L. MAINTAIN A VALID IMMIGRATION STATUS UNTIL YOU SHIP TO BCT

All MAVNI Soldiers, regardless of visa category, must maintain a valid immigration status until you ship to BCT. If you do not maintain a valid status, you run the risk of being picked up by Immigration and Customs Enforcement (ICE). If you are on a work visa, continue to work until you ship to BCT. Do not quit your job because you have signed an enlistment contract. If you are an F1 Student Visa holder the Army strongly recommends that you stay in school and therefore in status until you ship to Basic Combat Training (BCT). You have a few options:

EXHIBIT 1
Page 4 of 8

1) You can stay in school until just before your ship date. You will then have to drop out of school and the Designated School Official (DSO) who enters your information in the Student and Exchange Visitor Information System (SEVIS) will terminate your status at that point. You may need to work with your instructors to finish any incomplete course work.

2) You can ask the Army to give you a ship date that is at the end of the semester, so that you can complete the semester before you ship.

3) You can ask the Army to give you a ship date that is at the beginning of the semester, so that you can ship before school starts.

If you drop out of school, you will fall out of status in SEVIS. You will be out of status from the date when you drop out of school until your ship date and you may have problems with your school or the Department of Homeland Security. Neither you nor your spouse (if the spouse is an F2) can work or renew your driver's licenses, and you both risk being picked up by ICE and placed into proceedings because you failed to enroll in school. Again, the Army does not recommend you drop out of school and strongly suggests that you remain in a valid non-immigrant status until you ship to BCT.

**IMPORTANT NOTE:** When you are going to drop your classes or not enroll for the next semester, inform your Designated School Official (DSO) that you joined the Army under the MAVNI program so that he or she can properly record your termination status in SEVIS. This is a very important step and you must let your DSO know that you joined the Army under the MAVNI program. Bring a copy of your contract with you as proof of enlistment. The SEVIS policy guidance concerning MAVNI Soldiers is posted on the MAVNI Program Information Center portal.

## M. LANGUAGE REPORTING

During your enlistment process, your recruiter will complete a DD Form 1966. You must ensure that the recruiter lists all languages that you speak on this form. The section on the form for languages will only accept two languages, so if you speak more than two, the rest of your languages should be annotated in the remarks section of the DD Form 1966. You should rank your languages in order of fluency, with the languages you speak best, first and the languages you are less proficient in, last. If you are enlisting in the MAVNI language program, the language you tested in for the Oral Proficiency Interview (OPI) should be the language you are most proficient in, or speak the best, instead of whichever OPI is available first.

Your DD Form 1966 should remain in your personnel file. When you get to your permanent duty station, please ensure the personnel clerk enters any additional languages you speak into your record in a system called TAPDB. These languages can be entered as "self assessed" languages, and if you later test in these language and receive a passing score, those languages can appear as languages you have successfully tested in.

## N. FOREIGN LANGUAGE PROFICIENCY BONUS

All Soldiers in the Army, regardless of MOS, are eligible to apply for Foreign Language Proficiency Bonus (FLPB). You may be able to earn extra pay for the languages you speak. You may receive up to $1,000.00 a month if you are highly proficient in 3 different languages. If you speak an eligible language, you are qualified to receive special pay if you pass the Defense Language Proficiency Test (DLPT) or an approved foreign language proficiency test. Some languages entitle you to more pay than others. To receive FLPB, inform your chain of command at your first duty station that you would like to be tested in whichever languages you speak. Most posts have an Education Center where tests are administered.

EXHIBIT 1
Page 5 of 8

You can also speak to the Education Center if you have any questions, and there may also be a language lab at your unit. Once you take the test and receive a passing score your unit will have to file paperwork to ensure you get paid. You must retest once a year to stay current and receive your payments unless you are deployed overseas. Once you test and receive your scores on a DA Form 330, ensure your personnel clerk transmits orders to Finance to ensure you receive FLPB pay. Your personnel clerk must also enter your scores into your personnel record. Ask him or her to enter the scores in the TAPDB data base as well. If you receive a passing score, you are also eligible to receive a Special Qualifications Identifier (SQI) of "L" for linguist. This SQI will become part of your MOS designation and should also be entered into the TAPDB database by your personnel clerk. Please note that you will not be paid FLPB unless you take the DLPT or approved foreign language proficiency test. The Oral Proficiency Interview (OPI) that you were administered at MEPS, in most cases does not count for FLPB. Check with the Education Center to determine the appropriate test for your language. One exception is for Soldiers in the MOS 09L (Translator/Interpreter). 09Ls will be paid FLPB based on the OPI for their primary language and must retest yearly. However, if a 09L speaks more than one language, he or she must test in the DLPT or approved test for any additional languages, unless a DLPT or approved test is not available in that language. You are not eligible for FLPB until you reach your first duty station. Do not ask about FLPB during BCT or AIT.

## O. HCP CHECKLIST

A checklist for all MAVNI HCPs can be found on the AKO MAVNI Program Information Center Portal. If you did not receive a copy of this checklist from your recruiter, be sure to print a copy from the website. This document contains detailed information on the steps you need to take from initial processing through to your first duty assignment.

**NOTE:** The HCP MAVNI program manager can be reached at the following e-mail address: USARC_AccessionsDiv@usar.army.mil . Please direct your recruiter or Reserve unit to this address if you encounter any problems with orders, pay, BOLC, etc. This address is only for HCPs, not language enlistees.

## P. MOS RECLASSIFICATION

If you are not happy with your current MOS, you may possibly be eligible to reclassify into another MOS in the future. You are NOT automatically eligible to reclassify into another MOS once you receive your citizenship. For most MOSs you are not eligible to reclassify until you have served a minimum of 2 years in your current MOS. When you reclassify, you may incur an additional service commitment; in other words, if the Army re-trains you in a new MOS, you may be required to remain in the Army for a longer period of time. Reclassification rules differ depending on your current MOS and the MOS you wish to reclassify into. To get all the details concerning eligibility to reclassify, please talk to a career counselor or reenlistment NCO at your first duty assignment.

## Q. FUTURE CAREER OPPORTUNITIES

Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army. If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible. To become an officer, you must be a U.S. citizen and you must also be eligible to receive a security clearance. You must be recommended to become an officer, and you will most likely have to work in your unit for at least a year so that your commander will have time to evaluate

6

EXHIBIT 1
Page 6 of 8

you and make a recommendation. It is also important to be aware of all your education benefits, such as tuition assistance and the G.I. Bill. Each post has an education center that can provide you with information on education benefits. It is up to you to make the most of your military career.

