1

District Court Judge Thomas S. Zilly

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9
Kirti Tiwari, Seung Yoon Yang, Amandeep
Singh, Duncan Makau, Valdeta Mehanja,
Luobin Sun, Rui Zhang, and Raj Chettri,

No. 2:17-cv-00242-TSZ

10

Plaintiffs,

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF BASED ON
DEPRIVATION OF
CONSTITUTIONAL RIGHTS**

11

12
v.

13
James Mattis, Secretary, U.S. Department of
Defense, in his official capacity,

14

Defendant.

15

16

17
        Plaintiffs Kirti Tiwari, Seung Yoon Yang, Amandeep Singh, Duncan Makau, Valdeta

18
Mehanja, Luobin Sun, Rui Zhang, and Raj Chettri, by and through their counsel of record,

19
Atkinson Conway & Gagnon and MacDonald Hoague & Bayless, hereby claim and allege as

20
follows:

**JURISDICTION AND VENUE**

21

22
        1.      This action challenges unconstitutional national origin discrimination imposed

23
by, *inter alia*, Department of Defense (DoD) guidance memoranda that, *inter alia*, summarily

24
deny Plaintiffs -- who are all naturalized U.S. citizens -- the ability to apply for security

25
clearances until after the term of their initial military enlistment, thereby crippling their

26
military careers and preventing them from using their talents for the benefit of the national

27
defense.

FIRST AMENDED COMPLAINT - 1
Case No. 2:17-cv-00242-TSZ

**ATKINSON, CONWAY & GAGNON**
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

2.     This action arises under the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2201 – 2202 (the Declaratory Judgment Act); and the Constitution.  Venue in this District is authorized by 28 U.S.C. § 1391(e)(1)(C) (judicial district in which a plaintiff resides).

## THE MAVNI PROGRAM

3.     The Military Accessions Vital to National Interest (MAVNI) Program was designed to address critical shortages of personnel in the U.S. Armed Services by allowing noncitizens to enlist in the U.S. military if they were legally present in the United States and did not yet have "green cards" (lawful permanent residence) but met certain other requirements.

4.     The MAVNI program was initially authorized by Secretary of Defense Robert Gates in November 2008.  Secretary Gates authorized the U.S. Armed Services to recruit two categories of MAVNI enlistees: (1) Health Care Professionals (HCPs), who were legally present noncitizens with certain U.S. medical licenses or credentials, and (2) language enlistees, who were legally present noncitizens who had demonstrated expertise in certain strategic foreign languages.  Army MAVNI enlistees were required to meet all of the usual requirements for enlistment except that they were required to score higher on the Armed Forces Qualification Test (AFQT) than other military recruits and were ineligible for any "moral" or conduct waivers.

5.     MAVNI recruits were required to apply for naturalization as United States citizens, and were advised of this requirement, as part of the enlistment contract process. The naturalization process requires the noncitizen to complete USCIS Form N-400, undergo extensive Department of Homeland Security background checks (including an FBI name check), pass English and civics tests, be interviewed by a United States Citizenship and Immigration Services (USCIS) officer, and participate in a naturalization oath ceremony.

FIRST AMENDED COMPLAINT - 2
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

6.    The MAVNI program initially began recruiting people in 2009.  Recruits enlisted through the MAVNI program were assured repeatedly, both orally and in writing, that they would have the same career opportunities, once naturalized, as any other United States citizen serving in the United States Armed Forces.  For example, the MAVNI Information Paper (updated September 2012) states:

> Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible.  To become an officer, you must be a U.S. citizen and you must also be eligible to receive a security clearance.  You must be recommended to become an officer, and you will most likely have to work in your unit for at least a year so that your commander will have time to evaluate you and make a recommendation.

(Exhibit 1, pp. 6-7, <u>see</u> <u>also</u> Exhibit 2, pp. 6-7)

7.    Most jobs in the military require a security clearance, and promotion to higher ranks almost universally requires a security clearance.

8.    All officers must have a security clearance, so someone who cannot obtain a security clearance cannot become an officer.

9.    For example, all Army doctors are officers, so an individual cannot serve as an Army doctor without obtaining a security clearance.

10.    Individuals also cannot serve in many enlisted and non-commissioned officer positions without obtaining a security clearance, including almost all positions in Military Linguistics, Military Police, Military Intelligence, Signal Corps, Special Operations, Psychological Operations, the Defense Attache System, and Civil Affairs.  Even many positions within non-sensitive branches of the Service (*i.e.*, Transportation, Quartermaster, Artillery, Infantry, *etc.*) require a security clearance.  For example, soldiers having access to

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  advanced military technology, or even simply administrative access to other soldiers' Social

2  Security numbers, must have a security clearance.

3      11.    The MAVNI Program has resulted in measurable benefits to the U.S. Armed

4  Forces.  The DoD commissioned an independent consulting firm, Human Resources

5  Research Organization (HumRRO), to review and evaluate the program.  Their February 20,

6  2013, report concludes variously that:  "[b]ased on characteristics in our analyses, MAVNI

7  Soldiers compare exceptionally well to non-MAVNI Soldiers. . . .  [They] bring a

8  significantly higher level of language proficiency to the Army than do their Army Special

9  Operations Forces (ARSOF)-trained and Defense Language Institute (DLI)-tested

10  counterparts, thereby increasing the Army's capability in critical languages.  . . .  [They] have

11  higher predicted performance than non-MAVNI Soldiers based on the GT [General

12  Technical] score even when the model controls for education, sex, and race.  . . .  The

13  majority of supervisors indicated that proficiency in reading, writing, speaking, and

14  understanding English among [Critical Foreign Language] CFL-MAVNI Soldiers was the

15  same as or better than native-English speaking Soldiers. . . .  Evaluation results indicate that

16  CFL-MAVNI Soldiers are of high 'quality' – findings that are consistent with the selection of

17  a CFL-MAVNI recruit as the Army's 2012 Soldier of the Year. . . .  More than half [of

18  MAVNIs] indicated that they would probably or definitely stay in the Army until

19  retirement."

20      12.    Initially, MAVNI recruits were subject to the normal military and DHS

21  security checks required of noncitizens entering the U.S. Armed Services.  Once MAVNI

22  recruits became naturalized U.S. citizens, they could apply for security clearances just like any

23  other U.S. citizen serving in the U.S. Armed Services. They could also apply to "re-classify"

24  into jobs that required a security clearance.

25      13.    Naturalized citizens who had been recruited through the MAVNI program

26  have, since 2009, received all levels of security clearances, including Top Secret clearances,

27

FIRST AMENDED COMPLAINT - 4
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   and have gone on to successful careers as linguists, intelligence officers, doctors, military

2   police officers, and in other fields requiring a security clearance.

