District Court Judge Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

Kirti Tiwari, Seung Yoon Yang, Amandeep Singh, Duncan Makau, Valdeta Mehanja, Rui Zhang, Raj Chettri, Thong Nguyen, Xi Cui, Rajat Kaushik, Pingyang Liu, Blerta Mehanja, Mengmeng Cai, Sandeep Singh, Fleury Ngantchop Keigni Di Satchou, Kaushal Wadhwani, Angelita Acebes, Kusuma Nio, and Qi Xiong,

           Plaintiffs,

           v.

James Mattis, Secretary, U.S. Department of Defense, in his official capacity,

           Defendant.

No. 2:17-cv-00242-TSZ

**THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF BASED ON DEPRIVATION OF CONSTITUTIONAL RIGHTS**

      Plaintiffs Kirti Tiwari, Seung Yoon Yang, Amandeep Singh, Duncan Makau, Valdeta Mehanja, Rui Zhang, Raj Chettri, Thong Nguyen, Xi Cui, Rajat Kaushik, Pingyang Liu, Blerta Mehanja, Mengmeng Cai, Sandeep Singh, Fleury Ngantchop Keigni Di Satchou, Kaushal Wadhwani, Angelita Acebes, Kusuma Nio, and Qi Xiong, by and through their counsel of record, Atkinson Conway & Gagnon and MacDonald Hoague & Bayless, hereby claim and allege as follows:

## JURISDICTION AND VENUE

      1.    This action challenges unconstitutional national origin discrimination imposed by the Department of Defense (DoD) on all naturalized U.S. citizen soldiers who entered

1  the U.S. armed services through the Military Accessions Vital to National Interest (MAVNI)

2  Program, thereby disrupting, delaying and often crippling their military careers and

3  preventing them from fully using their talents for the benefit of the national defense.

4       2.       This action arises under the United States Constitution.  This Court has

5  jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28

6  U.S.C. § 2201 – 2202 (the Declaratory Judgment Act); and the Constitution.  Venue in this

7  District is authorized by 28 U.S.C. § 1391(e)(1)(C) (judicial district in which a plaintiff

8  resides).

9                        **THE MAVNI PROGRAM**

10      3.       The Military Accessions Vital to National Interest (MAVNI) Program was

11 designed to address critical shortages of personnel in the U.S. Armed Services by allowing

12 noncitizens to enlist in the U.S. military if they were legally present in the United States and

13 did not yet have "green cards" (lawful permanent residence) but met certain other

14 requirements.

15      4.       The MAVNI program was initially authorized by Secretary of Defense Robert

16 Gates in November 2008.  Secretary Gates authorized the U.S. Armed Services to recruit

17 two categories of MAVNI enlistees: (1) Health Care Professionals (HCPs), who were legally

18 present noncitizens with certain U.S. medical licenses or credentials, and (2) language

19 enlistees, who were legally present noncitizens who had demonstrated expertise in certain

20 strategic foreign languages.  Army MAVNI enlistees were required to meet all of the usual

21 requirements for enlistment except that they were required to score higher on the Armed

22 Forces Qualification Test (AFQT) than other military recruits and were ineligible for any

23 "moral" or conduct waivers.

24      5.       MAVNI recruits were required to apply for naturalization as United States

25 citizens, and were advised of this requirement, as part of the enlistment contract process.

26 The naturalization process requires the noncitizen to complete USCIS Form N-400, undergo

27 extensive Department of Homeland Security background checks (including an FBI name

1   check), pass English and civics tests, be interviewed by a United States Citizenship and

2   Immigration Services (USCIS) officer, and participate in a naturalization oath ceremony.

3       6.   The MAVNI program initially began recruiting people in 2009.  Recruits

4   enlisted through the MAVNI program were assured repeatedly, both orally and in writing,

5   that they would have the same career opportunities, once naturalized, as any other United

6   States citizen serving in the United States Armed Forces.  For example, the MAVNI

7   Information Paper (updated September 2012) states:

> Once you enter the Army, you will have all the same
> opportunities afforded to you as any other Soldier in the U.S.
> Army.  If you are eligible and meet all the requirements, you can
> apply for Officer Candidate School (OCS), Green to Gold,
> Warrant Officer Candidate School (WOC) or any other Army
> school or program for which you are eligible.  To become an
> officer, you must be a U.S. citizen and you must also be eligible
> to receive a security clearance.  You must be recommended to
> become an officer, and you will most likely have to work in your
> unit for at least a year so that your commander will have time to
> evaluate you and make a recommendation.

(Exhibit 1, pp. 6-7, see also Exhibit 2, pp. 6-7)

7.   Most jobs in the military require a security clearance, and promotion to higher

ranks almost universally requires a security clearance.

8.   All officers must have a security clearance, so someone who cannot obtain a

security clearance cannot become an officer.

9.   For example, all Army doctors are officers, so an individual cannot serve as an

Army doctor without obtaining a security clearance.

10.   Individuals also cannot serve in many enlisted and non-commissioned officer

positions without obtaining a security clearance, including almost all positions in Military

Linguistics, Military Police, Military Intelligence, Signal Corps, Special Operations,

Psychological Operations, the Defense Attache System, and Civil Affairs.  Even many

positions within non-sensitive branches of the Service (i.e., Transportation, Quartermaster,

1  Artillery, Infantry, *etc.*) require a security clearance.  For example, soldiers having access to

2  advanced military technology, or even simply administrative access to other soldiers' Social

3  Security numbers, must have a security clearance.

4      11.     The MAVNI Program has resulted in measurable benefits to the U.S. Armed

5  Forces.  The DoD commissioned an independent consulting firm, Human Resources

6  Research Organization (HumRRO), to review and evaluate the program.  Their February 20,

7  2013, report concludes variously that:   "[b]ased on characteristics in our analyses, MAVNI

8  Soldiers compare exceptionally well to non-MAVNI Soldiers. . . .  [They] bring a

9  significantly higher level of language proficiency to the Army than do their Army Special

10  Operations Forces (ARSOF)-trained and Defense Language Institute (DLI)-tested

11  counterparts, thereby increasing the Army's capability in critical languages.  . . .  [They] have

12  higher predicted performance than non-MAVNI Soldiers based on the GT [General

13  Technical] score even when the model controls for education, sex, and race.  . . .  The

14  majority of supervisors indicated that proficiency in reading, writing, speaking, and

15  understanding English among [Critical Foreign Language] CFL-MAVNI Soldiers was the

16  same as or better than native-English speaking Soldiers. . . .  Evaluation results indicate that

17  CFL-MAVNI Soldiers are of high 'quality' – findings that are consistent with the selection of

18  a CFL-MAVNI recruit as the Army's 2012 Soldier of the Year. . . .  More than half [of

19  MAVNIs] indicated that they would probably or definitely stay in the Army until

20  retirement."

21      12.     Initially, MAVNI recruits were subject to the normal military and DHS

22  security checks required of noncitizens entering the U.S. Armed Services.  Once MAVNI

23  recruits became naturalized U.S. citizens, they could apply for security clearances just like any

24  other U.S. citizen serving in the U.S. Armed Services. They could also apply to "re-classify"

25  into jobs that required a security clearance.

26      13.     Naturalized citizens who had been recruited through the MAVNI program

27  have, since 2009, received all levels of security clearances, including Top Secret clearances,

1    and have gone on to successful careers as linguists, intelligence officers, doctors, military

2    police officers, and in other fields requiring a security clearance.

3          14.     The U.S. Government has different types of security clearances, which allow

4    access to certain types of classified information.  Information may be classified as

5    Confidential, Secret, and Top Secret, as well as "Top Secret—Sensitive Compartmentalized

6    Information" or "TS/SCI."  The levels of clearance correspond to the level of access the

7    person is permitted to have to classified information.  A person serving in the United States

8    Armed Services must have the level of clearance required for his or her job in order to hold

9    that position, with limited exceptions.  For example, a person who wants to be an officer on

10   active duty in the U.S. Army must hold, at a minimum, a "Secret" clearance, which allows the

11   person to access information stamped "Secret" or "Confidential, " but does not allow the

12   person to access "Top Secret" information.

13         15.     To obtain a security clearance, a person must undergo a background

14   investigation. The level and type of investigation corresponds to the type of clearance the

15   person is seeking.  A Single Scope Background Investigation (SSBI) (now called a "Tier 5"

16   Investigation) has been typically reserved for people requiring a Top Secret security clearance

17   and access to sensitive compartmented information (SCI).  An SSBI is typically not required

18   for persons who only seek access to Secret, Confidential, or lower level information.

19         16.     An SSBI is a time-consuming and detailed investigation.  The individual must

20   complete an exhaustive questionnaire and is interviewed personally by a trained investigator,

21   often for several hours.  The individual's close relatives, references, employers, neighbors,

22   and colleagues are interviewed.  Various checks are also run, including credit checks and

23   criminal background checks.

24         17.     United States citizens who enlist in the United States Armed Services are only

25   required to undergo an SSBI if their job requires a Top Secret clearance.  Beginning in 2012,

26   however, the DoD ordered all MAVNI recruits to undergo an SSBI.  Once they were

27   citizens, however, MAVNIs were treated like all other U.S. citizens serving in the U.S.

1   Armed Services.  Specifically, MAVNIs were eligible for the clearances available to any U.S.

2   citizen who could pass the security check required for that level of clearance.  This equal

3   treatment changed, however, in the fall of 2016.

4   18.   On September 30, 2016, Peter Levine, Acting Under Secretary of Defense for

5   Personnel and Readiness, signed and issued a DoD memorandum entitled "Military

6   Accessions Vital to the National Interest Pilot Program Extension," which was distributed

7   by DoD to the Army, Navy, and Air Force.  (Exhibit 3)  This memo extended the MAVNI

8   program through September 30, 2017, but also implemented significantly revised accession,

9   eligibility, and screening protocols.  Per the memo, DoD states "this guidance will serve as a

10  single source document for the administration of the MAVNI program and replaces all

11  previously issued program guidance."  Significantly, the memo stated that "MAVNIs will be

12  designated . . . as not eligible for an interim security clearance or access until the completion

13  of first enlistment and a positive national security determination is made by the DoD CAF

14  [Consolidated Adjudications Facility]." (Id., p. 6, emphasis added.)

15  19.   The September 30, 2016, DoD memo had an immediate and negative impact

16  on naturalized U.S. citizens who had enlisted in the U.S. Armed Services through the

17  MAVNI Program.  U.S. citizens who had entered the Army through the MAVNI Program

18  were told that they were no longer eligible for any form of security clearance and therefore

19  could no longer progress in their jobs, become officers, sign ROTC contracts, attend OCS,

20  or reclassify into other jobs in the military -- such as military linguist -- that require a security

21  clearance.  The bar to obtaining a security clearance also applied in their civilian jobs, for

22  example, if they were Reservists who sought work with defense contractors or Federal

23  agencies.

24  20.   On January 6, 2017, Debra S. Wada, the Assistant Secretary of the Army for

25  Manpower and Reserve Affairs, issued a guidance memoranda which similarly provided that

26  "MAVNI enlistees . . . are ineligible to reclassify, apply for officer producing programs or

27

1  positions/programs that require a security clearance during their initial term of enlistment."

2  (Exhibit 4, p. 2)

3      21.    The September 30, 2016, Peter Levine, memorandum (Exhibit 3) also

4  imposed additional discriminatory practices on naturalized U.S. citizens who entered the

5  armed services through the MAVNI program including, but not limited to, blanket counter

6  intelligence (CI) interviews and "continuous monitoring" throughout their military career.

7  The "Levine" memo states, for example, that "[a]ll personnel accessed through the MAVNI

8  program since its inception in 2009 must be continuously monitored and accounted for

9  throughout the duration of their affiliation with the Department of Defense (e.g., active

10  duty, Reserve, government civilian, or contractor)." (Ex. 3, p. 2) The accompanying

11  program eligibility rules state:

12  
13          Continuous Monitoring (CM). The Services will execute annual
          comprehensive counterintelligence CM throughout each
          MAVNI's period of military service. Services shall use JPAS
14          [Joint Personnel Adjudication System] (or its successor DISS
          [Defense Information System for Security]) to record
15          completion of annual CM and vetting status throughout their
          periods of military or government service.
16

17  (Ex. 3, p. 7)

18      22.    Similarly, the January 6, 2017, Debra S. Wada, memorandum reiterated the

19  counter intelligence and "continuous monitoring" requirements for Army MAVNI soldiers.