## R. FAMILY MEMBER ISSUES

You may have questions about family members' status once you ship to Basic Combat Training. If your spouse's visa status depends on yours, he or she is technically in a "gray area" while you are attending BCT. The Department of Homeland Security (DHS) has published a regulation that allows you to work for the Army, but this regulation does not cover your spouse's status. However, it is not the intention of DHS, USCIS or ICE to deport your spouse while you are at training. The Army will work closely with DHS to ensure that DHS is aware of all MAVNI Soldiers. **Note: if your spouse was in the US illegally before you shipped to BCT, or otherwise broke the law, then he or she may be subject to arrest or deportation even if you are in the Army. If you have questions about the immigration status of your family members, please seek advice from a competent and licensed immigration attorney.

While you are away at BCT, your spouse should keep a copy of your Army enlistment contract with him or her at all times. If questioned by ICE or any other agency, your spouse should show a copy of the enlistment contract to the questioning official. Your spouse should explain that you are currently in BCT and enlisted under the MAVNI program. It may also help for your spouse to keep a copy of a DHS policy known as the "Forman Memo," which states that officers are not supposed to process for deportation Active Duty military personnel without checking with their headquarters. Though this memo technically only covers the Service Member, it is still a good idea for your spouse to keep a copy of this memo; it can be found on the AKO MAVNI Information Center Portal.

As soon as you receive your US citizenship, you may be eligible to apply for a "green card" for your spouse and children. Your family members will not receive this status automatically; you must do the necessary paperwork to file and pay the required fees.

## S. ENHANCED SECURITY SCREENING

As a condition for participation in the MAVNI program, all MAVNI applicants will be subject to enhanced security screening measures which will occur while you are in the Delayed Entry Program (DEP) before you ship to BCT. It is very important that you maintain your immigration status until you ship to BCT. Do not drop out of school or quit your job because an unfavorable result on this screening may require your enlistment contract to be voided; in that case you will not be able to remain in the U.S. Army. If you are unwilling to allow these enhanced security screening measures, you cannot join the U.S. Army.

## T. IMMIGRATION ASSISTANCE

Once you are in the Army, if you have an immigration issue and do not have or cannot afford an attorney, you can seek assistance from your unit or post Judge Advocate General (JAG) Legal Assistance Office. If a JAG attorney cannot assist you, then the American Immigration Lawyers Association Military Assistance Program may be able to assist you; go to the following website http://www.aila.org/military and click on the link for information for military personnel seeking assistance.

SEPTEMBER 2012

I have read and understand the foregoing information paper (and agree with its terms).

Name(Print): _Zhang Rui_____

Signature: _____ Date: _20130705_

Recruiter (Print): _SFC VINH PHAM_____

Signature: _____ Date: _20130705_

Station Commander (Print): _SFC SALCIDO JESU_____

Signature: _____ Date: _20130705_

Guidance Counselor (Print): _VARGAS, JUANITO_____

Signature: _____ Date: _20130711_

EXHIBIT 1
Page 8 of 8

# **EXHIBIT 2**

TO

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS

December 2014

## UNITED STATES ARMY RESERVE (USAR)

Enlisted Military Accessions Vital to the National Interest (MAVNI) Information Paper

Updated December 2014

This information paper answers some of the common questions you may have about the Reserve MAVNI program. Read this information paper in its entirety because it contains valuable information that will help you in your new Army career. This paper applies to MAVNIs who enlisted in the USAR due to expertise in foreign languages. You may ask your Recruiter, Center Commander, or Guidance Counselor any questions you have at any time, but remember that only written information in your contract is legally binding. Before continuing your enlistment process, you must read and sign this document on the last page. As a condition of your Reserve MAVNI enlistment, you will have at least a 180 day waiting period to ship to training from the time you sign your initial contract. It is also understood as a condition of your enlistment your shipdate could change with little to no notice if your required background investigation has not closed favorably. AS

### A. SOLDIER FIRST

A MAVNI Soldier is first and foremost a Soldier in the US Army and is subject to a strict military code of discipline. As a Soldier, you are sworn to support and defend the Constitution of the United States. You may serve at locations to support the needs of the Army in both the United States and overseas. You may be deployed overseas, just like any Soldier, and you may be ordered to serve in a combat zone. AS

### B. PURPOSE OF THE MAVNI PROGRAM

The MAVNI program expands recruiting to legal non-citizens (non-green card holders) who are 1. fully licensed health care professionals in critically short specialties, or 2. speak one of 44 strategic languages. The language portion of MAVNI recruits highly qualified Soldiers to provide broadened language and cultural diversity to the force. These Soldiers will help the Army maintain a constant state of readiness in strategic language capabilities in order to be prepared for current and future world-wide operations. Although you are enlisting for the language program you are not enlisting as a linguist unless you are in MOS 09L. All other language dependent MOSs require a Top Secret security clearance which can only be granted to U.S. citizens. You will enlist into an MOS that does not require a security clearance and IF needed MAY be called upon to use your language. Therefore you must choose your MOS wisely and be happy serving in that MOS as it is possible that you may never be called to use your language. Additionally, your MOS choices will be based on your test scores, physical results, citizenship, training available 180 days or more from your enlistment, and available Reserve vacancies within a 50 mile radius of where you live or attend school. AS

### C. ARMY DISCHARGE AND YOUR IMMIGRATION STATUS

When you enlist in the Army, there is always a chance you may be discharged. You may get injured at Basic Training or may not successfully complete training. If you are discharged from the Army before you become a citizen, you may no longer have a valid immigration status if you did not make arrangements to maintain your status while in training. This is a risk you take when entering the program. If you are not able to obtain another visa you may be forced to leave the country. You should consider this risk before signing your enlistment contract. If you are an F-1 Student, it would be best to work with your recruiter to schedule Basic Combat Training (BCT) and your Advanced Individual Training (AIT) during a school break if possible. As an H-1b worker you would need to coordinate with your current employer if you plan

1

EXHIBIT 2
Page 1 of 8

December 2014

to remain in that job after training. It is always recommended that you consult with an immigration attorney on any immigration matter.

D. AKO E-MAIL AND MAVNI PROGRAM INFORMATION CENTER PORTAL

All Soldiers who enlist in the Army are eligible to sign up for an Army Knowledge Online (AKO) account. Your recruiter will show you how to get an AKO account. Once you have an AKO account, you will have access to the MAVNI Program Information Center portal: https://www.us.army.mil/suite/page/614648. Important information is posted on this website and will be updated as needed.