3       14.    The U.S. Government has different types of security clearances, which allow

4   access to certain types of classified information.  Information may be classified as

5   Confidential, Secret, and Top Secret, as well as "Top Secret—Sensitive Compartmentalized

6   Information" or "TS/SCI."  The levels of clearance correspond to the level of access the

7   person is permitted to have to classified information.  A person serving in the United States

8   Armed Services must have the level of clearance required for his or her job in order to hold

9   that position, with limited exceptions.  For example, a person who wants to be an officer on

10  active duty in the U.S. Army must hold, at a minimum, a "Secret" clearance, which allows the

11  person to access information stamped "Secret" or "Confidential, " but does not allow the

12  person to access "Top Secret" information.

13      15.    To obtain a security clearance, a person must undergo a background

14  investigation. The level and type of investigation corresponds to the type of clearance the

15  person is seeking.  A Single Scope Background Investigation (SSBI) has been typically

16  reserved for people requiring a Top Secret security clearance and access to sensitive

17  compartmented information (SCI).  An SSBI is typically not required for persons who only

18  seek access to Secret, Confidential, or lower level information.

19      16.    An SSBI is a time-consuming and detailed investigation.  The individual must

20  complete an exhaustive questionnaire and is interviewed personally by a trained investigator,

21  often for several hours.  The individual's close relatives, references, employers, neighbors,

22  and colleagues are interviewed.  Various checks are also run, including credit checks and

23  criminal background checks.

24      17.    United States citizens who enlist in the United States Armed Services are only

25  required to undergo an SSBI if their job requires a Top Secret clearance.  Beginning in 2012,

26  however, the DoD ordered all MAVNI recruits to undergo an SSBI.  Once they were

27  citizens, however, MAVNIs were treated like all other U.S. citizens serving in the U.S.

FIRST AMENDED COMPLAINT - 5
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  Armed Services.  Specifically, MAVNIs were eligible for the clearances available to any U.S.

2  citizen who could pass the security check required for that level of clearance.  This equal

3  treatment changed, however, in the fall of 2016.

4        18.    On September 30, 2016, Peter Levine, Acting Under Secretary of Defense for

5  Personnel and Readiness, signed and issued a DoD memorandum entitled "Military

6  Accessions Vital to the National Interest Pilot Program Extension," which was distributed

7  by DoD to the Army, Navy, and Air Force.  (Exhibit 3)  This memo extends the MAVNI

8  program through September 30, 2017, but also implements significantly revised accession,

9  eligibility, and screening protocols.  Per the memo, DoD states "this guidance will serve as a

10  single source document for the administration of the MAVNI program and replaces all

11  previously issued program guidance."  Significantly, the memo states that "MAVNIs will be

12  designated . . . as not eligible for an interim security clearance or access until the completion

13  of first enlistment and a positive national security determination is made by the DoD CAF

14  [Consolidated Adjudications Facility]." (Id., p. 6, emphasis added.)

15        19.    The September 30, 2016 DoD memo had an immediate and negative impact

16  on naturalized U.S. citizens who had enlisted in the U.S. Armed Services through the

17  MAVNI Program.  U.S. citizens who had entered the Army through the MAVNI Program

18  were told that they were no longer eligible for any form of security clearance and therefore

19  could no longer progress in their jobs, become officers, sign ROTC contracts, attend OCS,

20  or reclassify into other jobs in the military -- such as military linguist -- that require a security

21  clearance.  The bar to obtaining a security clearance also applied in their civilian jobs, for

22  example, if they were Reservists who sought work with defense contractors or Federal

23  agencies.

24        20.    On January 6, 2017, the Department of the Army, Office of the Assistant

25  Secretary for Manpower and Reserve Affairs, issued a guidance memoranda which similarly

26  provided that "MAVNI enlistees . . . are ineligible to reclassify, apply for officer producing

27

FIRST AMENDED COMPLAINT - 6
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    programs or positions/programs that require a security clearance during their initial term of

2    enlistment." (Exhibit 4, p. 2)

3        21.    MAVNI naturalized U.S. citizens are now being treated differently from other

4    U.S. citizens who serve in the military. Other U.S. citizens serving in the military -- who

5    have undergone far less background screening than MAVNI recruits -- are not barred from

6    obtaining security clearances during their first term of service. Natural-born U.S. citizens

7    can immediately apply for a security clearance when they enlist, even if they have not

8    undergone the extensive background checks required of MAVNIs.

9        22.    In denying security clearances to U.S. citizens naturalized through the MAVNI

10   program as a class, DoD violated Executive Order 12968 ("Access to Classified

11   Information," 8/2/1995) § 3.1(c) which provides "[t]he United States Government does not

12   discriminate on the basis of race, color, religion, sex, **national origin**, disability, or sexual

13   orientation in granting access to classified information." (Emphasis added.)

14       23.    In denying security clearances to U.S. citizens naturalized through the MAVNI

15   program as a class, DoD violated Executive Order 12968 ("Access to Classified

16   Information," 8/2/1995) § 3.2(a) which provides "[e]ligibility for access to classified

17   information **shall be based** on information **concerning the applicant** or employee that is

18   acquired through investigation conducted pursuant to this order or otherwise available to

19   security officials and shall be made part of the applicant's or employee's security record."

20   (Emphasis added.)

21       24.    The DoD, in issuing the September 30, 2016 and January 6, 2017 guidance

22   memoranda, neglected to review the legality of adopting a blanket prohibition on naturalized

23   MAVNI soldiers applying for security clearances including, in particular, failing to review

24   Executive Order 12968 or the decision in Huynh v. Carlucci, 679 F. Supp. 61, 66 - 67

25   (D.D.C. 1988) ("Defendant has offered insufficient evidence that national security would be

26   prejudiced if the Defense Department were required to accord newly naturalized citizens the

27   same case-by-case security review given other security clearance applicants.").

FIRST AMENDED COMPLAINT - 7
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

25.     There is no rational, much less compelling, basis for barring U.S. citizens who entered the military through the MAVNI program from applying for security clearances during their first term of enlistment.  There is no rational, much less compelling, basis for barring them from applying to become officers or barring them from numerous other positions – such as a military linguist – that require a security clearance.

## THE PLAINTIFFS

### A.     Kirti Tiwari

26.     Plaintiff KIRTI TIWARI is a United States citizen who naturalized on August 25, 2015.

27.     TIWARI is presently an Army Health Care Specialist (E4) assigned to 514th Medical Company (Ground Ambulance), Joint Base Lewis-McChord near Tacoma, Washington.

28.     TIWARI is a native of India.  TIWARI obtained a Bachelor of Technology degree in Biotechnology from the National Institute of Technology, in Allahabad, India, in 2010.  TIWARI enrolled in the University of Houston in the spring of 2011.  He obtained a Master's degree in Molecular Biology from the University of Houston in the fall of 2012.