20  The "Wada" memo states, for example, that " . . . the DCS G-2 [Deputy Chief of Staff,

21  Intelligence] must ensure that all individuals who enlisted via the MAVNI program are

22  subjected to continuous monitoring (annual NIAC check) throughout their period of

23  service." (Ex. 4, p. 1)

24      23.    The effect of the "Levine" and "Wada" memos, and other rules that

25  discriminate against MAVNIs, have created a permanent cloud of suspicion over naturalized

26  U.S. citizens who entered the armed forces through the MAVNI program.

27

THIRD AMENDED COMPLAINT - 7
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

24.    By subjecting all naturalized U.S. citizens who entered the armed services through the MAVNI program to counter intelligence (CI) and "continuous monitoring" programs, and by further applying heightened standards for passage of security screenings than applicable to other similarly-situated service members, DoD is discriminating against such individuals as a class based on their national origin.  In addition, DoD intends to, or has, involuntarily separated honorably-serving U.S. citizen MAVNI soldiers who DoD deems not to have met these discriminatory practices and standards, which conduct also constitutes national origin discrimination.

25.    In response to this litigation, on June 21, 2017, A. M. Kurta, performing the duties of the Under Secretary of Defense for Personnel and Readiness, issued a memorandum which states, in part, that:

> Effective immediately, individuals enlisted under the MAVNI Pilot Program who have successfully completed basic military training/boot camp (completion of formal skills training is not required), and have become naturalized U.S. citizens based on their military service, may be considered for a security clearance under the same terms, conditions, and criteria as any other U.S. citizen.  A member's consideration for a security clearance is contingent on a favorable command endorsement associated with the Service member applying for, or being assigned to, a military occupational specialty, rating, career field, or duty position that requires a security clearance.

(Ex. 5)

26.    Neither the Assistant Secretary of the Army for Manpower and Reserve Affairs, nor any other Army office, has issued memoranda or other directives implementing the June 21, 2017 "Kurta" memo for the Army (as was done by Debra Wada following the September 30, 1916 "Levine" memo).

27.    Army security officers and other personnel are failing to implement the June 21, 2017 "Kurta" memo because of, *inter alia*, (1) the lack of an Army-specific memorandum specifically applying the direction in the "Kurta" memo to the Army and (2) because of

THIRD AMENDED COMPLAINT - 8
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    DoD's failure to inform, train and actually require compliance by the various services with

2    the directive in the "Kurta" memo.

3        28.    DoD is further failing to implement the promises in the June 21, 2017 "Kurta"

4    memo of equal consideration under the same terms, conditions, and criteria as any other

5    U.S. citizen by permitting DoD Central Adjudications Facility (CAF) and other security

6    agencies and offices to impose heightened standards on U.S. citizen MAVNI soldier's

7    security clearance applications; by requiring U.S. citizen MAVNI soldiers to start the security

8    screening process from scratch despite having recently successfully completed SSBI-level

9    (Tier-5) screenings; and by failing to process and/or delaying U.S. citizen MAVNI security

10    clearance applications.

11        29.    As expressly admitted in the June 21, 2017 "Kurta" memorandum, DoD also

12    retains its discriminatory policy of prohibiting applications for security clearances by

13    naturalized MAVNI soldiers whom have not yet successfully completed "basic military

14    training/boot camp."  No similar prohibition applies to other service members.

15        30.    Many naturalized U.S. citizen MAVNI soldiers have not completed "basic

16    military training/boot camp" simply because – despite months or a year or more of waiting -

17    - their service branch has failed to send them to "basic military training/boot camp."

18        31.    As alleged above, naturalized U.S. citizens who entered the armed forces

19    through the MAVNI program are being treated differently from other U.S. citizens who

20    serve in the military.  There is no rational, much less compelling, basis for such

21    discriminatory treatment.

22                    **THE PLAINTIFFS**

23                    **A.    Kirti Tiwari**

24        32.    Plaintiff KIRTI TIWARI is a United States citizen who naturalized on August

25    25, 2015.

26

27

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

33.     TIWARI is presently an Army Health Care Specialist (E4) assigned to 514th Medical Company (Ground Ambulance), Joint Base Lewis-McChord near Tacoma, Washington.

34.     TIWARI is a native of India.  TIWARI obtained a Bachelor of Technology degree in Biotechnology from the National Institute of Technology, in Allahabad, India, in 2010.  TIWARI enrolled in the University of Houston in the spring of 2011.  He obtained a Master's degree in Molecular Biology from the University of Houston in the fall of 2012.

35.     TIWARI remained in lawful immigration status during his time in the United States by holding an F-1 student visa or performing Optional Practical Training (OPT).  After graduation from the University of Houston, TIWARI worked as a Research Specialist at the Baylor College of Medicine and Texas Children's Hospital.

36.     TIWARI enlisted in the United States Army under the MAVNI Program on June 24, 2014 for an eight (8) year term of service; the first four (4) years being Active Duty, with the remainder in the Army Reserve.  TIWARI qualified for the MAVNI program based on his fluency in English and Hindi, academic accomplishments, excellent Army test scores, and physical fitness.

37.     TIWARI was told by his recruiter that after he became a naturalized U.S. citizen and graduated from Basic Combat Training (BCT) and Advanced Individual Training (AIT), he would be treated like any other American soldier including with regard to applying for or attending officer-producing programs.

38.     After TIWARI enlisted, he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on or about February 19, 2015.

39.     Over several months in 2016, TIWARI assembled materials to submit to the Army Medical Department (AMEDD) Accession Board for promotion to Area of Concentration (AOC) 71A (Microbiologist) or 71E (Clinical Laboratory Scientist), which would result in him becoming a commissioned officer.  If so advanced, TIWARI would

THIRD AMENDED COMPLAINT - 10
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  likely have been assigned to Walter Reed Army Institute of Research (WRAIR).  After

2  gaining further experience as a research Army Microbiologist or Scientist, TIWARI intended

3  to apply to a doctoral program through the Army Long Term Health Education and

4  Training (LTHET) Program.

5        40.    In addition to applying to the AMEDD Accession Board, TIWARI also

6  applied in 2016 to the NASA Astronaut Candidate Program.

7        41.    TIWARI was required to obtain letters of recommendations from his prior

8  employers as part of the AMEDD Accession Board application process.  His thesis advisor

9  at the University of Houston wrote that "[a]mong the top notch students that I have taught,

10  I would rate him in the top 10%."  The research professor he subsequently worked with at

11  the Baylor College of Medicine and Texas Children's Hospital wrote:

> I consider him as one of the most diligent and rigorous
> researchers I have come across.  . . . We were able to publish
> two manuscripts from the data generated during his time here
> and that speaks volumes about his work.  He was first author
> on both of those manuscripts.  His research work has been
> presented in various conferences and has been published in
> international journals.  His acceptance of responsibility and
> constructive criticism and feedback is commendable.  His
> decision-making skills, attention to detail, intellectual and
> leadership abilities set him apart from his peers.
>
> I am confident he will become an outstanding professional in
> his field of expertise.  He will be a great mentor and a leader for
> any organization to have.  I can attest to the fact that Kirti is
> exactly the kind of skilled, talented and dedicated leader you
> need in an organization like the Army and he will not hesitate to
> put organizational interest above anything else.

      42.    TIWARI's commanding officer wrote in support of his AMEDD Accession

Board application that:

> SPC Tiwari is an excellent junior leader.  His ability to listen and
> appropriately interpret orders is a testament to his mission
> success.  His peers listen and trust him to lead them and he is
> looked highly upon by seniors and subordinates alike.  . . . I

THIRD AMENDED COMPLAINT - 11
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

highly recommend SPC Tiwari be selected for commissioning.
It would be an extreme disservice to the Army and our country
to not invest in this intelligent and confident young leader.  It is
a privilege and honor to serve with him.  Select now!

43.    TIWARI's Brigade Commander wrote in support of his AMEDD Accession

Board application that:

Immediately he demonstrated extensive leadership abilities and
superb fitness.  His contribution to the unit has been
outstanding in every way, as he has demonstrated solid
adherence to Army values, outstanding competence,
tremendous energy, and humbleness of spirit.  People enjoy
working with SPC Tiwari!  . . .  Our command was recently
formally notified of his acceptance as an Army nominee into the
NASA Astronaut program, notably as an enlisted soldier.  . . .
Without reservation, I recommend SPC Tiwari for accession as
an officer.

44.    On November 2, 2016, TIWARI was informed through his Recruiting Station

Commander of the unofficial AMEDD Board results that included TIWARI for promotion

and commissioning to AOC, 71A, Microbiologist.

45.    Shortly thereafter, however, TIWARI was told that, because of the September

30, 2016, "Levine" memo, naturalized MAVNI soldiers such as TIWARI are ineligible to

apply for or obtain a security clearance during their initial term of enlistment.

46.    With the help of his chain of command, TIWARI was able to re-enlist prior to

the scheduled ending of his original term of enlistment.  Since TIWARI is now in his second

enlistment, he is attempting to obtain a security clearance.  TIWARI has now been told that

the Army will now process his application.  TIWARI, however, has yet to receive a security

clearance.

47.    The "Levine" memo which prohibited MAVNI soldiers -- who are all

naturalized U.S. citizens -- from applying for or receiving security clearances during their

initial term of enlistment, and the remaining discriminatory rules and practices directed at

THIRD AMENDED COMPLAINT - 12
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

2    memo; delaying the processing of MAVNI soldier security clearance applications; applying

3    heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

4    "continuous monitoring" of naturalized U.S. citizens who entered the armed services

5    through the MAVNI program) have severely limited TIWARI's ability to serve his country,

6    denied TIWARI the opportunity to advance in his chosen career in the U.S. Army, and

7    treated TIWARI as a second class citizen.

8                                **B.    Seung Yoon Yang**

9         48.    Plaintiff SEUNG YOON YANG is a United States citizen who naturalized

10   on February 17, 2016.

11        49.    YANG is presently an Army Specialist (E4) serving as a Combat Engineer in a

12   Sapper Platoon with A Company, 6th Brigade Engineer Battalion (ABN), 4th Infantry

13   Brigade Combat Team, 25th Infantry Division (4-25 IBCT) at Joint Base Elmendorf-

14   Richardson (JBER) in Anchorage, Alaska.

15        50.    YANG is a native of South Korea but spent much of his life in the United

16   States.  His father attended an MBA program at MIT beginning in 2002 and YANG

17   attended 5th, 6th and 7th grade in Newton, Massachusetts.  YANG went to high school at

18   Portsmouth Abbey School, a boarding school in Portsmouth, Rhode Island.  YANG

19   attended the University of Chicago graduating in 2015 with dual degrees (Bachelor of

20   Science in Statistics and Bachelor of Arts in Economics).

21        51.    YANG remained in lawful immigration status during his time in the United

22   States by holding an F-1 student visa or performing Optional Practical Training (OPT).

23   YANG worked variously as a research assistant at the University of Chicago Crime Lab and

24   as a research assistant at the Woodrow Wilson International Center for Scholars in

25   Washington, D.C.

26        52.    YANG enlisted in the United States Army under the Military Accessions Vital

27   to National Interest (MAVNI) Program on January 14, 2015 for an eight (8) year term of

THIRD AMENDED COMPLAINT - 13
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   service, the first four (4) years and sixteen (16) weeks being Active Duty; with the remainder

2   in the Army Reserve.

3       53.    YANG qualified for the MAVNI program based on his fluency in English and

4   Korean, his academic accomplishments, his excellent Army test scores, and his physical

5   fitness.

6       54.    YANG was assured orally by his recruiter and in writing by the ARMY that

7   MAVNI was simply an enlistment option and that once he joined the ranks and became a

8   U.S. citizen he would be treated the same as all other soldiers.  In particular, YANG was

9   assured that he would be given the same opportunities for advancement including the ability

10  to apply to officer-producing programs.  For example, YANG was provided with a MAVNI

11  Information Paper signed by his Recruiter and the Recruiter's Station Commander which

12  stated that: "[o]nce you enter the Army, you will have all the same opportunities afforded to

13  you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements,

14  you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer

15  Candidate School (WOC) or any other Army school or program for which you are eligible."

16      55.    In April 2016, YANG 's leadership recommended that he apply for Officer

17  Candidate School (OCS).  YANG then attempted to obtain a security clearance in order to

18  apply for OCS.  YANG, however, was told in late fall 2016 that a recent DoD guidance

19  memo now prohibits MAVNI soldiers from applying for a security clearance until after their

20  first term of enlistment.

21      56.    YANG subsequently learned that a security clearance was not required to

22  initiate an application packet for the Army's Green to Gold Scholarship Program.  He began

23  to alternatively pursue that route to eventually become an officer and simultaneously further

24  his education.  His commanding officers stated in his Chain of Command Evaluation for his

25  application that "SPC Yang has the skills, intellect, and discipline to be an Army Officer.