E. MAVNI IS AN ENLISTMENT OPTION

MAVNI is an enlistment option and not a specific MOS. Most individuals outside of the recruiting environment do not know what MAVNI is. Do not be surprised to meet people who have never heard of MAVNI when you report to your Reserve unit, attend Basic Combat Training (BCT), or Advanced Individual Training (AIT). Once you enter the Army, you will be treated like any other Soldier in the U.S Army, but may be called upon to use your language skills at some point.

F. Completion of the Enlistment Application

The enlistment application is extremely detailed. Most of this information is used to determine enlistment eligibility and is also used in a thorough background investigation that is required to close favorably before you are allowed to ship to any training. It is absolutely imperative that the information you provide to your recruiter is accurate and true. Review the content of your completed SF 86 so there is no missing information regarding your background in any of the required areas no matter how important or unimportant you feel the information to be. Missing or omitted information could cause you a delay in shipping or could result in your background investigation to be UNFAVORABLE and could result in your discharge from the delayed entry program.

G. INFORM YOUR COMMAND OF YOUR LANGUAGE CAPABILITIES

When you arrive at your Reserve unit, please inform your Chain of Command that you have native language and associated cultural skills and are able to support operations using these language skills if the need arises. As stated above, MAVNI is an enlistment program, or a means of entering the Army. Because MAVNI is not an MOS, your Chain of Command will most likely not be aware that you are a MAVNI or even know what MAVNI is. It is your responsibility to let your Chain of Command know that you posses language and cultural skills.

H. TRAVEL ADVISORY FOR MAVNI ENLISTEES

The Army recommends that MAVNI enlistees stay inside the United States between the time that they sign their enlistment contract and their ship date to Basic Combat Training. MAVNIs who travel internationally do so at their own risk. If a MAVNI enlistee fails to return to the United States and ship to Basic Training as scheduled, the Army will cancel the enlistment contract and give the quota number to another MAVNI enlistee. The Army cannot assist a MAVNI in getting a visa to return to the United States after foreign travel; there is no US visa category for MAVNI enlistees.

2

EXHIBIT 2
Page 2 of 8

December 2014

Here is a further explanation of this issue:

Once a person has signed a MAVNI enlistment contract, the person has shown an intent to serve in the Army and become a US citizen. This means that the person no longer has "non-immigrant intent" because the person intends to reside in the United States permanently.

The Department of State issues visas. The Army is part of the Department of Defense, a separate cabinet department of the US Government. The Army does not issue visas and cannot control whether the Department of State issues a visa. The Department of State requires non-immigrant visa applicants to demonstrate "non-immigrant intent" in order to get a non-immigrant visa, such as a student visa (F-1).

A MAVNI enlistee who travels internationally must have a visa to re-enter the US after travel. There is no law that allows the State Department to issue a visa to someone who has enlisted in the Army; there is no "MAVNI" visa. In addition, a MAVNI recruit cannot enter the United States under the Visa Waiver Program (VWP) since the law requires VWP applicants to also demonstrate "non-immigrant intent." For this reason, among others, MAVNI is only open to persons who are already living inside the United States.

A person who has enlisted in the Army under MAVNI is no longer eligible for an F-1 student visa or any other visa that requires the applicant to show "non-immigrant intent." Thus, if a MAVNI travels outside the US and applies for an F-1 student visa in order to return, the Department of State will deny the visa application. The MAVNI will likely be unable to return to the United States and will be unable to ship to BCT. When the MAVNI fails to ship, the Army will treat the MAVNI as a "failure to ship" case and will give the MAVNI's quota number to someone else.

The Army cannot help a MAVNI who is outside the United States and is denied a visa by the Department of State. The Department of State must follow US law, which does not contain a visa category for MAVNIs. MAVNI enlistees should therefore avoid international travel after signing the MAVNI enlistment contract. Once a MAVNI obtains US citizenship and a US passport, the MAVNI will no longer need a US visa in order to return to the US and can safely engage in international travel. For further questions, please consult an attorney who is experienced in US immigration law issues.

*NOTE: Some MAVNI enlistees may have heard that there is an exemption in US immigration law that allows alien members of the US Armed Forces to enter the United States without visas. This exemption does not apply to MAVNI enlistees before they report to Basic Training. MAVNI enlistees who depart the United States prior to Basic Training are subject to being denied admission and immediately removed upon return.*

I. CITIZENSHIP

As a USAR Soldier enlisted through the MAVNI program, you will apply for citizenship during Basic Combat Training (BCT). The Army, along with United States Citizenship and Immigration Services (USCIS) has implemented expedited citizenship processing for all non-citizens at each of the Army's BCT. USCIS officers are present at each of the BCT locations on a weekly basis to collect citizenship packets, interview and test Soldiers, and administer oaths. You should be given time to meet with a USCIS officer either while at the Reception Battalion or during BCT. DO NOT MAIL YOUR CITIZENSHIP PACKET BEFORE YOU SHIP TO BCT. Please ensure that you ship to BCT with a complete citizenship packet filled out and ready for processing. There is no application fee for a Soldier to submit a citizenship packet. Before you ship, you should be fingerprinted at a local USCIS Application Support Center. You

3

EXHIBIT 2
Page 3 of 8

December 2014

should also obtain two passport-style photos to include with your citizenship packet. All documentation including the N-426 will be signed at BCT. Your recruiter or Reserve commander does not need to sign or mail anything for you. You should carry your completed citizenship packet with you to BCT. Your recruiter may provide you with a citizenship filing instruction memo, or you can find one on AKO in the MAVNI Program Information Center in the folder named "Road to Naturalization." Please note there are three separate instructions, one for Language Enlistees, one for HCPs and one for Green Card Holders. You should use the Language Enlistees packet. Ensure you have the correct document. You should also ship to BCT prepared for your citizenship interview and test. The Army's goal is to ensure that all non-citizen Soldiers take their oath of citizenship prior to or concurrent with graduation from BCT. Once you receive your citizenship, you may apply for adjustment (Green Card) for your spouse and eligible family members if you choose; the Army does not do this for you. You will also need to pay application fees for their adjustment of status packets. Please note that neither USCIS nor the Army guarantees any Soldier US Citizenship, or that the Soldier will receive citizenship prior to graduation from BCT. Additionally, your citizenship may be revoked if you do not serve honorably for 5 years.