29.     TIWARI remained in lawful immigration status during his time in the United States by holding an F-1 student visa or performing Optional Practical Training (OPT).  After graduation from the University of Houston, TIWARI worked as a Research Specialist at the Baylor College of Medicine and Texas Children's Hospital.

30.     TIWARI enlisted in the United States Army under the MAVNI Program on June 24, 2014 for an eight (8) year term of service; the first four (4) years being Active Duty, with the remainder in the Army Reserve.  TIWARI qualified for the MAVNI program based on his fluency in English and Hindi, academic accomplishments, excellent Army test scores, and physical fitness.

31.     TIWARI was told by his recruiter that after he became a naturalized U.S. citizen and graduated from Basic Combat Training (BCT) and Advanced Individual Training

FIRST AMENDED COMPLAINT - 8
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

(AIT), he would be treated like any other American soldier including with regard to applying for or attending officer-producing programs.

32.    After TIWARI enlisted, he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on or about February 19, 2015.

33.    Over several months in 2016, TIWARI assembled materials to submit to the Army Medical Department (AMEDD) Accession Board for promotion to Area of Concentration (AOC) 71A (Microbiologist) or 71E (Clinical Laboratory Scientist), which would result in him becoming a commissioned officer.  If so advanced, TIWARI would likely have been assigned to Walter Reed Army Institute of Research (WRAIR).  After gaining further experience as a research Army Microbiologist or Scientist, TIWARI intended to apply to a doctoral program through the Army Long Term Health Education and Training (LTHET) Program.

34.    In addition to applying to the AMEDD Accession Board, TIWARI also applied in 2016 to the NASA Astronaut Candidate Program.

35.    TIWARI was required to obtain letters of recommendations from his prior employers as part of the AMEDD Accession Board application process.  His thesis advisor at the University of Houston wrote that "[a]mong the top notch students that I have taught, I would rate him in the top 10%."  The research professor he subsequently worked with at the Baylor College of Medicine and Texas Children's Hospital wrote:

> I consider him as one of the most diligent and rigorous
> researchers I have come across.  . . .  We were able to publish
> two manuscripts from the data generated during his time here
> and that speaks volumes about his work.  He was first author
> on both of those manuscripts.  His research work has been
> presented in various conferences and has been published in
> international journals.  His acceptance of responsibility and
> constructive criticism and feedback is commendable.  His
> decision-making skills, attention to detail, intellectual and
> leadership abilities set him apart from his peers.

FIRST AMENDED COMPLAINT - 9
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

I am confident he will become an outstanding professional in his field of expertise.  He will be a great mentor and a leader for any organization to have.  I can attest to the fact that Kirti is exactly the kind of skilled, talented and dedicated leader you need in an organization like the Army and he will not hesitate to put organizational interest above anything else.

36.    TIWARI's commanding officer wrote in support of his AMEDD Accession Board application that:

SPC Tiwari is an excellent junior leader.  His ability to listen and appropriately interpret orders is a testament to his mission success.  His peers listen and trust him to lead them and he is looked highly upon by seniors and subordinates alike.  . . .  I highly recommend SPC Tiwari be selected for commissioning. It would be an extreme disservice to the Army and our country to not invest in this intelligent and confident young leader.  It is a privilege and honor to serve with him.  Select now!

37.    TIWARI's Brigade Commander wrote in support of his AMEDD Accession Board application that:

Immediately he demonstrated extensive leadership abilities and superb fitness.  His contribution to the unit has been outstanding in every way, as he has demonstrated solid adherence to Army values, outstanding competence, tremendous energy, and humbleness of spirit.  People enjoy working with SPC Tiwari!  . . .   Our command was recently formally notified of his acceptance as an Army nominee into the NASA Astronaut program, notably as an enlisted soldier.  . . . Without reservation, I recommend SPC Tiwari for accession as an officer.

38.    On November 2, 2016, TIWARI was informed through his Recruiting Station Commander of the unofficial AMEDD Board results that included TIWARI for promotion and commissioning to AOC, 71A, Microbiologist.

FIRST AMENDED COMPLAINT - 10
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

39.     Shortly thereafter, however, TIWARI was told that, because of the September 30, 2016, memo from Acting Under Secretary of Defense for Personnel and Readiness Peter Levine, naturalized MAVNI soldiers such as TIWARI are ineligible to apply for or obtain a security clearance during their initial term of enlistment.

40.     With the help of his chain of command, TIWARI was recently able to re-enlist prior to the scheduled ending of his original term of enlistment.  Since TIWARI is now in his second enlistment, he is attempting to obtain a security clearance (although he has been advised that he needs to redo the investigation, which may take 6 months or more).  The United States Army Recruiting Command (USAREC), however, is at times advising that TIWARI still needs to wait the actual number of years listed on his initial enlistment contract before he can apply to the Army Medical Department (AMEDD) Accession Board for the 71A Microbiologist position irrespective of the fact that he has now re-enlisted.  At other times, USAREC is now advising that TIWARI cannot apply for the 71A Microbiologist Position without first actually receiving an active security clearance, which is not the case for civilians or other soldiers who apply to the board.  Civilians or other soldiers can apply, be selected, and attend the Basic Officer Leadership Course, for example, without first receiving an active security clearance.

41.     The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and other actions taken by DoD, severely limit TIWARI's ability to serve his country, deny TIWARI the opportunity to advance in his chosen career in the U.S. Army, and treat TIWARI as a second class citizen.

**B.     Seung Yoon Yang**

42.     Plaintiff SEUNG YOON YANG is a United States citizen who naturalized on February 17, 2016.

43.     YANG is presently an Army Specialist (E4) serving as a Combat Engineer in a Sapper Platoon with A Company, 6th Brigade Engineer Battalion (ABN), 4th Infantry

FIRST AMENDED COMPLAINT - 11
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    Brigade Combat Team, 25th Infantry Division (4-25 IBCT) at Joint Base Elmendorf-

2    Richardson (JBER) in Anchorage, Alaska.

3         44.    YANG is a native of South Korea but spent much of his life in the United

4    States.  His father attended an MBA program at MIT beginning in 2002 and YANG

5    attended 5th, 6th and 7th grade in Newton, Massachusetts.  YANG went to high school at

6    Portsmouth Abbey School, a boarding school in Portsmouth, Rhode Island.  YANG

7    attended the University of Chicago graduating in 2015 with dual degrees (Bachelor of

8    Science in Statistics and Bachelor of Arts in Economics).

9         45.    YANG remained in lawful immigration status during his time in the United

10   States by holding an F-1 student visa or performing Optional Practical Training (OPT).

11   YANG worked variously as a research assistant at the University of Chicago Crime Lab and

12   as a research assistant at the Woodrow Wilson International Center for Scholars in

13   Washington, D.C.

14        46.    YANG enlisted in the United States Army under the Military Accessions Vital

15   to National Interest (MAVNI) Program on January 14, 2015 for an eight (8) year term of

16   service, the first four (4) years and sixteen (16) weeks being Active Duty; with the remainder

17   in the Army Reserve.