26  . . . SPC Yang has excellent intellectual skills and a strong desire to learn.  . . . He is a

27  humble and smart Soldier . . .  He is Airborne qualified and has progressed as an Arctic

THIRD AMENDED COMPLAINT - 14
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    Paratrooper over the last 8 months.  . . . Soldiers of equal rank in the Company look up to

2    SPC Yang based on his qualities and his achievements.  I feel he is an excellent candidate for

3    the Army's Green to Gold program."

4          57.    As part of the Green to Gold application process, YANG obtained offers of

5    admission from Columbia University and Georgetown University Master's Degree Programs

6    in Statistics.

7          58.    On January 6, 2017, DoD issued the "Wada" memo stating that MAVNI

8    soldiers are not allowed to apply to officer-producing programs (i.e., even if a security

9    clearance was not required during the initial phase of the program).

10          59.    DoD's failure to issue him a security clearance keeps him from applying to

11   officer producing programs and also seriously limits his service as an enlisted soldier.  For

12   example, YANG cannot attend any specialized training designed for Combat Engineers

13   without a security clearance, such as the Explosive Ordinance Clearance Agent Course.

14   YANG will also need a clearance waiver to attend the Basic Leader Course, which is a

15   prerequisite for obtaining a promotion to Sergeant.  Army leadership is highly unlikely to

16   promote junior enlisted soldiers who cannot receive appropriate training or attend important

17   schools due to clearance issues, especially in combat Military Occupational Specialties (such

18   as YANG 's MOS) where hands-on skills are crucial for junior leaders.

19          60.    In response to this lawsuit, DoD issued the June 21, 2017 "Kurta" memo

20   partially withdrawing the prohibition on MAVNI soldiers applying for a security clearance

21   during their initial term of enlistment.  YANG has now requested a security clearance.

22   DoD, however, has yet to issue him a security clearance.

23          61.    The "Levine" memo which prohibited MAVNI soldiers -- who are all

24   naturalized U.S. citizens -- from applying for or receiving security clearances during their

25   initial term of enlistment, and the remaining discriminatory rules and practices directed at

26   naturalized U.S. citizen MAVNI soldiers (i.e., the failure to actually implement the "Kurta"

27   memo; delaying the processing of MAVNI soldier security clearance applications; applying

THIRD AMENDED COMPLAINT - 15
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

2  "continuous monitoring" of naturalized U.S. citizens who entered the armed services

3  through the MAVNI program) have severely limited YANG's ability to serve his country,

4  denied YANG the opportunity to advance in his chosen career in the U.S. Army, and treated

5  YANG as a second class citizen.

6  ### C.    Amandeep Singh

7  62.    Plaintiff AMANDEEP SINGH is a United States citizen who naturalized on

8  July 27, 2016.

9  63.    SINGH is presently an active U.S. Army Reservist and Logistics Specialist

10  (E4) with the HHC, 518 Sustainment Brigade (SUS BDE) located in Knightdale, North

11  Carolina.

12  64.    SINGH is a native of India.  SINGH came to the United States in the fall of

13  2001 at the age of 18 on an F-1 visa to attend college at Texas Tech University in Lubbock,

14  Texas.  SINGH graduated from Texas Tech in 2007 with a Bachelor of Science degree in

15  electrical/electronic engineering.

16  65.    After graduating from Texas Tech, SINGH remained in lawful immigration

17  status in the United States while performing Optional Practical Training (OPT) and then by

18  holding a H-1B (professional work) visa.

19  66.    Since graduating from Texas Tech, SINGH has worked continuously in the

20  wireless and RF (radio frequency) fields for a number of employers, including as a field test

21  engineer for Blackberry Ltd. and as a contracted verification test engineer for Microsoft

22  Corporation.

23  67.    On July 23, 2015, SINGH enlisted in the United States Army Reserve under

24  the MAVNI Program for an eight (8) year term of service.

25  68.    SINGH qualified for the program based on his fluency in English, Punjabi

26  and Hindi, his academic achievements, his excellent Army test scores, and his physical

27  fitness.

THIRD AMENDED COMPLAINT - 16
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

69.    During the MAVNI recruiting process, the recruiter told SINGH that, after one year as an enlisted soldier, he could apply to Officer Candidate School (OCS) and other officer-producing programs.  SINGH, along with his Recruiter, the Center Commander, and the Guidance Counselor, all signed a MAVNI "Information Paper" reiterating those same promises.

70.    After SINGH enlisted through the MAVNI program, SINGH was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

71.    As an individual holding an engineering degree with extensive professional experience in his field, SINGH is a logical candidate for selection to OCS.

72.    In late 2016, SINGH learned of a recent DoD memo stating that MAVNI soldiers cannot apply for or receive a security clearance until after their first term of enlistment.

73.    Following the issuance of the June 21, 2017 "Kurta" memo, SINGH requested a security clearance.  He has yet to receive a security clearance.

74.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited SINGH's ability to serve his country, denied SINGH the opportunity to advance in his chosen career in the U.S. Army, and treated SINGH as a second class citizen.

THIRD AMENDED COMPLAINT - 17
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

#### D.     Duncan Makau

75.     Plaintiff DUNCAN MAKAU is a United States citizen who naturalized on September 15, 2016.

76.     MAKAU is presently a Unit Supply Specialist (E4) in Headquarter and Headquarter Company (HHC), 4th Engineer Battalion, 36th Engineer Brigade, in Fort Carson, Colorado Springs, Colorado.

77.     MAKAU is a native of Kenya who came to the United States in 2007 to attend college at the United States Military Academy at West Point (USMA).  MAKAU graduated from the USMA with a Bachelor of Science degree in General Engineering in 2011.

78.     MAKAU also obtained a Master in Business Administration degree from North Central College in Naperville, Illinois in 2016.

79.     MAKAU qualified for the MAVNI program based on his fluency in English and Swahili, his academic achievements, his excellent Army test scores, and his physical fitness.

80.     MAKAU's initial term of enlistment, which began on March 22, 2016, is for eight (8) years; the first four (4) years and twenty one (21) weeks being Active service, with the remainder in the Army Reserve.

81.     After MAKAU enlisted through the MAVNI Program he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on or about September 24, 2015.

82.     At the time MAKAU enlisted through the MAVNI Program, he was advised he would be able to apply for positions that required a security clearance, such as Special Operations.  He was also told that he would be able to apply for an officer commission since he had graduated from the USMA.

83.     In late 2016, MAKAU learned of a DoD memo stating that MAVNI soldiers cannot apply for or receive a security clearance until after their first term of enlistment.

THIRD AMENDED COMPLAINT - 18
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

84. Following the issuance of the June 21, 2017 "Kurta" memo, MAKAU requested a security clearance. He has yet to receive a security clearance.

85. The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited MAKAU's ability to serve his country, denied MAKAU the opportunity to advance in his chosen career in the U.S. Army, and treated MAKAU as a second class citizen.

### E.    Valdeta Mehanja

86. Plaintiff VALDETA MEHANJA is a United States citizen who naturalized on January 13, 2016.

87. MEHANJA is presently a U.S. Army 15T Specialist (E4) assigned to Joint Multinational Readiness Center (JMRC) Hohenfels, Germany where she works as a crew chief on a LUH-72 Lakota Helicopter. She is also certified as a UH-60-A/L/M Blackhawk Helicopter mechanic.

88. MEHANJA is a native of Kosovo. Her family fled Kosovo in 1991 when she was seven (7) years old. Her family lived as refugees in Germany until returning to Kosovo after the war in 2000. Kosovo had been ravaged by the war and her family faced extreme poverty and worked hard to make ends meet.

89. At age 17, while finishing high school in Kosovo, MEHANJA was hired for various clerical positions by contractors from the European Union and United Nations organizations who gave her on-the-job IT training. She was eventually recognized as one of their top young employees. MEHANJA was subsequently hired by DynCorp, an American

1   contracting company that was supporting NATO troops in Kosovo.  DynCorp sent her to

2   Iraq from 2004 to 2005.  There she was promoted to IT Team Leader with responsibility for

3   installing numerous complex data and radio networks in Baghdad, Tikrit and other locations.

4       90.     After taking time off to obtain several IT certifications, MEHANJA returned

5   to work for DynCorp in 2006, this time in Afghanistan.  There she installed and supported

6   sophisticated voice and data communication systems that were often used in both overt and

7   covert U.S. State Department counter narcotics law enforcement operations.  This work

8   included extensive involvement with ground-to-air and aircraft-to-aircraft communications

9   and often involved working in hostile areas of the country.

10      91.     After four years in Afghanistan, MEHANJA recognized that she needed to

11  further her education.  Because of her experience with aircraft communication and her

12  admiration for the pilots with whom she worked and flew (and who had at times come to

13  her team's rescue under fire), she decided to apply to an aeronautical university.  MEHANJA

14  was accepted at Embry-Riddle University in Daytona Beach, Florida and began school there

15  in the fall of 2010.  MEHANJA paid for college and her flight training with the money she

16  had saved while working in Iraq and Afghanistan.  MEHANJA graduated from Embry-

17  Riddle with a degree in Aeronautical Science in 2013.  She continued on at Embry-Riddle

18  after graduation to work on a Master's Degree in Science in Aeronautics with an emphasis in

19  Aviation Aerospace Safety System.

20      92.     While at Embry-Riddle MEHANJA earned licenses and ratings including:

21  fixed wing and rotor private and commercial pilot licenses; fixed wing and rotor instrument

22  ratings; Airline Transport Pilot (ATP) license, multi-engine; Flight Instructor, fixed wing,

23  single engine and multi-engine, instrument rating; and Flight Instructor, rotor aircraft,

24  instrument rating.

25      93.     MEHANJA began working as a flight instructor for Embry-Riddle beginning

26  in her third year of school there.  In March 2015, she was selected "Flight Instructor of the

27  Month" out of a highly competitive group of 180 flight instructors at the University.  She

1   was selected by Embry-Riddle in 2013 and again in 2014 to serve as Pilot-in-Command of

2   the school's entry in the Women's Air Race Classic, a four-day transcontinental flight

3   competition.  Her team won the collegiate division both years and finished third overall in

4   2013 and second overall in 2014.  MEHANJA served as Flight Supervisor and Acting Chief

5   Flight Instructor at Embry-Riddle.  She presently has approximately 2,000 hours of flight

6   time.

7           94.     MEHANJA enlisted in the United States Army under the Military Accessions

8   Vital to National Interest (MAVNI) Program on February 27, 2015.  Under the delayed

9   entry program, she shipped out to Basic Combat Training (BCT) on September 1, 2015.

10  Her enlistment term is for six (6) years in the Regular Army.  MEHANJA qualified for the

11  MAVNI program based on her fluency in English and Albanian (she is also fluent in

12  German); academic accomplishments; excellent Army test scores; and physical fitness.

13          95.     Prior to her enlistment, MEHANJA remained in lawful immigration status

14  during her time in the United States by holding an F-1 student visa or an H-1B work visa.

15          96.     At Basic Combat Training (BCT), MEHANJA was selected to be an Assistant

16  Platoon Guide and graduated with the highest female Army Physical Fitness Test score in

17  her platoon.  She graduated Advanced Individual Training (AIT) as a UH-60 Blackhawk

18  repairer with a 97% GPA and honors from the Aviation Logistics School.  She also served as

19  squad leader.  While serving as a Blackhawk Repairer and Lakota Helicopters Crew Chief at

20  her current duty station in Hohenfels, Germany, MEHANJA was selected as the Joint

21  Multinational Readiness Center Soldier of the Month in September 2016.

22          97.     Critical to MEHANJA's decision to enlist through the MAVNI Program was

23  the assurances she received from her Recruiter and the MAVNI Information Paper that she

24  would be able to apply to Warrant Officer Candidate School (WOC) or Officer Candidate

25  School (OCS).  As a Warrant Officer, she would be able to ensure that her ultimate

26  assignment was that of a pilot (MOS 153A, rotary wing aviator).  Her goal was to become a

27  Blackhawk Helicopter pilot.

98.     MEHANJA was repeatedly told that after she naturalized as a U.S. citizen and completed her initial training, she would have the same career opportunities as any other soldier in the Army.  The MAVNI "Information Paper" that she signed, and that was also signed by her Recruiter, the Recruiting Center Commander, and the Recruiting Center Guidance Counselor, promised the same thing:  "Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army.  If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible."

99.     After her enlistment, MEHANJA was required to undergo an extensive Single Scope Background Investigation (SSBI).  That investigation reported back favorably.

100.    After completing her introductory training, MEHANJA began the lengthy process of preparing a packet for the Warrant Officer Board, which included obtaining a security clearance.  After a thorough investigation (and pending issuance of a final security clearance by the DoD Central Adjudicative Facility (CAF) in Fort Meade, Maryland), the Army Joint Multinational Readiness Center (JMRC) in Hohenfels, Germany, issued MEHANJA an Interim Security Clearance on November 9, 2016.  At that time, both MEHANJA and JMRC were unaware that the September 30, 2016 memo from Acting Under Secretary of Defense Peter Levine, which announced that MAVNI soldiers were no longer eligible to receive a security clearance, would apply to already naturalized MAVNIs.