If you do not receive your citizenship prior to graduation from BCT, notify USCIS as soon as possible. You must inform USCIS that you have returned to your home of record. Give them your home mailing address so the old USCIS office knows to transfer your file to the USCIS office in your new location. The best way to do this is by calling the Military Help Line at 877-CIS-4MIL (877-247-4645) or sending an email to: militaryinfo.nsc@dhs.gov .

## J. DISCRIMINATION

The U.S. Army has zero tolerance for discrimination of any kind. If you feel you are being discriminated against because of your race, ethnicity, religion, sex, gender or any other characteristic, you have many solutions available to you. You can speak to the individual who offended you to let them know that their actions or words insulted you. If you do not feel comfortable confronting this individual you can speak with your Chain of Command, the Chaplain, your Equal Opportunity Representative or Advisor, the Inspector General or the Provost Marshall.

## K. PUBLIC AFFAIRS (MEDIA) GUIDANCE

SPECIAL NOTICE TO THOSE OF MIDDLE EASTERN OR AFGHAN DESCENT, THOSE FROM PAKISTAN OR IRAN, AND OTHERS CONCERNED ABOUT THE RELEASE OF THEIR NAMES OR LIKENESSES:

Be aware that Soldiers participate in ceremonies and other events to which the public and the news media are invited. Unless you choose otherwise, your name and the country or city you are from could be released to the public. You also could be seen on video or in photos made available to the public. If you join the U.S. Army via the MAVNI program, you should consider asking not to take part in any public Army event if you would fear for your safety or the safety of your family (in the U.S. or overseas) if your identity as a U.S. Soldier were revealed. If you are of Middle Eastern or Afghan descent, are from Pakistan or Iran, or otherwise have concerns about the release or your name or photo, you do not have to agree to be photographed for public affairs events.

## L. MAINTAIN A VALID IMMIGRATION STATUS AT LEAST UNTIL YOU SHIP TO BCT

It is highly recommended that all MAVNI Soldiers, regardless of visa category, maintain a valid immigration status until you ship to BCT. If you do not maintain a valid status, you run the risk of being

4

EXHIBIT 2
Page 4 of 8

December 2014

picked up by Immigration and Customs Enforcement (ICE). If you are on a work visa, continue to work until you ship to BCT. If you plan to return to that job after training, you should ask your employer for a leave of absence while you are in training. Do not quit your job because you have signed an enlistment contract. If you are an F1 Student Visa holder the Army strongly recommends that you stay in school and therefore in status until you ship to Basic Combat Training (BCT). You have a few options:

1) You can stay in school until just before your ship date. You will then have to drop out of school and the Designated School Official (DSO) who enters your information in the Student and Exchange Visitor Information System (SEVIS) will terminate your status at that point. You may need to work with your instructors to finish any incomplete course work.

2) You can ask the Army to give you a ship date that is at the end of the semester, so that you can complete the semester before you ship. This is a very good option since you are in the USAR and can return to school after your training is complete. Additionally, if you are discharged from BCT for any reason, you can fall right back on your F-1 Student Status.

If you drop out of school, you will fall out of status in SEVIS. You will be out of status from the date when you drop out of school until your ship date and you may have problems with your school or the Department of Homeland Security. Neither you nor your spouse (if the spouse is an F2) can work or renew your driver's licenses, and you both risk being picked up by ICE and placed into proceedings because you failed to enroll in school. Again, the Army does not recommend you drop out of school and strongly suggests that you remain in a valid non-immigrant status at least until you ship to BCT.

**IMPORTANT NOTE:** If you are going to drop your classes or not enroll for the next semester, inform your Designated School Official (DSO) that you joined the Army Reserve under the MAVNI program so that he or she can properly record your termination status in SEVIS. This is a very important step and you must let your DSO know that you joined the Army Reserve under the MAVNI program if you are not planning on returning to school after BCT. Bring a copy of your contract with you as proof of enlistment. The SEVIS policy guidance concerning MAVNI Soldiers is posted on the MAVNI Program Information Center portal.

## M. LANGUAGE REPORTING

During your enlistment process, your recruiter will complete a DD Form 1966. You must ensure that the recruiter lists all languages that you speak on this form. The section on the form for languages will only accept two languages, so if you speak more than two, the rest of your languages should be annotated in the remarks section of the DD Form 1966. You should rank your languages in order of fluency, with the languages you speak best, first and the languages you are less proficient in, last. If you are enlisting in the MAVNI language program, the language you tested in for the Oral Proficiency Interview (OPI) should be the language you are most proficient in, or speak the best, instead of whichever OPI is available first.

Your DD Form 1966 should remain in your personnel file. When you arrive to your Reserve unit, please ensure the personnel clerk enters any additional languages you speak into your personnel record. These languages can be entered as "self assessed" languages, and if you later test in these language and receive a passing score, those languages can appear as languages you have successfully tested in.

## N. FOREIGN LANGUAGE PROFICIENCY BONUS

All Soldiers in the Army, regardless of MOS, are eligible to apply for Foreign Language Proficiency Bonus (FLPB). You may be able to earn extra pay for the languages you speak. You may receive up to

EXHIBIT 2
Page 5 of 8

December 2014

$1,000.00 a month if you are highly proficient in 3 different languages. If you speak an eligible language, you are qualified to receive special pay if you pass the Defense Language Proficiency Test (DLPT) or an approved foreign language proficiency test. Some languages entitle you to more pay than others and some languages that are considered dominant in the force may not receive pay. To receive FLPB, inform your chain of command at your Reserve unit that you would like to be tested in whichever languages you speak. Most posts have an Education Center where tests are administered. You can also speak to the Education Center if you have any questions, and there may also be a language lab at your unit. Once you take the test and receive a passing score your unit will have to file paperwork to ensure you get paid. You must retest once a year to stay current and receive your payments unless you are deployed overseas. Once you test and receive your scores on a DA Form 330, ensure your personnel clerk transmits orders to Finance to ensure you receive FLPB pay. Your personnel clerk must also enter your scores into your personnel record. If you receive a passing score, you are also eligible to receive a Special Qualifications Identifier (SQI) of "L" for linguist. This SQI will become part of your MOS designation and should also be entered into your record by your personnel clerk. Please note that you will not be paid FLPB unless you take the DLPT or approved foreign language proficiency test. The Oral Proficiency Interview (OPI) that you were administered at MEPS, in most cases does not count for FLPB. Check with the Education Center to determine the appropriate test for your language. One exception is for Soldiers in the MOS 09L (Translator/Interpreter). 09Ls will be paid FLPB based on the OPI for their primary language and must retest yearly. However, if a 09L speaks more than one language, he or she must test in the DLPT or approved test for any additional languages, unless a DLPT or approved test is not available in that language.