18        47.    YANG qualified for the MAVNI program based on his fluency in English and

19   Korean, his academic accomplishments, his excellent Army test scores, and his physical

20   fitness.

21        48.    YANG was assured orally by his recruiter and in writing by the ARMY that

22   MAVNI was simply an enlistment option and that once he joined the ranks and became a

23   U.S. citizen he would be treated the same as all other soldiers.  In particular, YANG was

24   assured that he would be given the same opportunities for advancement including the ability

25   to apply to officer-producing programs.  For example, YANG was provided with a MAVNI

26   Information Paper signed by his Recruiter and the Recruiter's Station Commander which

27   stated that: "[o]nce you enter the Army, you will have all the same opportunities afforded to

FIRST AMENDED COMPLAINT - 12
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements,

2   you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer

3   Candidate School (WOC) or any other Army school or program for which you are eligible."

4        49.    In April 2016, YANG 's leadership recommended that he apply for Officer

5   Candidate School (OCS).  YANG then attempted to obtain a security clearance in order to

6   apply for OCS.  YANG, however, was told in late fall 2016 that a recent DoD guidance

7   memo now prohibits MAVNI soldiers from applying for a security clearance until after their

8   first term of enlistment.

9        50.    YANG subsequently learned that a security clearance was not required to

10  initiate an application packet for the Army's Green to Gold Scholarship Program.  He began

11  to alternatively pursue that route to eventually become an officer and simultaneously further

12  his education.  His commanding officers stated in his Chain of Command Evaluation for his

13  application that "SPC Yang has the skills, intellect, and discipline to be an Army Officer.  . .

14  . SPC Yang has excellent intellectual skills and a strong desire to learn.  . . .  He is a humble

15  and smart Soldier  . . .  He is Airborne qualified and has progressed as an Arctic Paratrooper

16  over the last 8 months.  . . .  Soldiers of equal rank in the Company look up to SPC Yang

17  based on his qualities and his achievements.  I feel he is an excellent candidate for the

18  Army's Green to Gold program."

19       51.    As part of the Green to Gold application process, YANG obtained offers of

20  admission from Columbia University and Georgetown University Master's Degree Programs

21  in Statistics.

22       52.    On January 6, 2017, however, DoD issued a new memorandum stating that

23  MAVNI soldiers are not allowed to even apply to officer-producing programs (i.e., even if a

24  security clearance was not required during the initial phase of the program).

25       53.    In addition to now being prohibited from applying to any officer producing

26  programs, YANG 's inability to apply for or obtain a security clearance also seriously limits

27  his service as an enlisted soldier.  For example, YANG cannot attend any specialized training

FIRST AMENDED COMPLAINT - 13
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  designed for Combat Engineers without a security clearance, such as the Explosive

2  Ordinance Clearance Agent Course.  YANG will also need a clearance waiver to attend the

3  Basic Leader Course, which is a prerequisite for obtaining a promotion to Sergeant, since he

4  cannot apparently now obtain a security clearance or initiate a National Agency Background

5  Investigation.

6       54.  Army leadership is highly unlikely to promote junior enlisted soldiers who

7  cannot receive appropriate training or attend important schools due to clearance issues,

8  especially in combat Military Occupational Specialties (such as YANG 's MOS) where

9  hands-on skills are crucial for junior leaders.

10       55.  The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are

11  all naturalized U.S. citizens -- from applying for or receiving security clearances during their

12  initial term of enlistment, and other actions taken by DoD, severely limit YANG's ability to

13  serve his country, deny YANG the opportunity to advance in his chosen career in the U.S.

14  Army, and treat YANG as a second class citizen.

## C.  Amandeep Singh

16       56.  Plaintiff AMANDEEP SINGH is a United States citizen who naturalized on

17  July 27, 2016.

18       57.  SINGH is presently an active U.S. Army Reservist and Logistics Specialist

19  (E4) with the HHC, 518 Sustainment Brigade (SUS BDE) located in Knightdale, North

20  Carolina.

21       58.  SINGH is a native of India.  SINGH came to the United States in the fall of

22  2001 at the age of 18 on an F-1 visa to attend college at Texas Tech University in Lubbock,

23  Texas.  SINGH graduated from Texas Tech in 2007 with a Bachelor of Science degree in

24  electrical/electronic engineering.

25       59.  After graduating from Texas Tech, SINGH remained in lawful immigration

26  status in the United States while performing Optional Practical Training (OPT) and then by

27  holding a H-1B (professional work) visa.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

60.     Since graduating from Texas Tech, SINGH has worked continuously in the wireless and RF (radio frequency) fields for a number of employers, including as a field test engineer for Blackberry Ltd. and as a contracted verification test engineer for Microsoft Corporation.

61.     On July 23, 2015, SINGH enlisted in the United States Army Reserve under the MAVNI Program for an eight (8) year term of service.

62.     SINGH qualified for the program based on his fluency in English, Punjabi and Hindi, his academic achievements, his excellent Army test scores, and his physical fitness.

63.     During the MAVNI recruiting process, the recruiter told SINGH that, after one year as an enlisted soldier, he could apply to Officer Candidate School (OCS) and other officer-producing programs.  SINGH, along with his Recruiter, the Center Commander, and the Guidance Counselor, all signed a MAVNI "Information Paper" reiterating those same promises.

64.     After SINGH enlisted through the MAVNI program, SINGH was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

65.     As an individual holding an engineering degree with extensive professional experience in his field, SINGH is a logical candidate for selection to OCS.

66.     In late 2016, SINGH learned of a recent DoD memo stating that MAVNI soldiers cannot apply for or receive a security clearance until after their first term of enlistment.  This new rule precludes SINGH from applying to any officer-producing programs.

67.     SINGH now faces a delay of at least five (5) years before he can apply for a security clearance -- this despite the fact that he just recently passed an SSBI.

68.     The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their

1    initial term of enlistment, and other actions taken by DoD, severely limit SINGH's ability to

2    serve his country, deny SINGH the opportunity to advance in his chosen career in the U.S.