101.    As part of the packet for the Warrant Officer Board, MEHANJA was required to obtain letters of recommendation.  The Lieutenant Colonel (Ret.) who worked with MEHANJA in Afghanistan wrote in his recommendation letter that "I have known her since 2006 when she was serving as a contractor Communications Technician in a State Department Aviation Program in Afghanistan.  She was the 'go-to' person for any communications issues we had.  As the Deputy Director (GS15) for the DOS Air Wing, I personally relied on her for the entire time she was in Afghanistan. . . .  She has a great work

1   ethic and moral standards – I don't know where she learned it but she will pick the harder

2   right instead of the easier wrong. . . . I give her my unconditional recommendation for

3   Warrant Officer Flight Training. The Army needs people like SPC Mehanja in the Officer

4   Corps."

5       102.    MEHANJA's Brigade Commander during her Advanced Individual Training

6   (AIT) wrote in his recommendation letter that "[SPC Mehanja] has thus far set the bar high

7   in competence, character and commitment in all her training. She has earned the respect of

8   her entire chain of command, from her Drill Sergeants to the Post Commander, and is

9   deeply respected for her personal life story of courage and selflessness. . . . SPC Mehanja is

10  a must select for the Warrant Officer Candidate School. She is dedicated and driven,

11  constantly seeking self-improvement and ways to exceed her professional Army and personal

12  goals. She is the extremely rare candidate that already possesses the qualities and requisite

13  skills to become a U.S. Army Aviator as the Aviation Branch seeks to fill its quality Warrant

14  Officer ranks. SPC Mehanja has unlimited potential and I give her my absolute highest

15  recommendation for selection."

16      103.    MEHANJA's current Executive Officer at JMRC Hohenfels, Germany, wrote

17  in his recommendation letter "I served as the Flight Detachment Executive Officer over

18  SPC Mehanja for 8 months and witnessed her superior disciple, confident leadership, and

19  problem solving abilities on a daily basis. . . . SPC Mehanja should be your top selection as

20  an Officer candidate . . ." Her present Battalion Commander wrote "[s]he is without a doubt

21  one of the most competent, caring, and professional leaders I have worked with in 22 years

22  of service. She possesses a strong intellect, physical presence, professional competence,

23  moral character, and has served as a role model for all of the Soldiers and Leaders within our

24  unit. . . . She is the leader that every Battalion Commander wants to have at the decisive

25  point; and proves her worth every time. . . . It would be a great disservice to the United

26  States Army to not appoint her into the U.S. Army Officer Candidate School."

27

THIRD AMENDED COMPLAINT - 23
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

104.    A few weeks after MEHANJA received her Interim Security Clearance, MEHANJA was told that because she is a naturalized MAVNI soldier, she is no longer eligible for a security clearance under the new DoD guidance and that she could no longer apply to become a Warrant Officer.

105.    Following the issuance of the June 21, 2017 "Kurta" memo, MEHANJA requested a security clearance.  She has yet to receive a security clearance.

106.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited MEHANJA's ability to serve her country, denied MEHANJA the opportunity to advance in her chosen career in the U.S. Army, and treated MEHANJA as a second class citizen.

### F.    Rui Zhang

107.    Plaintiff RUI ZHANG is a United States citizen who naturalized on May 2, 2014.

108.    ZHANG is presently an Army Specialist (E4) serving as a Dental Specialist at Tripler Army Medical Center in Honolulu, Hawaii.

109.    ZHANG is a native of China, however, he moved with his mother to Japan at age 13 and never thereafter returned to China.  After completing high school in Japan, ZHANG came to the United States in 2006 at the age of 19 on an F-1 visa to attend college. ZHANG obtained a Bachelor of Science degree from UCLA in Molecular Cell Development Biology in 2013.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

110.     Since arriving in the United States, and prior to becoming a citizen, ZHANG remained in lawful immigration status either on an F-1 student visa or while performing Optional Practical Training (OPT).  ZHANG has worked variously as a math teaching assistant, a math tutor, an assistant in an ophthalmology clinic, and as an EMT.

111.     ZHANG initially enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on July 16, 2013 for an eight (8) year term of service, the first six (6) years being Active Duty, with the remainder in the Army Reserve.

112.     ZHANG qualified for the MAVNI program based on his fluency in English, Japanese, and Mandarin Chinese, academic background, excellent Army test scores, and physical fitness.

113.     After ZHANG enlisted through the MAVNI program, ZHANG was required to undergo an extensive Single Scope Background Investigation (SSBI), which reported back favorably.

114.     ZHANG was told by his recruiter that, after one year of service, he would be able to apply to officer-producing programs such as Officer Candidate School, Reserve Officer Candidate Corps (ROTC), and Healthcare Professions Scholarship Program (HPSP). The official MAVNI "Information Paper" he received said the same thing.  Many of ZHANG's MAVNI friends had previously gone to, and successfully completed, OCS.

115.     The Health Professions Scholarship Program (HPSP) offers potential military physicians, dentists, nurses, and other health care professionals a paid medical education in exchange for an additional military service commitment.  All individuals joining the HPSP (if they are not already officers) are commissioned as a Second Lieutenant, which in turn requires a security clearance.

116.     In order to be selected for the HPSP, an applicant has to apply to and be accepted by the school they wish to attend.  ZHANG's goal was to enter medical school in the fall of 2017.  Towards that end, ZHANG spent many months taking additional

THIRD AMENDED COMPLAINT - 25
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    prerequisite classes, preparing for and taking the MCAT, writing applications and school-

2    specific essays, and obtaining recommendations.  Because admission to medical school is

3    highly competitive, ZHANG has applied to many medical schools (like many other

4    applicants) and has paid substantial application fees.

5        117.    Based on ZHANG's strong academics, language skills, and the fact that he is

6    already an Army soldier with an exemplary record, ZHANG's chances for acceptance to the

7    HPSP program and medical school were very high.

8        118.    On September 6, 2016, ZHANG's Officer in Charge (OIC) wrote to the U.S.

9    Army Central Personnel Security Clearance Facility stating "[r]equest to expedite Secret

10   Clearance of SPC Zhang, Rui investigation which is currently scheduled to close for

11   favorable adjudication.  This action is required to upgrade to attend the Officer's

12   Commissioned School for Army Health Professions Scholarship Program (HPSP)."

13       119.    Approximately a month after submitting the September 6, 2016

14   memorandum, ZHANG learned that DoD had issued a new guidance memo stating that

15   MAVNIs must wait until the end of the first term of enlistment -- six (6) years in ZHANG'S

16   case – before applying for or receiving a security clearance.

17       120.    Following the issuance of the June 21, 2017 "Kurta" memo, ZHANG

18   requested a security clearance.  He has yet to receive a security clearance.

19       121.    The "Levine" memo which prohibited MAVNI soldiers -- who are all

20   naturalized U.S. citizens -- from applying for or receiving security clearances during their

21   initial term of enlistment, and the remaining discriminatory rules and practices directed at

22   naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

23   memo; delaying the processing of MAVNI soldier security clearance applications; applying

24   heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

25   "continuous monitoring" of naturalized U.S. citizens who entered the armed services

26   through the MAVNI program) have severely limited ZHANG's ability to serve his country,

27

THIRD AMENDED COMPLAINT - 26
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   denied ZHANG the opportunity to advance in his chosen career in the U.S. Army, and

2   treated ZHANG as a second class citizen.

3   <center>**G.    Raj Chettri**</center>

4       122.    Plaintiff RAJ CHETTRI is a United States citizen who naturalized on

5   February 4, 2014.

6       123.    CHETTRI is a Sergeant, E-5, currently stationed at Joint Base Lewis-McCord

7   near Tacoma, Washington.  CHETTRI is attached to Maintenance Platoon, Bravo

8   Company, 46th Aviation Support Battalion, 16th Combat Aviation Brigade.

9       124.    CHETTRI is a native of Nepal who came to the United States in the fall of

10  2002 to attend college at San Jacinto Community College in Houston, Texas.  He obtained

11  an Associate Degree there in 2007.  He graduated from the University of Houston *summa*

12  *cum laude* in December 2011 with a Bachelor of Science degree in hotel and restaurant

13  management and a minor in global business.  CHETTRI is now pursuing a Masters of

14  Science degree in computer information systems at Florida Institute of Technology, which is

15  affiliated with the Army for distance learning.

16      125.    CHETTRI remained in lawful immigration status during his time in the

17  United States by holding an F-1 student visa or performing Optional Practical Training

18  (OPT).

19      126.    CHETTRI enlisted in the United States Army under the Military Accessions

20  Vital to National Interest (MAVNI) Program on June 10, 2013, for an eight-year term of

21  service: the first six years is Active Duty, the remainder is in the Army Reserve.

22      127.    CHETTRI qualified for the MAVNI program based on his academic

23  accomplishments, Army test scores, physical fitness, and fluency in Hindi.  He is also fluent

24  in English, Nepalese and Russian.

25      128.    CHETTRI was repeatedly told by his recruiter that after he received his initial

26  training and citizenship, that the Army would treat him like any other U.S. citizen and that

27

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    he would be allowed to apply to schools and different Military Occupation Specialties

2    (MOSs) just like any other soldier.

3        129.    After enlistment CHETTRI was required to undergo an extensive Single

4    Scope Background Investigation (SSBI) which reported favorably on August 20, 2013.

5        130.    CHETTRI graduated as the Distinguished Graduate of his Advanced

6    Individual Training (AIT) Apache helicopter maintenance course at Fort Eustis, Virginia, in

7    2014.

8        131.    CHETTRI's first duty station was at Camp Humphreys in South Korea where

9    he served as an Apache mechanic.  Towards the end of that tour, he began looking for other

10    opportunities where he could use his talents to contribute to the Army in a bigger way.  At

11    that time CHETTRI was receiving Army recruiting emails suggesting he consider applying

12    for Cyber Operations Specialist (MOS 17C).  CHETTRI assumes the Army selects soldiers

13    to receive various recruiting emails based on their test scores, foreign language abilities, and

14    other skills.

15        132.    One or more MAVNI soldiers are presently working as Army Cyber

16    Operations Specialists.

17        133.    Army Cyber Operations Specialists are required to hold at least a Top Secret

18    clearance.

19        134.    While near the end of his tour at Camp Humphreys in South Korea,

20    CHETTRI also received recruiting emails from Special Operations Command stating that

21    MAVNI soldiers are highly valued for their language skills and cultural knowledge, and could

22    serve there as Civil Affairs Specialists (MOS 38B).

23        135.    CHETTRI decided to pursue simultaneous independent applications for

24    Cyber Operations Specialist (MOS 17C) and Civil Affairs Specialist (MOS 38B).

25        136.    An Army Civil Affairs Specialists are required to hold at least a Secret

26    clearance.

27

THIRD AMENDED COMPLAINT - 28
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

137.    CHETTRI's entire chain of command has consistently supported his applications for advancement.  In support of his applications, CHETTRI obtained various recommendation letters, including, for example, from his company commander who wrote:

> With the vote of confidence of his immediate NCOs and my personal observations, I can attest to his intelligence, fortitude, and professionalism.  His subordinates, as well as his peers, confirm his exceptional qualities as a leader, trainer, and motivator.
>
> SPC Chettri, Raj B. has performed his duties in an exceptional manner.  He possesses a breadth and depth of knowledge seldom seen in a junior enlisted soldier.  SPC Chettri has the natural ability to express complicated and technical information clearly and concisely.  His problem solving skills and attention to detail will serve him well as a cyber operations specialist and guarantee his continued success as a leader.  As a demonstration of his ability to excel at learning, he graduated from the University of Houston *summa cum laude* with a Bachelor's degree in hospitality management.  SPC Chettri was also the distinguished graduate of AH-64D AIT class 025-14.  In addition, he is a multi-lingual individual with a DLAB score of 121 and current DLPT 5 ratings in Hindi and Russian.  I am convinced SPC Cettri, Raj B. will be successful in any endeavor he attempts.

138.    Based on successful completion of the Civil Affairs Assessment and Selection Course, CHETTRI was selected for the Civil Affairs program in April 2016.  Successful applicants for Civil Affairs Specialist are required, before actually attending Civil Affairs school, to also complete Airborne School.  CHETTRI did so in June 2016.