## O. MOS RECLASSIFICATION

If you are not happy with your current MOS, you may possibly be eligible to reclassify into another MOS in the future. You are NOT automatically eligible to reclassify into another MOS once you receive your citizenship and there may be time requirements before you would be allowed to reclassify, since the Army already trained you in an MOS. Reclassification rules differ depending on your current MOS and the MOS you wish to reclassify into. To get all the details concerning eligibility to reclassify, please talk to a career counselor or reenlistment NCO at your Reserve unit.

The Army Reserve offers a great deal of flexibility due to the fact that Reserve membership partly depends on where you live and work/attend school. When you join the Army Reserve, you will be given a range of units and Military Occupational Specialties (MOS) that are within a reasonable commuting radius of where you live. Your home location defines the opportunities available to you in the Reserve. If you choose never to move, you may serve in one unit for the duration of your career. If you do move, then depending on how far you move, you may transfer to another unit within a reasonable commuting distance from your new home. Joining a new unit may require re-classifying to an MOS that the unit has (not all Army Reserve units require the same MOS) and for which you can qualify. The Army Reserve will provide the training necessary to reclassify.

## P. FUTURE CAREER OPPORTUNITIES

Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army Reserve. If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Reserve Officers' Training Corps (ROTC), Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible. To become an officer, you must be a U.S. citizen and you must also be eligible to receive a security clearance. You must be recommended to become an officer, and you will most likely have to work in your unit for at least a year

6

EXHIBIT 2
Page 6 of 8

so that your commander will have time to evaluate you and make a recommendation. You may also be interested in working with an Army Reserve Civil Affairs or Military Information Support Operations (MISO) unit. It is also important to be aware of all your education benefits, such as tuition assistance and the G.I. Bill. Each post has an education center that can provide you with information on education benefits. It is up to you to make the most of your military career. As an Army Reservist, you have access to any active duty installation through which to leverage any benefits to which you may be entitled. You may also work with your Unit Administrator to achieve the same ends. ⟨rangle⟩

## Q. FAMILY MEMBER ISSUES

You may have questions about family members' status once you ship to Basic Combat Training. If your spouse's visa status depends on yours, he or she is technically in a "gray area" while you are attending BCT. This is why it is best, as an Army Reservist, if you can maintain your status while you are in training. The Department of Homeland Security (DHS) has published a regulation that allows you to work for the Army, but this regulation does not cover your spouse's status. However, it is not the intention of DHS, USCIS or ICE to deport your spouse while you are at training. The Army will work closely with DHS to ensure that DHS is aware of all MAVNI Soldiers. **Note: if your spouse was in the US illegally before you shipped to BCT, or otherwise broke the law, then he or she may be subject to arrest or deportation even if you are in the Army. If you have questions about the immigration status of your family members, please seek advice from a competent and licensed immigration attorney.

While you are away at BCT, your spouse should keep a copy of your Army enlistment contract with him or her at all times. If questioned by ICE or any other agency, your spouse should show a copy of the enlistment contract to the questioning official. Your spouse should explain that you are currently in BCT and enlisted under the MAVNI program. It may also help for your spouse to keep a copy of a DHS policy known as the "Forman Memo." which states that officers are not supposed to process for deportation Active Duty military personnel without checking with their headquarters. Though this memo technically only covers the Service Member, it is still a good idea for your spouse to keep a copy of this memo; it can be found on the AKO MAVNI Information Center Portal.

As soon as you receive your US citizenship, you may be eligible to apply for a "green card" for your spouse and children. Your family members will not receive this status automatically; you must do the necessary paperwork to file and pay the required fees. ⟨rangle⟩

## R. ENHANCED SECURITY SCREENING

As a condition for participation in the MAVNI program, all MAVNI applicants will be subject to enhanced security screening measures which will occur while you are in the Army Reserve Delayed Training Program (DTP) before you ship to BCT. You will be required to remain in the DTP for at least 180 days to allow for the completion of the security checks. If results are not returned prior to ship date, the ship date will be renegotiated. It is very important that you maintain your immigration status at least until you ship to BCT. Do not drop out of school or quit your job because an unfavorable result on this screening may require your enlistment contract to be voided; in that case you will not be able to remain in the U.S. Army. If you are unwilling to allow these enhanced security screening measures, you cannot join the U.S. Army. ⟨rangle⟩

## S. IMMIGRATION ASSISTANCE

Once you are in the Army, if you have an immigration issue and do not have or cannot afford an attorney, you can seek assistance from your unit or an installation Judge Advocate General (JAG) Legal ⟨rangle⟩

7

EXHIBIT 2
Page 7 of 8

December 2014

Assistance Office. As an Army Reservist with a valid military ID card, you have access to any Service's installation (Army, Navy, Air Force, Marines or Coast Guard). If a JAG attorney cannot assist you, then the American Immigration Lawyers Association Military Assistance Program may be able to assist you; go to the following website http://www.aila.org/military and click on the link for information for military personnel seeking assistance.

AS

T. Deferred Action Childhood Arrival (DACA) applicants.

I certify that as a Deferred Action applicant I have not been previously worked without authorization or have used an SSN that was not mine for employment or any other purpose.

AS

I have read and understand the foregoing information paper (and agree with its terms).

Name (Print): SINGH, AmanDEEP

Signature: _____   Date: 23 July 2015

Recruiter (Print): Hobbs, Natasha

Signature: _____   Date: 23 July 2015

Center Commander (Print): HOBBS, Natasha

Signature: _____   Date: 23 July 2015

Guidance Counselor (Print): Maxwell, Antune' V

Signature: Antune' V Maxwell   Date: 23 July 15

8

EXHIBIT 2
Page 8 of 8

**<u>EXHIBIT 3</u>**

TO

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS



**UNDER SECRETARY OF DEFENSE**
4000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-4000

PERSONNEL AND
READINESS

SEP 30 2016

MEMORANDUM FOR SECRETARY OF THE ARMY
SECRETARY OF THE NAVY
SECRETARY OF THE AIR FORCE

SUBJECT:  Military Accessions Vital to the National Interest Pilot Program Extension

The Military Accessions Vital to the National Interest (MAVNI) pilot program is currently set to expire on September 30, 2016.  This memorandum was developed in coordination with the Under Secretary of Defense for Intelligence and extends the MAVNI pilot program through September 30, 2017, and implements revised eligibility requirements. This guidance will serve as a single source document for the administration of the MAVNI program and replaces all previously issued program guidance.