3    Army, and treat SINGH as a second class citizen.

### D.    Duncan Makau

5    69.    Plaintiff DUNCAN MAKAU is a United States citizen who naturalized on

6    September 15, 2016.

7    70.    MAKAU is presently a Unit Supply Specialist (E4) in Headquarter and

8    Headquarter Company (HHC), 4th Engineer Battalion, 36th Engineer Brigade, in Fort

9    Carson, Colorado Springs, Colorado.

10    71.    MAKAU is a native of Kenya who came to the United States in 2007 to

11    attend college at the United States Military Academy at West Point (USMA).  MAKAU

12    graduated from the USMA with a Bachelor of Science degree in General Engineering in

13    2011.

14    72.    MAKAU also obtained a Master in Business Administration degree from

15    North Central College in Naperville, Illinois in 2016.

16    73.    MAKAU qualified for the MAVNI program based on his fluency in English

17    and Swahili, his academic achievements, his excellent Army test scores, and his physical

18    fitness.

19    74.    MAKAU's initial term of enlistment, which began on March 22, 2016, is for

20    eight (8) years; the first four (4) years and twenty one (21) weeks being Active service, with

21    the remainder in the Army Reserve.

22    75.    After MAKAU enlisted through the MAVNI Program he was required to

23    undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported

24    back favorably on or about September 24, 2015.

25    76.    At the time MAKAU enlisted through the MAVNI Program, he was advised

26    he would be able to apply for positions that required a security clearance, such as Special

27

FIRST AMENDED COMPLAINT - 16
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    Operations.  He was also told that he would be able to apply for an officer commission since

2    he had graduated from the USMA.

3        77.    In late 2016, MAKAU learned of a DoD memo stating that MAVNI soldiers

4    cannot apply for or receive a security clearance until after their first term of enlistment.

5        78.    Because his eight-year enlistment began March 22, 2016, MAKAU has over

6    seven (7) years remaining before he can apply for a security clearance – this despite having

7    just passed an SSBI and having graduated from the USMA.

8        79.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are

9    all naturalized U.S. citizens -- from applying for or receiving security clearances during their

10   initial term of enlistment, and other actions taken by DoD, severely limit MAKAU's ability

11   to serve his country, deny MAKAU the opportunity to advance in his chosen career in the

12   U.S. Army, and treat MAKAU as a second class citizen.

13                          **E.    Valdeta Mehanja**

14       80.    Plaintiff VALDETA MEHANJA is a United States citizen who naturalized on

15   January 13, 2016.

16       81.    MEHANJA is presently a U.S. Army 15T Specialist (E4) assigned to Joint

17   Multinational Readiness Center (JMRC) Hohenfels, Germany where she works as a crew

18   chief on a LUH-72 Lakota Helicopter.  She is also certified as a UH-60-A/L/M Blackhawk

19   Helicopter mechanic.

20       82.    MEHANJA is a native of Kosovo.  Her family fled Kosovo in 1991 when she

21   was seven (7) years old.  Her family lived as refugees in Germany until returning to Kosovo

22   after the war in 2000.  Kosovo had been ravaged by the war and her family faced extreme

23   poverty and worked hard to make ends meet.

24       83.    At age 17, while finishing high school in Kosovo, MEHANJA was hired for

25   various clerical positions by contractors from the European Union and United Nations

26   organizations who gave her on-the-job IT training.  She was eventually recognized as one of

27   their top young employees.  MEHANJA was subsequently hired by DynCorp, an American

FIRST AMENDED COMPLAINT - 17
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

contracting company that was supporting NATO troops in Kosovo. DynCorp sent her to Iraq from 2004 to 2005. There she was promoted to IT Team Leader with responsibility for installing numerous complex data and radio networks in Baghdad, Tikrit and other locations.

84.     After taking time off to obtain several IT certifications, MEHANJA returned to work for DynCorp in 2006, this time in Afghanistan. There she installed and supported sophisticated voice and data communication systems that were often used in both overt and covert U.S. State Department counter narcotics law enforcement operations. This work included extensive involvement with ground-to-air and aircraft-to-aircraft communications and often involved working in hostile areas of the country.

85.     After four years in Afghanistan, MEHANJA recognized that she needed to further her education. Because of her experience with aircraft communication and her admiration for the pilots with whom she worked and flew (and who had at times come to her team's rescue under fire), she decided to apply to an aeronautical university. MEHANJA was accepted at Embry-Riddle University in Daytona Beach, Florida and began school there in the fall of 2010. MEHANJA paid for college and her flight training with the money she had saved while working in Iraq and Afghanistan. MEHANJA graduated from Embry-Riddle with a degree in Aeronautical Science in 2013. She continued on at Embry-Riddle after graduation to work on a Master's Degree in Science in Aeronautics with an emphasis in Aviation Aerospace Safety System.

86.     While at Embry-Riddle MEHANJA earned licenses and ratings including: fixed wing and rotor private and commercial pilot licenses; fixed wing and rotor instrument ratings; Airline Transport Pilot (ATP) license, multi-engine; Flight Instructor, fixed wing, single engine and multi-engine, instrument rating; and Flight Instructor, rotor aircraft, instrument rating.

87.     MEHANJA began working as a flight instructor for Embry-Riddle beginning in her third year of school there. In March 2015, she was selected "Flight Instructor of the Month" out of a highly competitive group of 180 flight instructors at the University. She

FIRST AMENDED COMPLAINT - 18
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   was selected by Embry-Riddle in 2013 and again in 2014 to serve as Pilot-in-Command of

2   the school's entry in the Women's Air Race Classic, a four-day transcontinental flight

3   competition. Her team won the collegiate division both years and finished third overall in

4   2013 and second overall in 2014. MEHANJA served as Flight Supervisor and Acting Chief

5   Flight Instructor at Embry-Riddle. She presently has approximately 2,000 hours of flight

6   time.

7       88.    MEHANJA enlisted in the United States Army under the Military Accessions

8   Vital to National Interest (MAVNI) Program on February 27, 2015. Under the delayed

9   entry program, she shipped out to Basic Combat Training (BCT) on September 1, 2015.

10  Her enlistment term is for six (6) years in the Regular Army. MEHANJA qualified for the

11  MAVNI program based on her fluency in English and Albanian (she is also fluent in

12  German); academic accomplishments; excellent Army test scores; and physical fitness.

13      89.    Prior to her enlistment, MEHANJA remained in lawful immigration status

14  during her time in the United States by holding an F-1 student visa or an H-1B work visa.