139.    After finishing Airborne School, CHETTRI began waiting for the issuance of his Secret clearance so he could receive a Permanent Change of Station (PCS) order to attend Civil Affairs training.  CHETTRI was told he would receive that clearance quickly as he had already passed a rigorous Single Scope Background Investigation (SSBI).  However, CHETTRI continued to wait.  He eventually learned in October 2016 from other MAVNIs

THIRD AMENDED COMPLAINT - 29
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

that the DoD had recently issued a memo stating that MAVNIs were no longer eligible to receive any type of security clearance during their first term of enlistment.

140.    Following the issuance of the June 21, 2017 "Kurta" memo, CHETTRI requested a security clearance.  He has yet to receive a security clearance.

141.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited CHETTRI's ability to serve his country, denied CHETTRI the opportunity to advance in his chosen career in the U.S. Army, and treated CHETTRI as a second class citizen.

### H.    Thong Nguyen

142.    THONG NGUYEN is a United States citizen who naturalized on February 18, 2015.

143.    NGUYEN is a Financial Technician (MOS 36B) with the 25th Infantry Division in Schofield Barracks, Hawaii.

144.    NGUYEN is a native of Vietnam.  He came to the United States in 2001 for college.  He received a dual Bachelor of Science Degree in Accounting and International Business from St. Cloud State University in Minnesota in 2008.  NGUYEN obtained a Master of Business Taxation Degree from the University of Minnesota in 2012.

145.    In NGUYEN's last Optional Practical Training (OPT) position with UNIVIS Group/WellMed Global LLC, he was responsible for reviewing financial statements and sales and activity reports; coordinating quarter-end financial audits and ongoing audits of receivables, payables and inventory; preparing sales tax data for submission of sales tax

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  returns; and managing payroll processing for over 600 contractors with diverse

2  compensation structures.

3      146.    On August 12, 2014, NGUYEN enlisted in the United States Army under the

4  Military Accessions Vital to National Interest (MAVNI) Program for an eight (8) year term

5  of service, with the first four (4) years in the Active Regular Army.  He qualified for the

6  MAVNI program based on his fluency in English and Cantonese, academic

7  accomplishments, Army test scores, and physical fitness.  NGUYEN is also fluent in

8  Vietnamese and Mandarin Chinese.

9      147.    NGUYEN was assured during the recruiting process that after he went

10  through his initial training and became a U.S. Citizen, that he would be treated like all other

11  soldiers and would have an equal opportunity to apply to officer producing programs.

12  NGUYEN and the recruiting command signed a MAVNI Information Paper (December

13  2014) which stated:

14          Once you enter the Army, you will have all the same
            opportunities afforded to you as any other Soldier in the U.S.
15          Army Reserve.  If you are eligible and meet all the requirements,
            you can apply for Officer Candidate School (OCS), Reserve
16          Officers' Training Corps (ROTC), Warrant Officer Candidate
            School (WOC) or any other Army school or program for which
17          you are eligible.  To become an officer, you must be a U.S.
            citizen and must also be eligible to receive a security clearance.
18          You must be recommended to become an officer, and you will
            most likely have to work in your unit for at least a year so that
19          your commander will have time to evaluate you and make a
            recommendation.
20

21

22      148.    After NGUYEN enlisted he went through a detailed and thorough Single

23  Scope Background Investigation.  That investigation reported back favorably on August 18,

24  2014.

25      149.    NGUYEN has received a number of achievement awards and was encouraged

26  by his commanding officers to apply to Officer Candidate School (OCS).  After beginning

27  that process, however, he learned that he was prohibited from applying to, or attending,

THIRD AMENDED COMPLAINT - 31
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

OCS during his first term of enlistment because he had entered the Army through the MAVNI program. This was directly contrary to what NGUYEN was told during the recruiting process.

150.    Given that NGUYEN was barred from attending OCS, he applied for a position with the 25th Infantry Division as a Protocol Specialist. NGUYEN was accepted and transferred into that position, but subsequently he and his commanding officers discovered that NGUYEN was prohibited from doing much of the work expected of someone in that position because he could not obtain a security clearance. NGUYEN has also considered seeking a finance position in a Special Forces unit, but he is ineligible for such an assignment because again he does not have a security clearance.

151.    NGUYEN is trained and educated for, and has previously performed, far more challenging financial work than the basic clerical tasks he is presently performing for the Army. NGUYEN and his commanding officers believe that NGUYEN is not serving the Army and the country to his potential in his present position. Besides this loss, DoD's conduct is preventing NGUYEN from advancing in his Army career.

152.    Following the issuance of the June 21, 2017 "Kurta" memo, NGUYEN requested a security clearance. He has yet to receive a security clearance.

153.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited NGUYEN's ability to serve his country, denied NGUYEN the opportunity to advance in his chosen career in the U.S. Army, and treated NGUYEN as a second class citizen.

THIRD AMENDED COMPLAINT - 32
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1

## I.    Xi Cui

2    154.    XI "Tracy" CUI is a United States citizen who naturalized on March 10, 2016.

3    155.    CUI is a resident of Renton, Washington.  Her present duty assignment is as

4    an Army reservist Horizontal Construction Engineer in the 297 Engineer Company, Joint

5    Base Elmendorf-Richardson, in Anchorage, Alaska.

6    156.    CUI is a native of China.  She obtained dual Bachelor's Degrees in Economics

7    and Urban and Regional Management from Peking University in 2008.  CUI came to the

8    United States in 2008 for graduate school.  CUI obtained a Master's Degree in Urban and

9    Regional Planning from the University of Florida in 2010.

10    157.    After arriving in the United States in 2008, CUI remained in lawful

11    immigration status prior to becoming a U.S. citizen by holding an F-1 student visa,

12    performing Optional Practical Training (OPT), or by holding an H1-B visa.

13    158.    From 2011 to early 2012, CUI worked as a Geographic Information System

14    (GIS) Analyst with the City of Palatka, Florida.  This primarily involved transferring and

15    updating layers of AutoCad files for water and sewer mainlines, water meters, fire hydrants,

16    bike paths, and other structures and improvements to a GIS base map.  From October 2012

17    to July 2016, CUI worked as a Planning and Zoning Technician III for the Haines Borough

18    in Alaska.  There she updated and maintained their GIS system, reviewed land development

19    proposals, conducted field inspections, issued land use permits and enforced planning and

20    zoning laws.  CUI was selected as the only employee in the Haines Borough to receive a

21    merit pay increase in FY 2014.

22    159.    From July 2016 to the present, CUI has been employed as an Associate

23    Planner with the City of Sammamish, Washington.  There CUI reviews and processes

24    building and land use permit applications for compliance with zoning, code and State

25    Environmental Policy Act (SEPA) requirements, approve plans, conduct site investigations

26    and certify compliance.

27

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

160. In 2015, CUI achieved Certified Planner designation from the American Institute of Certified Planners (AICP). The AICP provides the only nationwide, independent verification of planners' qualifications through a series of rigorous, comprehensive examinations.

161. On May 15, 2015, CUI enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program for an eight (8)-year term of service, with the first six (6) years being in the Reserve Component. CUI qualified for the MAVNI program based on her fluency in English and Mandarin Chinese, academic accomplishments, Army test scores, and physical fitness.

162. CUI was assured during the recruiting process that after she went through her initial training and became a U.S. Citizen, that she would be treated like all other soldiers and would have an equal opportunity to apply to officer programs. CUI and her recruiter and his commander and the Guidance Counselor all signed a MAVNI Information Paper (December 2014) which stated:

> Once you enter the Army, you will have all the same opportunities afforded to you as any other Soldier in the U.S. Army Reserve. If you are eligible and meet all the requirements, you can apply for Officer Candidate School (OCS), Reserve Officers' Training Corps (ROTC), Warrant Officer Candidate School (WOC) or any other Army school or program for which you are eligible. To become an officer, you must be a U.S. citizen and must also be eligible to receive a security clearance. You must be recommended to become an officer, and you will most likely have to work in your unit for at least a year so that your commander will have time to evaluate you and make a recommendation.

163. After CUI enlisted she went through a detailed and thorough Single Scope Background Investigation. That investigation reported back favorably shortly before CUI shipped to basic training on November 18, 2015.

164. CUI's chain of command encouraged her to apply for Officer Candidate School (OCS) based on her education and work performance. CUI began putting her board

THIRD AMENDED COMPLAINT - 34
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  packet together in January 2017 to become an Engineer officer.  While preparing her packet

2  in mid-February, her battalion security manager told her there would be no problem issuing

3  her an interim security clearance.  Shortly thereafter, however, CUI learned about a new rule

4  that prohibits U.S. citizen MAVNI soldiers from obtaining a security clearance during their

5  initial term of enlistment.

6       165.    Following the issuance of the June 21, 2017 "Kurta" memo, CUI requested a

7  security clearance.  She has yet to receive a security clearance.

8       166.    The "Levine" memo which prohibited MAVNI soldiers -- who are all

9  naturalized U.S. citizens -- from applying for or receiving security clearances during their

10  initial term of enlistment, and the remaining discriminatory rules and practices directed at

11  naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

12  memo; delaying the processing of MAVNI soldier security clearance applications; applying

13  heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

14  "continuous monitoring" of naturalized U.S. citizens who entered the armed services

15  through the MAVNI program) have severely limited CUI's ability to serve her country,

16  denied CUI the opportunity to advance in her chosen career in the U.S. Army, and treated

17  CUI as a second class citizen.

18         **J.**    **Rajat Kaushik**

19       167.    RAJAT KAUSHIK is a United States citizen who naturalized on April 16,

20  2015.

21       168.    KAUSHIK is an Army Dental Specialist (E4) assigned to U.S. Army Dental

22  Health Activity, Hawaii.

23       169.    KAUSHIK is a native of India.  He obtained a Bachelor Degree in India.  He

24  also finished one year of post-graduate work in Bioinformatics in India.  He has one sibling,

25  an older brother, who is a physician who obtained a Ph.D. from Harvard University and

26  practices in Washington, D.C.

27

THIRD AMENDED COMPLAINT - 35
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

170.    KAUSHIK enrolled in Northeastern University in Boston, Massachusetts, in the fall of 2011.  He obtained a Master's Degree in Biotechnology from Northeastern in 2014.

171.    Prior to becoming a citizen, KAUSHIK remained in lawful immigration status during his time in the United States by holding an F-1 student visa.

172.    KAUSHIK enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program.  His enlistment term is for eight (8) years with six (6) years in the Regular Army.  He qualified for the MAVNI program based on his fluency in English and Punjabi, academic accomplishments, Army test scores, and physical fitness.

173.    KAUSHIK was told by his Recruiter, the Recruiter Station Commander, and the Military Entrance Processing Station (MEPS) Commander, that after he became a naturalized U.S. citizen and completed his initial training courses, he would be treated like any other American soldier including regarding applying to officer-producing programs.

174.    After KAUSHIK enlisted he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on February 4, 2015.

175.    In 2015 and 2016, KAUSHIK concentrated on completing his initial Army training courses and the prerequisites for becoming an Army Dentist or Physician through the Army Health Professions Scholarship Program (HPSP) or an Army Physician Assistant (PA) through the Interservice Physician Assistant Program (IPAP).  However, KAUSHIK was eventually told by his chain of command that he could no longer qualify to attend any of these programs because of a new memo from the DoD Office of Personnel and Readiness stated that naturalized MAVNI soldiers could not apply for or receive a security clearance until after their initial enlistment had ended.

176.    Following the issuance of the June 21, 2017 "Kurta" memo, KAUSHIK requested a security clearance.  He has yet to receive a security clearance.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

177.     The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited KAUSHIK's ability to serve his country, denied KAUSHIK the opportunity to advance in his chosen career in the U.S. Army, and treated KAUSHIK as a second class citizen.

## K.     Pingyang Liu

178.     PINGYANG LIU is a United States citizen who naturalized on June 23, 2015.

179.     LIU is a Behavioral Health Technician (MOS 68X) at Tripler Army Medical Center, Hawaii.

180.     LIU is a native of China.  He came to the United States in the summer of 2008 as a senior-year international undergraduate exchange student at Virginia Tech in Blacksburg, Virginia.  LIU continued his post-graduate studies in Biochemistry at Virginia Tech.  He successfully concluded his thesis defense in February 2013, and obtained his Ph.D. in Biochemistry from Virginia Tech in March 2013.  By that time, LIU had three first-author, and one second-author, scientific publications.  From mid-2013 until early 2015, he worked as a postdoctoral associate at the University of California, San Francisco, where LIU received a research scholarship and continued to publish scientific research papers.

181.     LIU remained in lawful immigration status during his time in the United States prior to becoming a U.S. citizen by either holding an F-1 student visa or by performing Optional Practical Training (OPT).

182.     LIU enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program for an eight (8) year term of enlistment, with the first

1    four (4) years being in the Active Regular Army.  LIU qualified for the MAVNI program

2    based on his fluency in English and Mandarin Chinese, academic accomplishments, Army

3    test scores, and physical fitness.