The application of the limited authority under section 504(b)(2) of title 10, United States Code, allows the Services to expand the military recruiting market to include certain non-immigrant aliens.  The authority is contingent upon a case-by-case determination by the Secretary of the Military Department concerned that each such enlistment is vital to the national interest.  The exercise of such authority regarding health care professionals shall be limited to those holding medical specialties for which a Service has a critical shortfall.  The recruitment of persons with special language and associated cultural backgrounds shall be limited to those with qualifications necessary to support current and projected future military operations, and for which the Military Service concerned currently has a critical shortfall.  Persons enlisted under this program shall be screened and identified for eligibility for special operations and special operations support career fields, and if eligible, assignment priority will be given to those units.

Changes reflected in the enclosed guidance will strengthen and improve the execution of the MAVNI program.  These changes are the result of a comprehensive review of the program and include specific security and mission requirements outlined below and also in the enclosure.  The Secretaries of the Military Departments will ensure adequate controls and audit processes are in place for compliance with all administrative, security, and suitability requirements outlined in this memorandum.

The Service MAVNI program allocations for the maximum number of annual accessions will be: Army – 1,200; Navy - 65; Marine Corps - 65; and Air Force – 70.  Within 60 days of the date of this memorandum, the Secretaries of the Military Departments will provide a report to the Assistant Secretary for Manpower and Reserve Affairs detailing the methodology supporting requested accession allotments against critical manpower gaps and operational requirements.

In execution of the enclosed guidance, the Secretaries of the Military Departments shall:

- limit the accession of individuals with language/culture skills to not more than 10 percent of the total Service allocation for reserve accessions;
- access medical personnel for Active and Reserve enlistments as needed;

EXHIBIT 3
Page 1 of 9

- limit the number of annual accessions for any one language/associated culture capabilities to not more than 10 percent of total MAVNI Service authorization.
- prohibit Category 2 language/associated culture applicants from shipping to basic training or serving for any period of time on active duty until the Military Service certifies in writing to the Under Secretary of Defense for Personnel and Readiness (USD (P&R)) and the Under Secretary of Defense for Intelligence (USD(I)) their ability to meet administrative, security, and suitability protocols mandated herein prior to accessing any new applicants into the Delayed Entry Pool (DEP).

Updated guidance regarding program eligibility, languages, security reviews, and screening processes, eligibility for a security clearance, suitability determination, and military endorsement for naturalization are necessary to ensure the security, success and sustainability of the MAVNI program. Specific policy details and methodologies are outlined in the enclosed guidance.

- The guidance within this memorandum applies to all MAVNIs currently in the DEP, all future applicants, and all Reserve accessions who enter Service or ship to basic training on or after the date of this memorandum. Those persons in the DEP who were recruited under the eligible language list in effect since 2014 may continue in the accession process, but they must be satisfactorily screened under the revised screening protocols found in this memorandum.
- All personnel accessed through the MAVNI program since its inception in 2009 must be continuously monitored and accounted for throughout the duration of their affiliation with the Department of Defense (e.g. active duty, Reserve, government civilian, or contractor).
- No Service member accessed under language/associated culture MAVNI eligibility is eligible for a security clearance until they have satisfied time in service requirements and have have received an updated and favorable determination by the Consolidated Adjudications Facility.

All costs associated with the accession of MAVNI applicants are borne by the contracting Service. Services recruiting under MAVNI will provide to USD(P&R) and USD(I) a MAVNI report by accession cohort at the end of each quarter and annually following the end of each fiscal year. Complete reports listing all MAVNIs in service will be provided to USD(P&R) and USD(I) on an annual basis. The Services shall notify USD(P&R), USD(I), and United States Citizenship and Immigration Services (USCIS) when individuals become classified as "unsatisfactory participants" and/or are administratively separated from the military.

Any clarification required concerning this guidance shall be requested prior to program implementation by the Military Departments concerned. Services may not deviate from these requirements without a written approval to do so from the USD(P&R) in coordination with USD(I).

Peter Levine
Acting

Attachments:
As stated

EXHIBIT 3
Page 2 of 9

cc:
Chairman of the Joint Chiefs of Staff
Under Secretary of Defense for Intelligence
Chief of the National Guard Bureau
Assistant Secretary of the Army for
    Manpower and Reserve Affairs
Assistant Secretary of the Navy for
    Manpower and Reserve Affairs
Assistant Secretary of the Air Force for
    Manpower and Reserve Affairs

EXHIBIT 3
Page 3 of 9

Program Eligibility'

**Overall Eligibility:**

1. Eligibility is extended to aliens in one of the following categories at time of enlistment:

   a. Asylee, refugee, Temporary Protected Status (TPS), or

   b. Nonimmigrant categories E, F, H, I, J, K, L, M, O, P, Q, R, S, T, TC, TD, TN, U, or V.

2. Additionally, program applicants:

   a. Must have been in a valid status in one of those categories for at least the 2 years immediately prior to the enlistment date. However, it does not have to be the same category as the one held on the date of enlistment;

   b. Must not have had any single absence from the United States of more than 90 days during the 2-year period immediately preceding the date of enlistment; and

   c. Are rendered ineligible by virtue of having a pending application for adjustment of status to lawful permanent residence. In the specific case of an alien with H nonimmigrant status at the time of filing a pending application for adjustment of status who has lost such status while his or her application for adjustment was pending, and who is otherwise eligible for enlistment under the MAVNI program, the military Service may on a case by case basis waive the requirement that the alien be in a status described in paragraph 1 above at the time of enlistment; however, the Service will ensure the applicant in DEP maintains an immigration status or obtains Deferred Action from the Department of Homeland Security (DHS) or the applicant in DEP will no longer qualify for enlistment.

3. Individuals who have been granted deferred action by the DHS pursuant to the Deferred Action for Childhood Arrivals process are eligible.

**Program Specific Eligibility (Services may add additional requirements)**

**1. Health Care Professionals**

   a. Applicants must be recruited specifically to fill medical specialties wherein the Service has a critical shortfall.

   b. Applicants must meet all qualification criteria required for their medical specialty.

   c. Applicants must meet the criteria required for foreign-trained Department of Defense medical personnel recruited under other authorities.

   d. Applicants must demonstrate proficiency in English – reading, speaking, and listening – on a standardized test in accordance with all existing Service criteria for commissioned officers.