15      90.    At Basic Combat Training (BCT), MEHANJA was selected to be an Assistant

16  Platoon Guide and graduated with the highest female Army Physical Fitness Test score in

17  her platoon. She graduated Advanced Individual Training (AIT) as a UH-60 Blackhawk

18  repairer with a 97% GPA and honors from the Aviation Logistics School. She also served as

19  squad leader. While serving as a Blackhawk Repairer and Lakota Helicopters Crew Chief at

20  her current duty station in Hohenfels, Germany, MEHANJA was selected as the Joint

21  Multinational Readiness Center Soldier of the Month in September 2016.

22      91.    Critical to MEHANJA's decision to enlist through the MAVNI Program was

23  the assurances she received from her Recruiter and the MAVNI Information Paper that she

24  would be able to apply to Warrant Officer Candidate School (WOC) or Officer Candidate

25  School (OCS). As a Warrant Officer, she would be able to ensure that her ultimate

26  assignment was that of a pilot (MOS 153A, rotary wing aviator). Her goal was to become a

27  Blackhawk Helicopter pilot.

FIRST AMENDED COMPLAINT - 19
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

92.    MEHANJA was repeatedly told that after she naturalized as a U.S. citizen, she would have the same career opportunities as any other soldier in the Army. The MAVNI "Information Paper" that she signed, and that was also signed by her Recruiter, the Recruiting Center Commander, and the Recruiting Center Guidance Counselor, promised the same thing: "Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army. If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible."

93.    After her enlistment, MEHANJA was required to undergo an extensive Single Scope Background Investigation (SSBI). That investigation reported back favorably.

94.    After completing her introductory training, MEHANJA began the lengthy process of preparing a packet for the Warrant Officer Board, which included obtaining a security clearance. After a thorough investigation (and pending issuance of a final security clearance by the DoD Central Adjudicative Facility (CAF) in Fort Meade, Maryland), the Army Joint Multinational Readiness Center (JMRC) in Hohenfels, Germany, issued MEHANJA an Interim Security Clearance on November 9, 2016. At that time, both MEHANJA and JMRC were unaware that the September 30, 2016 memo from Acting Under Secretary of Defense Peter Levine, which announced that MAVNI soldiers were no longer eligible to receive a security clearance, would apply to already naturalized MAVNIs.

95.    As part of the packet for the Warrant Officer Board, MEHANJA was required to obtain letters of recommendation. The Lieutenant Colonel (Ret.) who worked with MEHANJA in Afghanistan wrote in his recommendation letter that "I have known her since 2006 when she was serving as a contractor Communications Technician in a State Department Aviation Program in Afghanistan. She was the 'go-to' person for any communications issues we had. As the Deputy Director (GS15) for the DOS Air Wing, I personally relied on her for the entire time she was in Afghanistan. . . . She has a great work

FIRST AMENDED COMPLAINT - 20
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

ethic and moral standards – I don't know where she learned it but she will pick the harder right instead of the easier wrong. . . . I give her my unconditional recommendation for Warrant Officer Flight Training. The Army needs people like SPC Mehanja in the Officer Corps."

96. MEHANJA's Brigade Commander during her Advanced Individual Training (AIT) wrote in his recommendation letter that "[SPC Mehanja] has thus far set the bar high in competence, character and commitment in all her training. She has earned the respect of her entire chain of command, from her Drill Sergeants to the Post Commander, and is deeply respected for her personal life story of courage and selflessness. . . . SPC Mehanja is a must select for the Warrant Officer Candidate School. She is dedicated and driven, constantly seeking self-improvement and ways to exceed her professional Army and personal goals. She is the extremely rare candidate that already possesses the qualities and requisite skills to become a U.S. Army Aviator as the Aviation Branch seeks to fill its quality Warrant Officer ranks. SPC Mehanja has unlimited potential and I give her my absolute highest recommendation for selection."

97. MEHANJA's current Executive Officer at JMRC Hohenfels, Germany, wrote in his recommendation letter "I served as the Flight Detachment Executive Officer over SPC Mehanja for 8 months and witnessed her superior disciple, confident leadership, and problem solving abilities on a daily basis. . . . SPC Mehanja should be your top selection as an Officer candidate . . ." Her present Battalion Commander wrote "[s]he is without a doubt one of the most competent, caring, and professional leaders I have worked with in 22 years of service. She possesses a strong intellect, physical presence, professional competence, moral character, and has served as a role model for all of the Soldiers and Leaders within our unit. . . . She is the leader that every Battalion Commander wants to have at the decisive point; and proves her worth every time. . . . It would be a great disservice to the United States Army to not appoint her into the U.S. Army Officer Candidate School."

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

98.     A few weeks after MEHANJA received her Interim Security Clearance, MEHANJA was told that because she is a naturalized MAVNI soldier, she is no longer eligible for a security clearance under the new DoD guidance and that she could no longer apply to become a Warrant Officer.

99.     If MEHANJA is required to wait until after the end of her initial six (6) year term of enlistment to apply for a security clearance, she will be several years past the age cutoff for application to either Warrant Officer Candidate School or Officer Candidate School; her flight currency will expire; and she will no longer be as competitive (if competitive at all) for a Warrant Officer 153A position.  Not only will this derail her Army career, but it will also have a large negative impact on any subsequent civilian career because airlines and aviation organizations typically only hire "current" pilots who are recent with their flight hours and have recent working familiarity with applicable regulations.

100.     The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and other actions taken by DoD, severely limit MEHANJA's ability to serve his country, deny MEHANJA the opportunity to advance in his chosen career in the U.S. Army, and treat MEHANJA as a second class citizen.

### F.     Luobin Sun

101.     Plaintiff LUOBIN SUN is a United States citizen who naturalized on March 18, 2015.

102.     SUN is presently an active U.S. Army Reservist, Specialist Rank (E4), with the 346th Psychological Operations Unit located in Columbus, Ohio.

103.     SUN is a native of China.  SUN came to the United States in 2011 on an F-1 visa to attend college at Ohio State University in Columbus, Ohio.

104.     SUN worked as a Student Officer with the Ohio State University Police Department through most of college.  In October 2014, SUN received a Merit Award, his Police Department's second highest police honor, for coming to the rescue of a Police

1   Sergeant who was being strangled by an intoxicated suspect. SUN was the first non-sworn

2   officer at the University to ever receive such an honor.

3        105.    On March 5, 2014, while attending Ohio State, SUN enlisted in the United

4   States Army Reserve under the MAVNI Program for an eight (8) year term of service.

5        106.    SUN qualified for the MAVNI Program based on his fluency in English and

6   Mandarin Chinese, his academic achievements, his excellent Army test scores, and his

7   physical fitness.

8        107.    SUN was told orally by his recruiter that he could apply to Officer Candidate

9   School (OCS) after he obtained his college degree and completed one year of service. This

10  same information was repeated in the MAVNI Program "Information Paper" he received.

11       108.    After SUN enlisted through the MAVNI program, he was required to undergo

12  an extensive Single Scope Background Investigation (SSBI). His SSBI was reported back

13  favorably on or about November 3, 2014.