4            183.    During the recruiting process LIU's recruiter told him that MAVNI soldiers,

5    once they became citizens, would have the same opportunity as all other soldiers to apply to

6    Officer Candidate School (OCS) and other similar programs.  LIU, along with his Recruiter,

7    the Center Commander, and the Guidance Counselor, all signed a MAVNI "Information

8    Paper – Updated September 2012) which said the same thing:  "once you enter the Army,

9    you will have all the same opportunities afforded to you as any other Soldier in the U.S.

10   Army.

11           184.    After LIU enlisted and before he shipped to basic training, the Army

12   conducted a thorough Single Scope Background Investigation, which reported back

13   favorably on December 8, 2014.

14           185.    After joining the Army, LIU applied for a direct commission as an Army

15   Biochemist.  LIU's board packet was fully prepared, submitted and ready for decision when

16   he was disqualified by the recent memos prohibiting citizen-MAVNI soldiers from obtaining

17   a security clearance during their first term of enlistment.  The Army Medical Command

18   (MEDCOM) tried to obtain an exception to policy for LIU since his application was

19   prepared well before these memos but was unsuccessful.

20           186.    Due to the new policy, LIU was also unable to apply for the Army Medical

21   Department (AMEDD) healthcare processional scholarship to medical school.  One of his

22   long-term goals was to go to medical school and become a military physician scientist.  LIU

23   finished all his medical school applications, took the MCAT test, and obtained favorable

24   letters of recommendation, but was also blocked from pursuing this career path.  The former

25   Department Chief at Tripler Army Medical Center wrote regarding his officer application:

26                  Please accept this letter as my strongest endorsement of SPC
                   Pingyang Liu for a direct commission in the U.S. Army.  I
27                  served as SPC Liu's Department Chief at Tripler Army Medical

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

Center from the beginning of his assignment in October 2015 to April 2016.  My recommendation is based on direct supervision, collaboration and observation.

SPC Liu is a remarkable individual.  Born and raised in China, SPC Liu received his Bachelor's Degree from the University of Hong Kong.  He was an exceptional student and was accepted to a Ph.D. program in biochemistry at Virginia Tech University. He completed his Ph.D. in biochemistry in less than 4 years – a remarkable feat – and went on to complete a post-doctoral program at the University of California.  During that time, he worked on a groundbreaking HIV research study of his own design. . . .

SPC Liu is fully committed to a military career and life as a U.S. Army Soldier.  I know from direct observation that he successfully completes every task without fail.  He willingly takes on any assignment.  He applies his superior intellect, education and good sense of humor in a manner that is humble yet extraordinarily effective.  His engaging personality and unflagging willingness to help others engenders the respect and admiration of his peers, NCOs and commissioned Officers.  In my 32 years as a Department of Army Civilian, I have rated over 100 NCOs and Officers from the rank of SGT to COL; I would rate SPC Liu in the top 5% of Soldiers I have worked with during my career.

SPC Liu has the character, the desire and the discipline to be an exemplary U.S. Army Officer.  He is extremely loyal and he has my utmost respect and trust.  SPC Liu has my highest recommendation as a candidate for a direct commission.  Please feel free to contact should you have any questions or need additional information about this remarkable Soldier.

187.    LIU tried to determine if there was any way around the new "no security clearance" rule including through contacting Brian Schatz, U.S. Senator from Hawaii. Schatz's office contacted the Army Accessions Division.  The Chief of the Army Accessions Division, Paul Aswell, wrote Senator Schatz stating that "we have corresponded with Specialist Liu to assist him in seeking an exception to the USD(P&R) policy governing security clearances in order to pursue a commission in the United States Army."  LIU

THIRD AMENDED COMPLAINT - 39
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    subsequently submitted an exception request and supporting materials to the Army Enlisted

2    Accessions Branch seeking an exception to policy (ETP).  LIU was told that this material

3    was inadequate; that he also needed to get his commander to specifically request an

4    exception to the "no security clearance" rule; that he then needed to obtain Staff Judge

5    Advocate (SJA) review of the material for legal sufficiency; and that he then needed to have

6    the request routed to both the chain of command at Tripler Medical Center and the Army

7    Medical Command Deputy Chief of Staff, G-1.  If approved at all these levels, LIU was told

8    it would then be sent to the Under Secretary of Defense (Personnel and Readiness) for a

9    decision.

10        188.    As this process unfolded, LIU concluded that the Army was giving him an

11   ever expanding list of documents and approval requirements.  Getting commanders and

12   others in the chain of command to prepare and/or approve such an exception request is

13   very difficult.  There was no procedure for such an exception, there are no criteria for such

14   an exception, and no one was familiar with what to do in this situation.  It was difficult and

15   time consuming simply to collect all the recommendation letters and supporting documents

16   necessary for a regular application to a direct commissioning board.  Here LIU felt that the

17   Army was giving him a series of impossible tasks and that no exception would ever be

18   forthcoming.

19        189.    Following the issuance of the June 21, 2017 "Kurta" memo, LIU requested a

20   security clearance.  He has yet to receive a security clearance.

21        190.    The "Levine" memo which prohibited MAVNI soldiers-- who are all

22   naturalized U.S. citizens -- from applying for or receiving security clearances during their

23   initial term of enlistment, and the remaining discriminatory rules and practices directed at

24   naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

25   memo; delaying the processing of MAVNI soldier security clearance applications; applying

26   heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

27   "continuous monitoring" of naturalized U.S. citizens who entered the armed services

THIRD AMENDED COMPLAINT - 40
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  through the MAVNI program) have severely limited LIU's ability to serve his country,

2  denied LIU the opportunity to advance in his chosen career in the U.S. Army, and treated

3  LIU as a second class citizen.

### L.    Blerta Mehanja

5  191.    BLERTA MEHANJA is a United States citizen who naturalized on July 26,

6  2016.

7  192.    MEHANJA is presently a MOS 68W assigned to 2C HHB, FA, Vilseck,

8  Germany, where she works as a Health Care Specialist.

9  193.    MEHANJA is a native of Kosovo and the younger sister of Plaintiff Valdeta

10  Mehanja.  Her family fled Kosovo in 1991 when she was five (5) years old.  They lived as

11  refugees in Germany until returning to Kosovo in 2000.  While in Germany, MEHANJA

12  learned a new language, attended school, and adapted to German society as best as she

13  could.

14  194.    In 2000, MEHANJA's family returned to help re-build a war-torn Kosovo.

15  Back in school, MEHANJA had to learn all her subjects in a new language, formal Albanian,

16  which is very different from the informal Albanian they spoke at home.  MEHANJA also

17  had to learn the customs and norms of her peers since she was acting and talking like a true

18  German.

19  195.    In March of 2004, MEHANJA's two older sisters accepted jobs with the US

20  Department of State in Baghdad, Iraq.  MEHANJA joined them in January of 2005 after

21  finishing high school at age nineteen (19).

22  196.    In Iraq, MEHANJA worked and lived in the Baghdad Hotel located in the

23  "Red Zone."  After working in Iraq, MEHANJA worked for another year for the State

24  Department in Jordan.  She then transferred to work as a Department of Defense contractor

25  in Afghanistan, where she served for another four years as a Financial/Purchasing Analyst.

26  Along with helping support her family, she saved all the money she could in order to attend

27  college in the United States.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

197.    In July 2012, MEHANJA moved to the United States on an F-1 student visa. MEHANJA graduated magna cum laude from Embry Riddle with a Bachelor of Science Degree majoring in Homeland Security in December 2015.

198.    After seeing all the good the United States did for the people in Kosovo; working as a contractor for the US Department of Defense for most of her adult life; and serving in war zones for years in support of the US military, MEHANJA sought to become an American citizen.

199.    On April 2, 2015, MEHANJA enlisted in the United States Army under the MAVNI program.  Her enlistment term is for eight (8) years with four (4) years in the Active Regular Army.  MEHANJA qualified for the MAVNI program based on her fluency in English and Albanian (she is also fluent in German); her academic accomplishments; Army test scores; and physical fitness.

200.    Prior to MEHANJA's enlistment, she remained in lawful immigration status during her time in the United States by holding an F-1 student visa.

201.    During the enlistment process, MEHANJA was repeatedly told that once she became a soldier and a U.S. citizen, that she would be treated like all other soldiers and be given an equal opportunity to apply for assignments and officer-producing programs.

202.    After MEHANJA's enlistment and before going to basic training, she was required to undergo an extensive Single Scope Background Investigation (SSBI), which MEHANJA successfully passed.

203.    MEHANJA was recently selected for a Special Operations Unit in the Army's Psychological Operations Division.  She successfully completed the Selection and Assessment class in November 2016.  The selection rate of each class is only approximately 30%.  Unfortunately, the new MAVNI security clearance rule now prevents MEHANJA from continuing with the Special Forces Qualification Course (SPQC or, informally, the "Q Course") -- or indeed any other officer program -- because she is no longer able to obtain a security clearance.

THIRD AMENDED COMPLAINT - 42
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

204.     In Basic Training, MEHANJA's commanding officer, Michael Chung, wrote a recommendation letter to the Officer Candidate School Selection Board stating:

> I highly recommend SPC Blerta Mehanja be selected for Officer Candidate School (OCS).  She exemplifies the professional excellence embodied in an Army Officer Corps and is a shining example of a young leader of Soldiers.
>
> SPC Blerta Mehanja has displayed a zeal for soldiering through combat tours in Afghanistan, Jordan and Iraq in support of our nation's freedom and liberties.  Her service has been nothing short of remarkable and she is the epitome of a warrior committed to selfless services.  SPC Mehanja is 30 years old and a Kosovo native, who speaks fluent in English, German & Albanian (native language).  She was a combat force multiplier as a Department of Defense Contractor in support of Iraqi Freedom and Enduring Freedom for almost 7 years.  SPC Mehanja also volunteered at the NATO Role 3 (a Multi-National Medical Unit on Kandahar Air Field) prior to being employed.  During SPC Mehanja's training in BCT, she fully complied with the seven Army Values and displayed nothing less than commendable Soldier traits as she served as the Student Platoon Leader.
>
> Assigned to Aco 2-60th, SPC Mehanja successfully completed all training and persevered in a class where 240 trainees started and only 176 trainees made it to graduation day.  SPC Mehanja has moved to the front of her peers by utilizing extraordinary ability to learn trainings objectives needed to be successful in Basic Combat Training.
>
> SPC Mehanja is well respected amongst her peers and Drill Sergeants and proven to be a physically fit, mentally sharp leader who accomplishes all missions with excellence.  She personifies the key qualifying traits of duty, honor, country, and without question deserves the honor of the selected into Officer Candidate School.

205.     Following the issuance of the June 21, 2017 "Kurta" memo, MEHANJA requested a security clearance.  She has yet to receive a security clearance.

206.     The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their

THIRD AMENDED COMPLAINT - 43
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    initial term of enlistment, and the remaining discriminatory rules and practices directed at

2    naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

3    memo; delaying the processing of MAVNI soldier security clearance applications; applying

4    heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

5    "continuous monitoring" of naturalized U.S. citizens who entered the armed services

6    through the MAVNI program) have severely limited MEHANJA's ability to serve her

7    country, denied MEHANJA the opportunity to advance in her chosen career in the U.S.

8    Army, and treated MEHANJA as a second class citizen.

9                              **M.      Mengmeng Cai**

10            207.    MENGMENG CAI is a United States citizen who naturalized on July 14,

11    2016.

12            208.    CAI is a line medic assigned to the 2nd Infantry Division, 2nd Brigade, 4-23

13    Battalion, Alpha Company at Joint Base Lewis-McChord in Washington.

14            209.    CAI is a native of China.  He came to the United States in 2010 to attend

15    college at Purdue University.  CAI's original plan was to study biology and go to medical

16    school.  However, he eventually realized that most medical schools would not consider an

17    applicant who was not a permanent resident or U.S. citizen.  Though disappointed, CAI

18    switched his major to Geology and Geophysics, and graduated from Purdue with a

19    Bachelors in Science degree in 2015.

20            210.    CAI remained in lawful immigration status during his time in the United States

21    prior to becoming a U.S. citizen by either holding an F-1 student visa or by performing

22    Optional Practical Training (OPT) for an oilfield supply company.

23            211.    On August 5, 2015, CAI enlisted in the United States Army under the Military

24    Accessions Vital to National Interest (MAVNI) Program for an eight (8) year term of

25    enlistment, with the first four (4) years being in the Active Regular Army.  CAI qualified for

26    the MAVNI program based on his fluency in English and Mandarin Chinese, academic

27    accomplishments, Army test scores, and physical fitness.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

212.    During the recruiting process CAI's recruiter told him that, because of his Army test scores and his college degree, that he should apply to become an officer after he joined the Army.  He further told CAI that MAVNI soldiers, once they became citizens, would have the same opportunity as other soldiers to apply to Officer Candidate School (OCS) and other similar programs.