EXHIBIT 3
Page 4 of 9

Attachment 1

e. Enlistments must be for at least 3 years of Active Duty or 6 years of SELRES service.

## 2. Enlisted Individuals with Special Language and Culture Backgrounds

Enlistments must be for at least 3 years of Active Duty or 6 years of SELRES service, and enlistees must:

a. Possess capability in a specific language with the associated cultural background from the list of critical eligible languages (below), and

b. Demonstrate language proficiency at the 2/2/2 level on the Defense Language Proficiency Test or 2/2 on the Oral Proficiency Interview; or as needed for the career field, but not at less than 1+ on any modality.

## Eligible Languages

Services may recommend additional languages to meet emerging needs or request exceptions to policy for especially meritorious individual cases to the Office of the Deputy Assistant Secretary of Defense for Military Personnel Policy.

### Category 1

| | | |
|---|---|---|
| Albanian | Dhivehi (language of | Portuguese |
| Bengali | Maldives) | Sinhalese |
| Bulgarian | Haitian-Creole | Tagalog |
| Cebuano | Hungarian | Tamil |
| Czech | Malayalam | Thai |
| | Polish | |

### Category 2

| | | |
|---|---|---|
| Amharic | Igbo | Sindhi |
| Arabic | Indonesian | Somali |
| Azerbaijani | Kashmiri | Swahili |
| Burmese | Kurdish | Tajik |
| Cambodian-Khmer | Lao | Turkish |
| French (limited to | Malay | Turkmen |
| individuals possessing | Moro | Ukrainian |
| citizenship from an | Nepalese | Urdu |
| African country) | Pahari | Uzbek |
| Georgian | Punjabi | Yoruba |
| Hausa | Pushtu (aka Pashto) | |
| Hindi | Serbo-Croatian | |

EXHIBIT 3
Page 5 of 9

## Security and Suitability Screening Requirements

1. Applicability. Services may not deviate from the following requirements without written approval from the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) in coordination with the Under Secretary of Defense for Intelligence (USD(I)).

2. Initial Screening. Prior to shipping to basic training or serving for any period of time on active duty in the Armed Forces, each MAVNI applicant must satisfactorily complete all security screening requirements. Services shall clearly annotate MAVNI in all Service Component Accessions Systems and use the Joint Personnel Adjudication System (JPAS) (or its successor, the Defense Information System for Security (DISS)) Agency Use Block and indicate MAVNI to ensure the Department's ability to track MAVNI's period of military service. Sequencing of security screening (NIACs, Counterintelligence (CI)-Security Interviews, Tier 3 or Tier 5 background investigations, polygraphs) as applicable is critical and provided at Enclosure 2.

    a. National Intelligence Agency Check (NIAC): The NIAC will include at a minimum a name check of the following databases:

          i. CIA External Name Trace System
         ii. PORTICO (USD(I)-approved CI information system)
        iii. National Crime Information Center
        iv. Defense Central Index of Investigations
         v. FBI Checks (Name and Foreign Terrorism Tracking Task Force)
        vi. Foreign Travel (Advance Passenger Information System or similar system when available)
       vii. Public Records, Commercial Data, Social Media (as appropriate)

Services will forward the results of the NIAC to the DoD Consolidated Adjudications Facility (CAF) leading to a National Security Determination in support of a suitability for service determination.

    b. CI-Security Interview: The Service counterintelligence element will conduct the CI-Security Interview. The CI-Security Interview will be based upon the findings of the completed NIAC, a review of the subjects SF-86, and standard questions from the Services and the DoD CAF. Results of the CI-Security Interview will be forwarded to the DoD CAF to support the National Security Determination.

    c. Military Suitability Determination: The DoD CAF will render a National Security Determination based on 13 National Adjudicative Guidelines. JPAS will then be coded as "No Determination Made" (MAVNIs are not eligible for a security clearance during their initial accession, see Para 4 below for security clearance eligibility requirements). The DoD CAF will forward a notification to the Service recruiting command, via the Case Adjudication Tracking System, with one of the following decisions: 1) The subject has an non-favorable national security determination based on unmitigated derogatory or missing information or; 2) A non-favorable national security determination solely because of citizenship with the absence, or successful mitigation, of other derogatory information. If derogatory information was revealed, the DoD CAF will provide information to the accessing service via the Case Adjudication Tracking System. The accessing service will use this information to then render the final military suitability determination in accordance with DoDI 1304.26 and any service specific policies.

EXHIBIT 3
Page 6 of 9

3

   d.   Health Care Professionals and Category 1 Language Requirements: Will have a completed Tier 3 background investigation, a completed NIAC, a completed CI-security interview, a National Security Determination by the DoD CAF, and a favorable military suitability determination rendered by the Service accession organization. If derogatory information is revealed in the background investigation or NIAC and cannot be mitigated, the DoD CAF may request a polygraph examination as applicable. The Military Service may either administer a polygraph to resolve the issue or separate the individual. Applicants refusing to consent to a polygraph examination will be separated. A Category 1 MAVNI's country of origin should be taken into consideration to determine whether at Tier 5 investigation is more appropriate vice a Tier 3 investigation.

   e.   Category 2 Language Requirements: Will have a completed Tier 5 background investigation, a completed NIAC, a completed CI-security interview, a National Security Determination by the DoD CAF, and a favorable military suitability determination rendered by the service accession organization. If derogatory information is revealed in the background investigation or NIAC and cannot be mitigated, the DoD CAF may request a polygraph examination as applicable. The Military Service may either administer a polygraph to resolve the issue or separate the individual. Applicants refusing to consent to a polygraph examination will be separated.