14       109.    SUN returned to Ohio State after completing his initial Army Reserve training

15  in June 2015. SUN graduated from Ohio State in December 2016 with a Bachelor of

16  Science, double majoring in Business Administration and International Studies.

17       110.    On December 18, 2015, SUN became employed part-time with the

18  Department of Homeland Security, Transportation Security Administration (TSA) as a

19  Federal Officer providing security at Columbus International Airport.

20       111.    SUN began preparing his OCS application package in 2015. His commanding

21  officer wrote on September 28, 2015 that "SPC Sun is a talented member of the 1001st

22  Quartermaster Company, he has performed with distinction as a 92F, (Petroleum Supply

23  Specialist). I fully understand and support his aspirations to become a commissioned officer

24  through the Officer Candidate School. SPC Sun will make an exceptional officer." SUN's

25  Platoon Leader similarly wrote that "SPC Sun has excellent potential to become a fine

26  officer. I am convinced that SPC Sun's intelligence, professionalism and foreign language

27  skills will make him an asset to the Officer Corps."

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

112.    In late 2016, SUN learned that a recent DoD memorandum prohibited him from applying for or obtaining a security clearance during his initial term of service.

113.    SUN will be 32-years-old when his eight (8) year initial enlistment ends in 2022 and he finally becomes eligible to apply for a security clearance under the recent DoD guidance.  With a background check and OCS package likely taking a year or more to compete, he will then be 33 years old and past the 32-year maximum age to attend OCS.

114.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and other actions taken by DoD, severely limit SUN's ability to serve his country, deny SUN the opportunity to advance in his chosen career in the U.S. Army, and treat SUN as a second class citizen.

### G.    Rui Zhang

115.    Plaintiff RUI ZHANG is a United States citizen who naturalized on May 2, 2014.

116.    ZHANG is presently an Army Specialist (E4) serving as a Dental Specialist at Tripler Army Medical Center in Honolulu, Hawaii.

117.    ZHANG is a native of China, however, he moved with his mother to Japan at age 13 and never thereafter returned to China.  After completing high school in Japan, ZHANG came to the United States in 2006 at the age of 19 on an F-1 visa to attend college. ZHANG obtained a Bachelor of Science degree from UCLA in Molecular Cell Development Biology in 2013.

118.    Since arriving in the United States, and prior to becoming a citizen, ZHANG remained in lawful immigration status either on an F-1 student visa or while performing Optional Practical Training (OPT).  ZHANG has worked variously as a math teaching assistant, a math tutor, an assistant in an ophthalmology clinic, and as an EMT.

119.    ZHANG initially enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on July 16, 2013 for an eight (8)

FIRST AMENDED COMPLAINT - 24
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

year term of service, the first six (6) years being Active Duty, with the remainder in the Army Reserve.

120.    ZHANG qualified for the MAVNI program based on his fluency in English, Japanese, and Mandarin Chinese, academic background, excellent Army test scores, and physical fitness.

121.    After ZHANG enlisted through the MAVNI program, ZHANG was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

122.    ZHANG was told by his recruiter that, after one year of service, he would be able to apply to officer-producing programs such as Officer Candidate School, Reserve Officer Candidate Corps (ROTC), and Healthcare Professions Scholarship Program (HPSP). The official MAVNI "Information Paper" he received said the same thing.  Many of ZHANG's MAVNI friends had previously gone to, and successfully completed, OCS.

123.    The Health Professions Scholarship Program (HPSP) offers potential military physicians, dentists, nurses, and other health care professionals a paid medical education in exchange for an additional military service commitment.  All individuals joining the HPSP (if they are not already officers) are commissioned as a Second Lieutenant, which in turn requires a security clearance.

124.    In order to be selected for the HPSP, an applicant has to apply to and be accepted by the school they wish to attend.  ZHANG's goal was to enter medical school in the fall of 2017.  Towards that end, ZHANG spent many months taking additional prerequisite classes, preparing for and taking the MCAT, writing applications and school-specific essays, and obtaining recommendations.  Because admission to medical school is highly competitive, ZHANG has applied to many medical schools (like many other applicants) and has paid substantial application fees.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

125.    Based on ZHANG's strong academics, language skills, and the fact that he is already an Army soldier with an exemplary record, ZHANG's chances for acceptance to the HPSP program and medical school were very high.

126.    On September 6, 2016, ZHANG's Officer in Charge (OIC) wrote to the U.S. Army Central Personnel Security Clearance Facility stating "[r]equest to expedite Secret Clearance of SPC Zhang, Rui investigation which is currently scheduled to close for favorable adjudication.  This action is required to upgrade to attend the Officer's Commissioned School for Army Health Professions Scholarship Program (HPSP)."

127.    Approximately a month after submitting the September 6, 2016 memorandum, ZHANG learned that DoD had issued a new guidance memo stating that MAVNIs must wait until the end of the first term of enlistment -- six (6) years in ZHANG'S case – before applying for or receiving a security clearance.  This will delay for years ZHANG's dream of becoming a doctor and create much more work and expense.  Specifically, all ZHANG's present efforts to apply to medical school and HPSP will have been wasted.  ZHANG will have to retake some of the prerequisite courses and the MCAT as they will have expired.  ZHANG will then have to begin the application process to medical schools and HPSP all over again.

128.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers – who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and other actions taken by DoD, severely limit ZHANG's ability to serve his country, deny ZHANG the opportunity to advance in his chosen career in the U.S. Army, and treat ZHANG as a second class citizen.

### H.    Raj Chettri

129.    Plaintiff RAJ CHETTRI is a United States citizen who naturalized on February 4, 2014.

FIRST AMENDED COMPLAINT - 26
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

130.    CHETTRI is a Sergeant, E-5, currently stationed at Joint Base Lewis-McCord near Tacoma, Washington.  CHETTRI is attached to Maintenance Platoon, Bravo Company, 46th Aviation Support Battalion, 16th Combat Aviation Brigade.

131.    CHETTRI is a native of Nepal who came to the United States in the fall of 2002 to attend college at San Jacinto Community College in Houston, Texas.  He obtained an Associate Degree there in 2007.  He graduated from the University of Houston *summa cum laude* in December 2011 with a Bachelor of Science degree in hotel and restaurant management and a minor in global business.  CHETTRI is now pursuing a Masters of Science degree in computer information systems at Florida Institute of Technology, which is affiliated with the Army for distance learning.

132.    CHETTRI remained in lawful immigration status during his time in the United States by holding an F-1 student visa or performing Optional Practical Training (OPT).

133.    CHETTRI enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on June 10, 2013, for an eight-year term of service: the first six years is Active Duty, the remainder is in the Army Reserve.