213.    After CAI enlisted and before he shipped to basic training, he underwent a thorough Single Scope Background Investigation, which reported favorably on August 11, 2015.

214.    Because of CAI's interest in the healthcare field, he chose Military Occupational Specialty (MOS) 68W Combat Medic.  CAI's Advanced Individual Training (AIT) in that field renewed his interest in becoming a physician assistant or a doctor. However, upon further investigation, CAI learned that he was not allowed to  apply for the Interservice Physician Assistant Program (IPAP) -- or any other officer-producing program - - because he was ineligible to receive a security clearance.

215.    Following the issuance of the June 21, 2017 "Kurta" memo, CAI requested a security clearance.  He has yet to receive a security clearance.

216.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited CAI's ability to serve his country, denied CAI the opportunity to advance in his chosen career in the U.S. Army, and treated CAI as a second class citizen.

THIRD AMENDED COMPLAINT - 45
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1

**N.    Sandeep Singh**

2      217.    SANDEEP SINGH is a United States citizen who naturalized on June 10,

3  2013.

4      218.    SINGH is an Army Specialist (E4) assigned to D Company the 1-229th Attack

5  Reconnaissance Battalion, 16th Combat Aviation Brigade, at Joint Base Lewis-McCord in

6  Washington.

7      219.    SINGH is a native of India.  He came to the United States to attend college in

8  August 2008.  He completed his Bachelors Degree in both Computer Engineering and

9  Electrical Engineering from North Dakota State in May 2010.  After graduation SINGH

10  worked as a Programmer Analyst for SmartWorks LLC in Edison, NJ.  SINGH's work at

11  SmartWorks included major Software Developer projects for FedEx and PNC Bank.

12      220.    SINGH remained in lawful immigration status during his time in the United

13  States prior to becoming a U.S. citizen by either holding an F-1 student visa, an H1B visa, or

14  by performing Optional Practical Training (OPT).

15      221.    SINGH enlisted in the United States Army under the Military Accessions Vital

16  to National Interest (MAVNI) Program on October 23, 2012, for an eight (8) year term of

17  enlistment, with the first four (4) years being in the Active Regular Army.  SINGH qualified

18  for the MAVNI program based on his fluency in English and Hindi and Punjabi, academic

19  accomplishments, Army test scores, and physical fitness.

20      222.    During the recruiting process SINGH was repeatedly told that MAVNI

21  soldiers, once they completed basic training and became citizens, would have the same

22  opportunities as all other soldiers including with regard to applying specialized services,

23  Officer Candidate School (OCS), and other similar programs.  SINGH, along with his

24  Guidance Counselor, signed a MAVNI "Information Paper – Updated September 2012"

25  which said the same thing:  "once you enter the Army, you will have all the same

26  opportunities afforded to you as any other Soldier in the U.S. Army."

27

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

223.    After SINGH enlisted and before he shipped to basic training, he underwent a thorough Single Scope Background Investigation.  That investigation reported back favorably on November 27, 2012.

224.    Upon completion of basic training, SINGH transitioned to Advanced Individual Training (AIT) at Fort Eustis, Virginia where he completed the Apache Helicopter Armament/Electrical/Avionic Systems training as an Honor Graduate in October 2013.  SINGH was also recognized for achieving the maximum score on the Army Physical Fitness Test.

225.    In 2014, SINGH was deployed to Kandahar, Afghanistan in support of Operation Enduring Freedom, for which service he received an Army Commendation Medal and a NATO Service Medal.

226.    While at Ft. Lewis, SINGH received Army Combative Level 1 and 2 certifications and Master Combative Trainer certification.  SINGH also at times served as squad leader.

227.    In October 2015, SINGH successfully completed the Special Forces Assessment and Selection (SFAS) program and qualified to attend the Special Forces Qualification Course (SFQC or "Q Course").  Most applicants are not selected due to the rigorous nature of this program.

228.    Immediately after being selected, SINGH applied for a Secret Clearance, which is necessary to attend the Q Course and become special forces soldier.  SINGH has now been waiting for almost a year and a half to receive a clearance.  His SFAS will expire after two years.  If SINGH is not able to obtain a Security Clearance before this October, he will have to repeat the entire process.

229.    Following the issuance of the June 21, 2017 "Kurta" memo, SINGH requested a security clearance.  He has yet to receive a security clearance.

230.    The "Levine" memo which prohibited MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their

THIRD AMENDED COMPLAINT - 47
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    initial term of enlistment, and the remaining discriminatory rules and practices directed at

2    naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

3    memo; delaying the processing of MAVNI soldier security clearance applications; applying

4    heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

5    "continuous monitoring" of naturalized U.S. citizens who entered the armed services

6    through the MAVNI program) have severely limited SINGH's ability to serve his country,

7    denied SINGH the opportunity to advance in his chosen career in the U.S. Army, and

8    treated SINGH as a second class citizen.

9                    **O.      Fleury Ngantchop Keigni Di Satchou**

10    231.    FLEURY NGANTCHOP KEIGNI DI SATCHOU is a United States citizen

11    who naturalized on August 14, 2014.

12    232.    KEIGNI DI SATCHOU is an Army Behavioral Health Technician (MOS

13    68X) assigned to the 525th Military Intelligence Brigade, Headquarter and Headquarter

14    Company, Fort Bragg, North Carolina.

15    233.    KEIGNI DI SATCHOU is a native of Cameroon.  He came to the United

16    States in 2004 and sought political asylum based on fear of persecution in his native country

17    due to his activism in the plight of the secessionist group, the Southern Cameroon National

18    Council.

19    234.    As an asylum applicant, KEIGNI DI SATCHOU attended Ghandji's Health

20    Academy and became a Nursing Assistant in 2006. He attended Comprehensive Health

21    Academy School of Practical Nursing in Washington DC, and became a board-certified

22    License Practical Nurse with the State of Maryland in 2007.  He then worked in various

23    long-term care nursing facilities in Maryland.  KEIGNI DI SATCHOU was granted political

24    asylum in 2010.

25    235.    KEIGNI DI SATCHOU enrolled in computer science courses at Community

26    College of Baltimore County from 2011 – 2014.  From 2015 to the present, he has taken

27

THIRD AMENDED COMPLAINT - 48
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  computer science courses at the University of Maryland University College and has to date

2  obtained 105 of the 120 credit hours required for a Bachelor in Computer Science.

3      236.  KEIGNI DI SATCHOU remained in lawful immigration status during his

4  time in the United States prior to becoming a U.S. citizen by holding asylee status, and was

5  eligible to apply for a Green Card to become a Permanent Resident.

6      237.  KEIGNI DI SATCHOU enlisted in the United States Army under the

7  Military Accessions Vital to National Interest (MAVNI) Program on January 9, 2014, for an

8  eight (8) year term of enlistment, with the first four (4) years being in the Active Regular

9  Army and four (4) years Reserve Component.

10      238.  KEIGNI DI SATCHOU qualified for the MAVNI program based on his

11  fluency in English and French, academic accomplishments, Army test scores, and physical

12  fitness.

13      239.  Before shipping to basic training, KEIGNI DI SATCHOU underwent a

14  thorough Single Scope Background Investigation.  That investigation reported back

15  favorably on May 14, 2014.

16      240.  Upon completion of basic training, KEIGNI DI SATCHOU transitioned to

17  Advanced Individual Training (AIT) at Fort Sam Houston, San Antonio, Texas where he

18  completed Behavioral Health Technician training.

19      241.  Critical to KEIGNI DI SATCHOU's decision to enlist through the MAVNI

20  Program were the assurances he received from his Recruiter and the MAVNI Information

21  Paper that he would be able to apply to Officer Candidate School (OCS) as soon as he met

22  the educational requirement.  The MAVNI "Information Paper" that he signed, and that was

23  also signed by his Recruiter, the Recruiting Center Commander, and the Recruiting Center

24  Guidance Counselor, similarly promised: "[o]nce you enter the Army, you will have all the

25  same opportunities afforded to you as any other Soldier in the U.S. Army. If you are eligible

26  and meet all the requirements, you can apply for Officer Candidate School (OCS), Green to

27

THIRD AMENDED COMPLAINT - 49
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1    Gold, Warrant Officer Candidate School (WOC) or any other Army school or program for

2    which you are eligible."

3        242.    KEIGNI DI SATCHOU sought a security clearance in order to apply to

4    Officer Candidate School (OCS).  KEIGNI DI SATCHO, however, was told that he was

5    ineligible to apply for a security clearance or OCS because he is a MAVNI soldier who had

6    not completed his first term of enlistment.

7        243.    After issuance of the June 21, 2017 "Kurta" memo, KEIGNI DI SATCHOU

8    renewed his efforts to obtain a security clearance through his post's Personnel Security

9    Officer (PSO) in order to attend OCS.  The PSO provided the Army Intelligence and

10   Security Command (INSCOM) with a copy of the "Kurta" memo in the event they had not

11   independently received it.  INSCOM responded to the PSO by ignoring the memo and

12   stating on June 28, 2017 that "[d]o not submit a packet for the individual if they have not

13   completed their first enlistment.  Proof of completion of first enlistment is a required

14   document."  The PSO in turn wrote KEIGNI DI SATCHOU on June 28, 2017 stating:

15           Please see below the response I received from the Personnel

16           Security Office. Unfortunately, they are still not processing
             requests for clearances of all MAVNI incumbents until after

17           first term enlistment has been completed. We have everything
             needed with the exception to a new command endorsement but

18           it looks like you will have to reenlist before we can process you
             for a clearance. My sincere apologies on this but it is what it is

19           for now.  Lastly, and most important, do no[t] email these

20           personnel directly for any rebuttal or exception to policies. I've
             inquired about that myself and **they are adamant about first**

21           **term completion before beginning the clearance process**.
             (Emphasis added.)

22

23       244.    The "Levine" memo which prohibited MAVNI soldiers -- who are all

24   naturalized U.S. citizens -- from applying for or receiving security clearances during their

25   initial term of enlistment, and the remaining discriminatory rules and practices directed at

26   naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta"

27   memo; delaying the processing of MAVNI soldier security clearance applications; applying

1  heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and

2  "continuous monitoring" of naturalized U.S. citizens who entered the armed services

3  through the MAVNI program) have severely limited KEIGNI DI SATCHOU's ability to

4  serve his country, denied KEIGNI DI SATCHOU the opportunity to advance in his chosen

5  career in the U.S. Army, and treated KEIGNI DI SATCHOU as a second class citizen.

6  **P.    Kaushal Wadhwani**

7  245.    KAUSHAL WADHWANI is a United States citizen who naturalized on

8  April 28, 2017.

9  246.    WADHWANI is currently assigned as an Automated Logistics Specialist

10  (MOS 92A) with the 203rd Military Intelligence Battalion, B Company, at Aberdeen Proving

11  Grounds, Maryland.

12  247.    WADHWANI is a native of India.  He came to the United States in August

13  2010 to pursue a Masters Degree in Management Information Systems at Texas A&M

14  University, where he graduated in May 2012.

15  248.    After graduation from Texas A&M, WADHWANI worked for Dell Services

16  and later Capital One Financial Corporation as a Business System Analyst and later a Senior

17  Systems Integrator.  WADHWANI remained in lawful immigration status during his time in

18  the United States prior to becoming a naturalized citizen by variously holding an F-1 student

19  visa, performing Optional Practical Training (OPT), or holding an H1B visa.

20  249.    WADHWANI enlisted in the United States Army under the Military

21  Accessions Vital to National Interest (MAVNI) Program on April 11, 2016.  His enlistment

22  term is for eight (8) years with the first six (6) years being in the Reserve Component.  He

23  qualified for the MAVNI program based on his fluency in Hindi and English, academic

24  background, excellent Army test scores, and physical fitness.

25  250.    WADHWANI was told when he enlisted that, once his background check was

26  completed and he became a naturalized U.S. citizen, that he would be treated the same as all

27  other soldiers.  WADHWANI, his recruiter, guidance counselor and the center commander

THIRD AMENDED COMPLAINT - 51
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1   all signed a MAVNI Information Paper (December 2014) which stated "[o]nce you enter the

2   Army, you will have all the same opportunities afforded to you as any other Soldier in the

3   U.S. Army Reserve."

4        251.    WADHWANI was originally told he would be sent to basic training on

5   November 22, 2016.  This was then delayed to May 9, 2017.  Now it has been indefinitely

6   delayed.  WADHWANI regularly drills with his unit but cannot attend his unit's full annual

7   training because he has not completed basic training.