3.   Continuous Monitoring (CM). The Services will execute annual comprehensive counterintelligence CM throughout each MAVNI's period of military service. Services shall use the JPAS (or its successor DISS) to record completion of annual CM and vetting status throughout their periods of military and government service.

   a.   Continuous Monitoring requirements: The Service CI-element will conduct, at a minimum, a NIAC on each MAVNI serving, annually. Any derogatory information identified by CM (or separately by the unit) will be reported per DoDI 5200.02. If the CAF cannot mitigate derogatory information, the DoD CAF may request a CI-security interview and/or a polygraph examination, as applicable. The Military Service may administer a polygraph and/or interview to resolve the issue or separate the individual. Service members refusing to consent to a polygraph examination and/or interview will be separated. This process will serve as CM until further capabilities are available.

   b.   Reporting requirements: Annually in September, each Service Deputy Chief of Staff for Manpower and Personnel will submit a comprehensive report of all MAVNIs serving in all Components to its Service CI-element, USD(I), and USD(P&R). An initial submission is due to those organizations within 60 days of the date of this memorandum. The listing shall include at a minimum the name, DoD ID number, job title, unit of assignment, country of origin, native language, and security clearance classification if any. This reporting requirement is intended to inform and facilitate Service CI-elements execution of CM.

4.   Security Clearance Eligibility Requirements. MAVNIs will be designated in JPAS (or its successor DISS) as not eligible for an interim security clearance or access until the completion of first enlistment and a positive national security eligibility determination is made by the DoD CAF. Commands may request eligibility for a clearance for MAVNIs through its Service security manager after ensuring MAVNIs have completed the first enlistment and meet all other requirements for a clearance. The DoD CAF is responsible for adjudicating completed personnel security background investigations to render a determination of each individual's eligibility to access classified information and may require the Military Components to submit a request for an updated background investigation, updated CI-security interview, or NIAC as

4

EXHIBIT 3
Page 7 of 9

applicable, prior to rendering a security clearance eligibility determination. If the CAF cannot mitigate derogatory information, the DoD CAF may request a CI-security interview and/or a polygraph examination, as applicable. The Military Service may administer a polygraph and/or interview to resolve the issue or separate the individual.

EXHIBIT 3
Page 8 of 9

## DoD MAVNI Security and Suitability Sequence Map



EXHIBIT 3
Page 9 of 9

Attachment 2

6

**<u>EXHIBIT 4</u>**

TO

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

SAMR

6 JAN 2017

MEMORANDUM FOR

Deputy Chief of Staff, G-1, 300 Army Pentagon, Washington, DC 20310-0300

Deputy Chief of Staff, G-2, 1000 Army Pentagon, Washington, DC 20310-1000

SUBJECT: Authority to Reinstate the Military Accessions Vital to the National Interest Pilot Program

1. References:

a. Memorandum, Under Secretary of Defense (Personnel and Readiness), 30 September 2016, subject: Military Accessions Vital to the National Interest Pilot Program Extension.

b. Memorandum, Under Secretary of Defense (Personnel and Readiness), 30 September 2016, subject: Military Accessions Vital to the National Interest Pilot Program.

2. In accordance with reference, 1a, I hereby authorize the Deputy Chief of Staff (DCS), G-1 to reinstate the Military Accessions Vital to the National Interest (MAVNI) program for 2017 only after the currently enlisted MAVNI population (in the: permanent party, training base, and Delayed Entry Pool) have received the required background investigations and have received a favorably adjudicated suitability determination or have initiated the separation process. This authority will expire on 30 September 2017 unless rescinded earlier.

3. Additionally, per reference 1a, the DCS G-2 must ensure that all individuals who enlisted via the MAVNI program are subjected to continuous monitoring (annual NIAC check) throughout their period of service.

4. Until such time as the DCS G-1 has notified me, in writing, that all individuals who enlisted via the MAVNI program prior to 30 September 2016 have received a favorable military suitability determination or have initiated the separation process; and the DCS G-2 has notified me, in writing, that continuous monitoring is underway; no new MAVNI enlistments are authorized.

5. All MAVNI applicants must submit to a National Intelligence Agency Check (NIAC), a Tier 3 (formerly National Agency Check with Law and Credit) or Tier 5 (formerly Single Scope Background Investigation) Personnel Security Investigation (as applicable), completion of a Counterintelligence (CI) - Security Interview, a polygraph examination as applicable and a favorable military suitability recommendation rendered by the DoD Consolidated Adjudications Facility (DoD CAF).

EXHIBIT 4
Page 1 of 2

SAMR
SUBJECT: Authority to Reinstate the Military Accessions Vital to the National Interest Pilot
Program

6. In accordance with reference, 1b, in order to remain eligible to ship to basic training, all
MAVNI applicants must remain in a valid immigration status until they enter active duty or
active duty for training.

7. I direct that Soldiers who do not receive a favorable NIAC result or a favorable military
suitability determination from their background investigation (Tier 3 or Tier 5) be processed
for separation IAW AR 625-200 or AR 135-178. Additionally, if a Soldier is determined to be
unfit for citizenship by the United States Citizenship and Immigration Service (USCIS), the
Soldier will be processed for separation. I further direct that any Soldier discharged under
these authorities receive a Re-Entry (RE) code of 4.

8. MAVNI enlistees must receive favorable NIAC results and a favorable military suitability
determination before being authorized to ship to Basic Training. Exceptions are not
authorized except through written authorization by the Deputy Assistant Secretary of the
Army (Military Personnel/Quality of Life) (DASA-MPQ).

9. MAVNI enlistees (excluding HCPs and Chaplains) are ineligible to reclassify, apply for
officer producing programs or positions/programs that require a security clearance during
their initial term of enlistment. For purposes of reenlistment into a Military Occupational
Specialty requiring a security clearance or access, individuals must have a favorably
adjudicated Tier 3 or Tier 5 background investigation rendered by the DoD CAF, a completed
CI-Security Interview and favorable annual continuous monitoring results. Exceptions to
reclassify are not authorized except through written approval by the Deputy Assistant
Secretary of the Army (Military Personnel/Quality of Life) (DASA-MPQ).

10. The DCS G-1 and DCS G-2 will factor in associated costs for screening, background
investigations and CI-Security Interviews into their annual budget. Ensure that the Army
Budget Office is informed of all associated costs.

11. The DCS G-1 is required to submit a quarterly report, as well as an annual report NLT 30
September each year, through the DASA MPQ, to this office that addresses the following:

   • Annual MAVNI accession numbers by language and MOS.

   • Number of MAVNI applicants who failed to receive favorable adjudication

   • Results of the Army's continuous monitoring program (separate report may be
required due to potentially sensitive material).

   • A consolidated list that contains: Name, DoD ID number, job title, unit of assignment,
country of origin, native language, and security clearance classification if any.

12. Point of contact for this action is Mr. Lin H. St. Clair, linden.h.stclair.civ@mail.mil or 703-
695-4423.

Debra Swade

DEBRA S. WADA

EXHIBIT 4
Page 2 of 2

2