134.    CHETTRI qualified for the MAVNI program based on his academic accomplishments, Army test scores, physical fitness, and fluency in Hindi.  He is also fluent in English, Nepalese and Russian.

135.    CHETTRI was repeatedly told by his recruiter that after he received his initial training and citizenship, that the Army would treat him like any other U.S. citizen and that he would be allowed to apply to schools and different Military Occupation Specialties (MOSs) just like any other soldier.

136.    After enlistment CHETTRI was required to undergo an extensive Single Scope Background Investigation (SSBI) which reported favorably on August 20, 2013.

FIRST AMENDED COMPLAINT - 27
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

137.    CHETTRI graduated as the Distinguished Graduate of his Advanced Individual Training (AIT) Apache helicopter maintenance course at Fort Eustis, Virginia, in 2014.

138.    CHETTRI's first duty station was at Camp Humphreys in South Korea where he served as an Apache mechanic.  Towards the end of that tour, he began looking for other opportunities where he could use his talents to contribute to the Army in a bigger way.  At that time CHETTRI was receiving Army recruiting emails suggesting he consider applying for Cyber Operations Specialist (MOS 17C).  CHETTRI assumes the Army selects soldiers to receive various recruiting emails based on their test scores, foreign language abilities, and other skills.

139.    One or more MAVNI soldiers are presently working as Army Cyber Operations Specialists.

140.    Army Cyber Operations Specialists are required to hold at least a Top Secret clearance.

141.    While near the end of his tour at Camp Humphreys in South Korea, CHETTRI also received recruiting emails from Special Operations Command stating that MAVNI soldiers are highly valued for their language skills and cultural knowledge, and could serve there as Civil Affairs Specialists (MOS 38B).

142.    CHETTRI decided to pursue simultaneous independent applications for Cyber Operations Specialist (MOS 17C) and Civil Affairs Specialist (MOS 38B).

143.    An Army Civil Affairs Specialists are required to hold at least a Secret clearance.

144.    CHETTRI's entire chain of command has consistently supported his applications for advancement.  In support of his applications, CHETTRI obtained various recommendation letters, including, for example, from his company commander who wrote:

> With the vote of confidence of his immediate NCOs and my personal observations, I can attest to his intelligence, fortitude, and professionalism.  His subordinates, as well as his peers,

FIRST AMENDED COMPLAINT - 28
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

confirm his exceptional qualities as a leader, trainer, and motivator.

SPC Chettri, Raj B. has performed his duties in an exceptional manner. He possesses a breadth and depth of knowledge seldom seen in a junior enlisted soldier. SPC Chettri has the natural ability to express complicated and technical information clearly and concisely. His problem solving skills and attention to detail will serve him well as a cyber operations specialist and guarantee his continued success as a leader. As a demonstration of his ability to excel at learning, he graduated from the University of Houston *summa cum laude* with a Bachelor's degree in hospitality management. SPC Chettri was also the distinguished graduate of AH-64D AIT class 025-14. In addition, he is a multi-lingual individual with a DLAB score of 121 and current DLPT 5 ratings in Hindi and Russian. I am convinced SPC Cettri, Raj B. will be successful in any endeavor he attempts.

145. Based on successful completion of the Civil Affairs Assessment and Selection Course, CHETTRI was selected for the Civil Affairs program in April 2016. Successful applicants for Civil Affairs Specialist are required, before actually attending Civil Affairs school, to also complete Airborne School. CHETTRI did so in June 2016.

146. After finishing Airborne School, CHETTRI began waiting for the issuance of his Secret clearance so he could receive a Permanent Change of Station (PCS) order to attend Civil Affairs training. CHETTRI was told he would receive that clearance quickly as he had already passed a rigorous Single Scope Background Investigation (SSBI). However, CHETTRI continued to wait. He eventually learned in October 2016 from other MAVNIs that the DoD had recently issued a memo stating that MAVNIs were no longer eligible to receive any type of security clearance during their first term of enlistment.

147. Because of the new rule prohibiting naturalized citizens who enter the Army through the MAVNI program from obtaining a security clearance, CHETTRI cannot join any of the military occupations for which he is best suited and would best serve the Army.

FIRST AMENDED COMPLAINT - 29
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

148.    The recent blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and other actions taken by DoD, severely limit CHETTRI's ability to serve his country, deny CHETTRI the opportunity to advance in his chosen career in the U.S. Army, and treat CHETTRI as a second class citizen.

## CLAIM FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS

149.    The subject DoD guidance memoranda and other DoD actions that penalize U.S. Citizens because they entered the Armed Services through the MAVNI program unconstitutionally discriminate against Plaintiffs based on their national origin in violation of Plaintiffs' equal protection rights as guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

150.    Plaintiffs are entitled to a declaration that a blanket prohibition on MAVNI soldiers applying for or receiving a security clearance in their initial term of enlistment and other DoD actions that penalize U.S. Citizens because they entered the Armed Services through the MAVNI program are unconstitutional, invalid, and of no force and effect.

151.    Plaintiffs are further entitled to preliminary and permanent injunctions prohibiting Defendant from enforcing any guidance memoranda or other rules prohibiting MAVNI soldiers as a class from applying for or receiving a security clearance in their initial term of enlistment or otherwise penalizing U.S. Citizens because they entered the Armed Services through the MAVNI program.

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Declaratory and injunctive relief as set forth in the Complaint;

2.    An award of costs and attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and/or any other statute or rule of law that provides for an award of costs and attorney fees in this situation; and

3.    Other relief deemed equitable or applicable by the Court.

FIRST AMENDED COMPLAINT - 30
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

DATED this 5th day of April, 2017.

ATKINSON, CONWAY & GAGNON
Attorneys for Plaintiffs

By: *s/Neil T. O'Donnell*
Neil T. O'Donnell, Esq.
420 L Street, Suite 500
Anchorage, AK 99501
Phone:  (907) 276-1700
Fax:  (907) 272-2082
nto@acglaw.com
Alaska Bar No. 8306049
*Pro Hac Vice application submitted herewith*

MACDONALD HOAGUE & BAYLESS
Attorneys for Plaintiffs, *Local Counsel*

By: *s/Joseph R. Shaeffer*
Joseph R. Shaeffer, WSBA #33273
1500 Hoge Building
705 Second Avenue
Seattle, Washington  98104
Phone (206) 622-1604
Fax:  (206) 343-3961
joe@mhb.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF System and a courtesy copy was served by E-Mail and U.S. Mail on the following:

**Nathan Swinton, Esq.**
**U.S Department of Justice**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave. NW**
**Washington, DC 20530**
Nathan.M.Swinton@usdoj.gov

*/s/ Deborah A. Pratt*
Deborah A. Pratt, Legal Assistant
dap@acglaw.com

32-62/8001.1

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082