8        252.    According to the June 21, 2017 "Kurta" memo, WADHWANI cannot obtain

9   a security clearance without first successfully completing basic training.  Without a security

10   clearance, WADHWANI cannot transfer into a MOS which would make appropriate use of

11   his advanced computer technology skills (such as a MOS 25B Information Technology

12   Specialist) or allow him to attend Officer Candidate School and become, for example, a

13   Health System Management Officer (MOS 70D).

14        253.    The "Levine" memo and the recent "Kurta" memo only partially withdrawing

15   the blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S.

16   citizens -- from applying for or receiving security clearances during their initial term of

17   enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S.

18   citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying

19   the processing of MAVNI soldier security clearance applications; applying heightened

20   security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous

21   monitoring" of naturalized U.S. citizens who entered the armed services through the

22   MAVNI program) have severely limited WADHWANI's ability to serve his country, denied

23   WADHWANI the opportunity to advance in his chosen career in the U.S. Army, and treated

24   WADHWANI as a second class citizen.

## Q.    Angelia Acebes

26        254.    ANGELITA ACEBES is a United States citizen who naturalized on

27   February 3, 2016.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

255.    ACEBES is currently assigned as a Specialist with the 789th Preventative Medicine Detachment at Fort Story, Virginia.

256.    ACEBES is a native of the Philippines.  She came to the United States in August 2008 to pursue a Masters Degree in Entomology at the University of Hawaii, Manoa, where she graduated in August 2011.  ACEBES began a Ph.D. program in 2012 at Virginia Polytechnic Institute and State University, obtaining a doctorate there in May 2016.  ACEBES has published numerous papers in her field and has received numerous honors, awards and grants.

257.    Prior to becoming a citizen, ACEBES remained in lawful immigration status during her time in the United States by holding an F-1 student visa.

258.    ACEBES enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on June 9, 2015.  Her enlistment term is for eight (8) years with the first six (6) years being in the Reserve Component.  She qualified for the MAVNI program as a Health Care Professional (HCP) with critical knowledge needed by Army Preventative Medicine Units regarding medically-important arthropod pests such as mosquitos, sand flies, kissing bugs, ticks, bed bugs, *etc.*

259.    ACEBES was told when she enlisted in June 2015 that, once her background check was completed and she naturalized as a U.S. citizen, that she would be able to commission as an officer like other U.S. citizens.  However, despite ACEBES naturalizing on February 3, 2016, the Army has yet to send her to Basic Officer Leadership Course (BOLC).

260.    ACEBES is apparently required to obtain a security clearance as a requirement for attending BOLC but, per the June 21, 2017 "Kurta" memo, she cannot obtain a security clearance until she first successfully completes BOLC.

261.    ACEBES was chosen after a competitive selection process by the Army Medical Department Board for an Army Entomologist officer positon.  She cannot serve in

1   this position or fulfill the duties for which the Army hired her, however, because the Army

2   has yet to commission her and send her to BOLC.

3       262.   The "Levine" memo and the recent "Kurta" memo only partially withdrawing

4   the blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S.

5   citizens -- from applying for or receiving security clearances during their initial term of

6   enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S.

7   citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying

8   the processing of MAVNI soldier security clearance applications; applying heightened

9   security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous

10  monitoring" of naturalized U.S. citizens who entered the armed services through the

11  MAVNI program) have severely limited ACEBES's ability to serve her country, denied

12  ACEBES the opportunity to advance in her chosen career in the U.S. Army, and treated

13  ACEBES as a second class citizen.

14                              **R.     Kusuma Nio**

15      263.   KUSUMA NIO is a United States citizen who naturalized on June 9, 2017.

16      264.   NIO is currently assigned as a Specialist with the 1st Medical Detachment

17  (Forward Surgical) Team based at Fort Hamilton, New York, with a placeholder MOS

18  pending commissioning as a MOS 61J (General Surgeon) with a rank of O-3.

19      265.   NIO is a native of Indonesia.  He came to the United States in August 2007 to

20  attend medical school at the University of Minnesota, where he graduated in 2011.  He then

21  attended a residency program in general surgery at North Shore LIJ Hofstra School of

22  Medicine in New York.  He moved to Springfield, Illinois, in July 2016 for a position as

23  General and Trauma Surgeon at HSHS Medical Group.

24      266.   Prior to becoming a citizen, NIO remained in lawful immigration status

25  during his time in the United States by variously holding an F-1 student visa, performing

26  Optional Practical Training (OPT), or holding an H1B visa.

27

THIRD AMENDED COMPLAINT - 54
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

267.    NIO enlisted in the United States Army under the Military Accessions Vital to National Interest (MAVNI) Program on August 12, 2015.  His enlistment term is for eight (8) years with the first six (6) years being in the Reserve Component.  He qualified for the MAVNI program as a Health Care Professional (HCP) with critical general and trauma surgeon skills needed by the Army.

268.    NIO was told when he enlisted in August 2015 that, once his background check was completed, that he would be able to naturalize as a U.S. citizen, obtain commissioning, and be sent to Basic Officer Leadership Course (BOLC) -- and this process would take between six months and a year.

269.    After NIO enlisted, he was required to undergo an extensive Single Scope Background Investigation (SSBI).  His SSBI was reported back favorably on June 1, 2016.

270.    Nearly two years after he enlisted, NIO has just recently been naturalized.  He has yet to be sent to BOLC.

271.    NIO is apparently required to obtain a security clearance as a requirement for attending BOLC but, per the June 21, 2017 "Kurta" memo, cannot obtain a security clearance until he first successfully completes BOLC.

272.    The "Levine" memo and the recent "Kurta" memo only partially withdrawing the blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited NIO's ability to serve his country, denied NIO the opportunity to advance in his chosen career in the U.S. Army, and treated NIO as a second class citizen.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1

**S.    Qi Xiong**

2      273.    QI "EVA" XIONG is a United States citizen who naturalized on June 2,

3 2017.

4      274.    XIONG is an E4, Specialist, with the 7228th Medical Support Unit, in

5 Columbia, Missouri.

6      275.    XIONG is a native of China.  She came to the United States in August 2008,

7 to study for an MBA in health care administration at the University of South Dakota.  She

8 transferred to Creighton University and graduated in 2011.  She attended the University of

9 Colorado Denver graduating with a Doctor in Dental Surgery degree in December 2013.

10      276.    XIONG is a licensed dentist with the States of Missouri and Illinois since

11 2014.

12      277.    XIONG remained in lawful immigration status during her time in the United

13 States prior to becoming a U.S. citizen by either holding an F-1 student visa, an H1B visa, or

14 by performing Optional Practical Training (OPT).

15      278.    XIONG enlisted in the United States Army under the Military Accessions

16 Vital to National Interest (MAVNI) Program on November 10, 2015, for an eight (8) year

17 term of enlistment, with the first six (6) years being in the Reserve Component.  XIONG

18 qualified for the MAVNI program as a Health Care Professional (HCP) with critical dental

19 skills needed by the Army.

20      279.    During the recruiting process, XIONG was repeatedly told that once she

21 became a citizen, that she would be treated like other U.S. citizens.  XIONG, along with her

22 Recruiter, Guidance Counselor, and Station Commander, signed a MAVNI "Information

23 Paper – Updated September 2012" which said the same thing:  "once you enter the Army,

24 you will have all the same opportunities afforded to you as any other Soldier in the U.S.

25 Army."

26      280.    Over a year and a half after she enlisted, XIONG has just recently been

27 naturalized.  She has yet to be sent to BOLC.

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

281.    XIONG is apparently required to obtain a security clearance as a requirement for attending BOLC but, per the June 21, 2017 "Kurta" memo, she cannot obtain a security clearance until she first successfully completes BOLC.

282.    The "Levine" memo and the recent "Kurta" memo only partially withdrawing the blanket DoD "guidance" prohibiting MAVNI soldiers -- who are all naturalized U.S. citizens -- from applying for or receiving security clearances during their initial term of enlistment, and the remaining discriminatory rules and practices directed at naturalized U.S. citizen MAVNI soldiers (*i.e.*, the failure to actually implement the "Kurta" memo; delaying the processing of MAVNI soldier security clearance applications; applying heightened security screening standards for naturalized U.S. citizen MAVNI soldiers; and "continuous monitoring" of naturalized U.S. citizens who entered the armed services through the MAVNI program) have severely limited XIONG's ability to serve her country, denied XIONG the opportunity to advance in her chosen career in the U.S. Army, and treated XIONG as a second class citizen.

## CLASS ACTION ALLEGATIONS

283.    Plaintiffs bring this action as a class action on behalf of themselves and all other similarly situated individuals pursuant to Rules 23 of the Federal Rules of Civil Procedure.  The named Plaintiffs seek to represent a class of all naturalized U.S. citizens who entered the armed services through the MAVNI program and are still serving in the armed services.

284.    The members of the proposed class meet the requirements of Rule 23(a) as there are likely several thousand class members, there are questions of law or fact common to the class (*i.e.*, whether it is constitutional to subject class members to "continuous monitoring" because they are naturalized U.S. citizens), the proposed class representatives are typical of the remaining class members because they are all subject to the same challenged policies and practices; and the proposed class representatives will fairly and

THIRD AMENDED COMPLAINT - 57
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

1  adequately protect the interests of the class because their interests are identical to the other

2  members of the class and Plaintiffs are represented by competent counsel

3      285.    Class certification is appropriate under Rule 23(b)(1) because prosecuting

4  separate actions could create a risk of inconsistent or varying adjudications that would be

5  dispositive of the interests of individuals who are not parties to this action.

6      286.    Class certification is appropriate under Rule 23(b)(2) because Defendant has

7  acted or refused to act on grounds that apply generally to the class, so that final injunctive

8  relief or corresponding declaratory relief is appropriate for the class as a whole.

9      287.    Class certification is appropriate under Rule 23(b)(3) because questions of law

10 or fact common to class members predominate over any questions affecting only individual

11 members, and that a class action is superior to other available methods for fairly and

12 efficiently adjudicating the controversy.

13              **CLAIM FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS**

14     288.    Defendant's actions that discriminate against naturalized U.S citizen MAVNI

15 soldiers violate Plaintiffs' rights of equal protection rights as guaranteed by the Due Process

16 clause of the Fifth Amendment of the U.S. Constitution.

17     289.    Plaintiffs are entitled to a declaration that Defendant's actions that

18 discriminate against naturalized U.S citizen MAVNI soldiers violate Plaintiffs' rights of equal

19 protection rights as guaranteed by the Due Process clause of the Fifth Amendment of the

20 U.S. Constitution.

21     290.    Plaintiffs are further entitled to preliminary and permanent injunctions

22 prohibiting Defendant from engaging in actions that discriminate against naturalized U.S

23 citizen MAVNI soldiers in violation of Plaintiffs' rights of equal protection rights as

24 guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution.

25     WHEREFORE, Plaintiffs pray for relief as follows:

26     1.      Declaratory and injunctive relief as set forth in the Complaint;

27

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082

2.      An award of costs and attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and/or any other statute or rule of law that provides for an award of costs and attorney fees in this situation; and

3.      Other relief deemed equitable or applicable by the Court.

DATED this 14th day of August, 2017.

ATKINSON, CONWAY & GAGNON
Attorneys for Plaintiffs

By:    s/ Neil T. O'Donnell
Neil T. O'Donnell, Esq.
420 L Street, Suite 500
Anchorage, AK 99501
Phone: (907) 276-1700
Fax: (907) 272-2082
nto@acglaw.com
Alaska Bar No. 8306049
*Pro Hac Vice Attorney*


MACDONALD HOAGUE & BAYLESS
Attorneys for Plaintiffs, *Local Counsel*


By:    s/ Joseph R. Shaeffer
Joseph R. Shaeffer, WSBA #33273
1500 Hoge Building
705 Second Avenue
Seattle, Washington  98104
Phone (206) 622-1604
Fax: (206) 343-3961
joe@mhb.com

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on the 14th day of August, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

3

4

        **Nathan Swinton, Esq.**

5

        **U.S Department of Justice**
        **Civil Division, Federal Programs Branch**

6

        **20 Massachusetts Ave. NW**
        **Washington, DC 20530**

7

        **Tel:  202-305-7667**
        **Fax:  202-616-8470**

8

        Nathan.M.Swinton@usdoj.gov

9

10

                    *s/ Deborah A. Pratt*
                    Deborah A. Pratt, Legal Assistant

11

                    dap@acglaw.com

12

32-212/8001.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THIRD AMENDED COMPLAINT - 60
Case No. 2:17-cv-00242-TSZ

ATKINSON, CONWAY & GAGNON
420 L Street, Suite 500
Anchorage, AK 99501
Tel 907.276.1700 Fax 907.272.2082