UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIRTI TIWARI, et al.,

        Plaintiffs,

 v.

JAMES MATTIS, Secretary, U.S. Department of Defense, in his official capacity,

        Defendant.

C17-242 TSZ

ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Third Amended Complaint, docket no. 70 (the "Motion"). Having reviewed all papers filed in support of, and in opposition to, the Motion, the Court enters the following order.

**<u>Background</u>**

This action, challenging the constitutionality of the Military Accessions Vital to National Interest ("MAVNI") program, began with seven (7) named plaintiffs. *See* Complaint for Declaratory and Injunctive Relief Based on Deprivation of Constitutional Rights, docket no. 1. Plaintiff Raj Chettri was added when the First Amended Complaint, docket no. 6, was filed. Eight (8) additional plaintiffs were added when the Second

ORDER - 1

Amended Complaint, docket no. 30, was filed. The Third Amended Complaint for Declaratory and Injunctive Relief Based on Deprivation of Constitutional Rights, docket no. 63 (hereinafter referred to as the "Complaint"), added three (3) additional plaintiffs—for a total of nineteen (19) plaintiffs currently named in this lawsuit. Each plaintiff enlisted in the armed forces under the MAVNI program. The Complaint alleges "national origin discrimination imposed by the Department of Defense (DoD) on all naturalized U.S. citizen soldiers who entered the U.S. armed services through the Military Accessions Vital to National Interest (MAVNI) Program, thereby disrupting, delaying and often crippling their military careers and preventing them from fully using their talents for the benefit of the national defense." Complaint ¶ 1. Plaintiffs allege that the Department of Defense (DoD) has impermissibly applied heightened security screening, continuous monitoring, and counter intelligence measures to MAVNI recruits. Plaintiffs bring a single claim seeking declaratory and injunctive relief prohibiting DoD "from engaging in actions that discriminate against naturalized U.S. citizen MAVNI soldiers in violation of Plaintiffs' . . . equal protection rights as guaranteed by the Due Process Clause of the Fifth Amendment of the U.S. Constitution." *Id.* at ¶¶ 288–90.

Defendant James Mattis, Secretary, U.S. Department of Defense ("Defendant"), asserts various grounds for dismissal, including mootness, lack of standing, and failure to state a claim. The Court disagrees with Defendant that Plaintiffs' claims are moot or that Plaintiffs lack standing. The Court also finds that Plaintiffs have stated a claim for national origin discrimination in violation of the Fifth Amendment. Defendant's Motion is therefore DENIED for the reasons stated in this order.

### A. History of the MAVNI Program

In 2008, the Secretary of Defense first authorized the MAVNI Pilot Program, which allowed non-U.S. citizens to enlist in the military if they were legally present in the United States and did not yet have "green cards" but met certain other requirements. *See* Complaint ¶¶ 3–4. Specifically, the MAVNI program expanded recruiting to legal non-citizens who are (1) fully licensed health care professionals in critically short specialties, or (2) speak one of 44 strategic languages. *Id.* at ¶ 4; December 2014 Enlisted MAVNI Information Paper, docket no. 63–2. ("2014 MAVNI Paper"), at 1 (attached as Exhibit 2 to the Complaint).[1]

In September 2012, DoD issued an updated information paper imposing, among other things, the following security clearance policy: "all MAVNI recruits will be subject to enhanced security screening measures which will occur while you are in the Delayed Entry Program (DEP) before you ship to [Basic Combat Training (BCT)]." September 2012 MAVNI Information Paper, docket no. 63–1 ("2012 MAVNI Paper"), at 7 (attached as Exhibit 1 to the Complaint); Complaint ¶ 6.

The 2014 MAVNI Paper revised this policy by confirming the security screening measures "will occur while you are in the Army Reserve Delayed Training Program (DTP) before you ship to BCT. You will be required to remain in the DTP for at least 180 days to allow for the completion of the security checks." 2014 MAVNI Paper at 7.

---

[1] The Court may consider documents attached to the complaint and documents incorporated by reference in the complaint without converting a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

On September 30, 2016, DoD announced that, subject to certain conditions, MAVNI "[e]ligibility is extended to aliens in the following categories of enlistment: a. Asylee, refugee, Temporary Protected Status (TPS), or b. [one of several] [n]on-immigrant categories . . . ." Sept. 30, 2016, Memorandum from Peter Levine, docket no. 63–3 (the "Sept. 30, 2016, Memo") at 4 (attached as Exhibit 3 to the Complaint). MAVNI recruits were nonetheless ineligible for an interim security clearance until after their first term of enlistment. *Id.*

The September 30, 2016, Memo also confirmed that "[a]ll personnel accessed through the MAVNI program since its inception in 2009 must be continuously monitored and accounted for throughout the duration of their affiliation with the Department of Defense . . . ." September 30, 2016, Memo at 2; *see also* Jan. 6, 2017, Memorandum from Debra S. Wada, docket no. 63–4 (the "Wada Memo") at 1 (attached as Exhibit 4 to the Complaint). MAVNI recruits are also subject to a counter intelligence security interview prior to receiving a suitability determination. September 30, 2016, Memo at 6, 9.

Plaintiffs initiated this lawsuit on February 16, 2017. On June 21, 2017, DoD revised its security clearance policy as follows: "Effective immediately, individuals enlisted under the MAVNI Pilot Program who have successfully completed basic military training/boot camp (completion of formal skills training is not required), and have become naturalized U.S. citizens based on their military service, may be considered for a security clearance under the same terms, conditions, and criteria as any other U.S.

citizen." June 21, 2017, Memorandum from A.M. Kurta, docket no. 63–5 (the "Kurta Memo"), at 1 (attached as Exhibit 5 to the Complaint).[2]

After the parties had completed briefing on this Motion, Defendant notified the Court that, on October 13, 2017, DoD published another set of revisions to the MAVNI policies at issue. First, DoD announced that "continuous monitoring for all MAVNI Service Members [would] include, at a minimum: enrollment in DoD's Continuous Evaluation (CE) program for the entirety of the MAVNI Service Member's military career; and an analytical counterintelligence and security assessment, and a National Intelligence Agency Check (NIAC) every two years." *See* Exhibit 1 to Defendant's Notice of Supplemental Authority, docket no. 76–1 (the "First Oct. 13, 2017, Memo") at 1–2. DoD announced that it would complete the vetting requirements outlined in the Sept. 30, 2016, Memo within 180 days. *Id.* at 1. Second, DoD clarified the process for making suitability and security determinations for the initial vetting of MAVNI recruits. *See* Exhibit 2 to Defendant's Notice of Supplemental Authority, docket no. 76–2 (the "Second Oct. 13, 2017, Memo"). Third, DoD offered guidance on how it determines whether a MAVNI soldier has served honorably for purposes of naturalization under 8 U.S.C. § 1440. *See* Exhibit 3 to Defendant's Notice of Supplemental Authority, docket no. 76–3 (the "Third Oct. 13, 2017, Memo").

---

[2] Basic military training includes completing BCT or One-Station-Unit Training. Declaration of Christopher P. Arendt, Exhibit A to the Motion, docket no. 70 ("Arendt. Decl."), at ¶ 5. Fifteen of the nineteen Plaintiffs in this case have already completed either BCT or One-Station-Unit Training. *Id.* at ¶ 6. "Pursuant to the June 21, 2017 [Kurta] memo, these individuals are eligible to apply for a security clearance if their position requires one." *Id.*

Notwithstanding these revisions to the MAVNI program, Plaintiffs maintain that DoD continues to discriminate against MAVNI recruits by failing to implement the Kurta Memo in practice and by subjecting them to heightened security clearance, continuous monitoring, and counter intelligence policies.

### B. Procedural History of this Lawsuit

On April 5, 2017—the same day Plaintiffs filed their First Amended Complaint, docket no. 6—Plaintiffs filed a motion for preliminary injunction arguing that DoD's guidance stating that MAVNI recruits were "ineligible for a security clearance during their initial term of enlistment" was unconstitutionally discriminatory. Docket no. 7, at 1. Defendant opposed Plaintiffs' motion, arguing that "none of the eight Plaintiffs are subject to the policy any longer; one Plaintiff is in his second term of enlistment, while the remaining seven were granted waivers. These events have rendered Plaintiffs' claims moot, thereby undermining their assertions about irreparable injury and their likelihood of prevailing on the merits of their claims." Docket no. 23, at 7.

On June 7, 2017, Plaintiffs obtained leave to amend their complaint a second time. Docket no. 29. Plaintiffs filed the Second Amended Complaint, docket no. 30, the next day. When DoD rescinded the challenged security clearance policy pursuant to the Kurta Memo, Plaintiffs filed a Notice of Withdrawal of Motion for Preliminary Injunction, docket no. 48, on June 26, 2017. Three days later, on June 29, 2017, Defendant filed a motion to dismiss the Second Amended Complaint. Docket no. 49. Again, Defendant argued that Plaintiffs' claims were moot because the challenged policy was no longer in effect, and "MAVNI soldiers who become naturalized citizens are now subject to the

same criteria and considerations as native-born U.S. citizens for purposes of security-clearance eligibility." *Id.* at 1.

On August 14, 2017, the Court granted Plaintiffs' subsequent request for leave to amend their complaint a third time, but staying all discovery "pending further order of the Court." Docket no. 62. That same day, Plaintiffs filed the Third Amended Complaint and filed a Motion to Certify Class Action, docket no. 64.

On August 24, 2017, Plaintiffs moved to lift the discovery stay "if and when the Court denies DoD's . . . [anticipated] motion to dismiss." Docket no. 67 at 2. The next day, the Court stayed the Motion to Certify Class Action pending resolution of Defendant's forthcoming motion to dismiss. Docket no. 68. On September 5, 2017, Defendant filed the instant Motion.[3]

**Discussion**

**A.   Jurisdiction**

Defendant contends that this action should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor," and then determining whether they are

---

[3] Since then, Plaintiffs have filed another Motion for Preliminary Injunction, docket no. 78, seeking to preclude MAVNI recruits from obtaining interim security clearances. This motion was noted for December 15, 2017.

ORDER - 7

legally sufficient to invoke jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). Comparatively, a factual attack challenges the facts that serve as the basis for subject matter jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### 1. **Mootness**

Defendant asserts that Plaintiffs' claim is now moot because of the recent revisions to MAVNI's security policy and because certain Plaintiffs have already received security clearances. Plaintiffs maintain that, notwithstanding these developments, DoD continues to discriminate against MAVNI recruits in practice. Defendant cites to *Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014), for the proposition that the voluntary cessation of the security clearance policy renders Plaintiffs' claims moot. While Defendant is correct that the Court "presume[s] that a government entity is acting in good faith when it changes its policy" (*see* Motion at 11), he fails to articulate the entire test adopted by the *Rosebrock* court. *Rosebrock*, 745 F.3d at 971 ("when the Government asserts mootness based on [a policy] change it must still bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again.").[4]

The court in *Rosebrock* explained that where an agency implements a policy change not reflected in any statute, ordinance, or regulation,

---

[4] This "heavy burden" is a "stringent" standard: subsequent events must make it absolutely clear that the alleged misconduct could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).

> mootness is more likely if (1) the policy change is evidenced by language that is "broad in scope and unequivocal in tone[;]" (2) the policy change fully "addresses all of the objectionable measures that [the Government officials took against the plaintiffs in th[e] case[;]" (3) "th[e] case [in question] was the catalyst for the agency's adoption of the new policy," (4) the policy has been in place for a long time when we consider mootness[;] and (5) "since [the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by plaintiff[.]"

*Id.* at 971–72 (citations omitted) (quoting *White*, 227 F.3d at 1243–44). "On the other hand, we are less inclined to find mootness where the 'new policy . . . could be easily abandoned or altered in the future.'" *Id.* at 972 (quoting *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)).

*Rosebrock* is instructive. Faced with an as applied, factual challenge to a First Amendment violation, the Department of Veterans Affairs ("VA") in *Rosebrock* voluntarily ceased its inconsistent enforcement of a regulation prohibiting posting materials on VA property. *See id.* at 966. The Ninth Circuit found that the VA's voluntary cessation mooted the claims at issue for the following reasons: (1) the VA's recommitment to strict enforcement made it "particularly unlikely" that it would change its policy again in the future because "the VA states that it will be more vigilant in following a previously existing policy of consistent enforcement of a longstanding regulation[;]" (2) the VA's email announcing the policy change "was a clear statement, broad in scope, and unequivocal in tone[;]" (3) the email addressed all of the objectionable measures that VA officials took against the plaintiffs; (4) the record "strongly suggest[ed]" that the lawsuit was the catalyst for the VA's policy change;

(5) the policy change occurred "more than three years ago[;]" and (6) since the policy change, the VA had not engaged in similar conduct. *Id.* at 973–74.

Here, the MAVNI program began in 2008. The Kurta Memo—which Defendant argues voluntarily ceased the improper application of the security clearance policy—was published just over four months ago and, importantly, after this lawsuit was filed. This, coupled with other recent revisions to the MAVNI program, strongly suggests that the instant litigation was a catalyst for the policy change. While the Kurta Memo appears to be clear, unequivocal, and broad in scope, it does not directly address all of the objectionable measures alleged in the Complaint. Importantly, no evidence contradicts Plaintiffs' allegations that DoD is not following the Kurta Memo in practice, and the Court must take those allegations as true. Likewise, no evidence makes it "particularly unlikely" that DoD will not discriminatorily apply its security clearance policy in the future—notwithstanding the Kurta Memo. If anything, the recent revisions to this policy show just how quickly DoD can revise its internal procedures.

The Court concludes that Defendant has not met his heavy burden of showing that the voluntary cessation of the challenged MAVNI policies deprive this Court of jurisdiction. The mere fact that DoD has continued to revise the MAVNI program since this lawsuit was filed is insufficient to show that the challenged conduct (improper enforcement of the questioned policies) could not reasonably be expected to recur. In addition, acting on the alleged unlawful MAVNI policies challenged in this lawsuit is not

the same as voluntarily withdrawing those policies.[5] Thus, Defendant's request to dismiss Plaintiffs' claims under Rule 12(b)(1) as moot is DENIED.

## 2. **Standing**

Defendant also asserts that Plaintiffs lack standing to bring their claim. Standing "mediat[es] the Article III requirement that federal courts take jurisdiction only over 'definite and concrete, not hypothetical or abstract' cases and controversies." *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) (quoting *Thomas v. Anchorage Equal Rights Commc'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). "A plaintiff generally demonstrates standing by showing an injury in fact traceable to the challenged action and redressable by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc.*, 528 U.S. at 180–81).

"In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* (citations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); citing *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997)). "And while the plaintiff must show that the feared harm is 'actual or imminent, not conjectural or hypothetical,' . . . 'one does not have to await the consummation of threatened injury' before challenging a statute." *Id.* (quoting *Lujan*,

---

[5] Likewise, Defendant's argument that some Plaintiffs have already received security clearances does not conflict with Plaintiffs' allegation that DoD continues to discriminate against MAVNI recruits.

504 U.S. at 555; *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Here, Defendant's position that Plaintiffs lack standing is without merit. Plaintiffs premise their equal protection claim on the following two contentions: (1) that DoD has failed to implement the Kurta Memo in practice; and (2) that DoD continues to impose discriminatory screening and continuous monitoring requirements on all naturalized U.S. citizen MAVNI soldiers. As to DoD's failure to implement the Kurta Memo, the Complaint specifically alleges in relevant part:

> Army security officers and other personnel are failing to implement the June 21, 2017 "Kurta" memo because of, *inter alia*, (1) the lack of an Army-specific memorandum specifically applying the direction in the "Kurta" memo to the Army and (2) because of DoD's failure to inform, train and actually require compliance by the various services with the directive in the "Kurta" memo.
> DoD is further failing to implement the promises in the June 21, 2017 "Kurta" memo of equal consideration under the same terms, conditions, and criteria as any other U.S. citizen by permitting DoD Central Adjudications Facility (CAF) and other security agencies and offices to impose heightened standards on U.S. citizen MAVNI soldier's [sic] security clearance applications; by requiring U.S. citizen MAVNI soldiers to start the security screening process from scratch despite having recently successfully completed SSBI-level (Tier-5) screenings; and by failing to process and/or delaying U.S. citizen MAVNI security clearance applications.
> As expressly admitted in the June 21, 2017 "Kurta" memorandum, DoD also retains its discriminatory policy of prohibiting applications for security clearances by naturalized MAVNI soldiers whom have not yet successfully completed "basic military training/boot camp." No similar prohibition applies to other service members.
> Many naturalized U.S. citizen MAVNI solders have not completed "basic military training/boot camp" simply because – despite months or a year or more of waiting – their service branch has failed to send them to "basic military training/boot camp."

> As alleged above, naturalized U.S. citizens who entered the armed forces through the MAVNI program are being treated differently from other U.S. citizens who serve in the military. . . .

Complaint ¶¶ 27–31.

As to the heightened screening standards and continuous monitoring policies, the Complaint alleges as follows:

> By subjecting all naturalized U.S. citizens who entered the armed services through the MAVNI program to counter intelligence (CI) and "continuous monitoring" programs, and by further applying heightened standards for passage of security screenings than applicable to other similarly-situated service members, DoD is discriminating against such individuals as a class based on their national origin. In addition, DoD intends to, or has, involuntarily separated honorably-serving U.S. citizen MAVNI soldiers who DoD deems not to have met these discriminatory practices and standards, which conduct also constitutes national origin discrimination.

Complaint ¶ 24. Plaintiffs allege that, as a result of this discrimination, their applications have been delayed and they cannot advance to positions that require a clearance. As such, Plaintiffs allege that MAVNI's counter intelligence and continuous monitoring policies "have severely limited [their] ability to serve [their] country, denied [them] the opportunity to advance in [their] chosen career[s] in the U.S. Army, and treated [them] as . . . second class citizen[s]." *See* Complaint ¶¶ 47, 61, 74, 84, 106, 121, 141, 154, 166, 177, 190, 206, 216, 230, 244, 254, 262, 272, 282.

The Complaint sufficiently alleges that DoD has not applied the Kurta Memo and, accordingly, that Plaintiffs have not been afforded benefits provided to other similarly-situated service members not subject to the security policy at issue. This is "a type of personal injury [the Supreme Court has] long recognized as judicially cognizable."

*Heckler v. Mathews*, 465 U.S. 728, 738 (1984).  Plaintiffs have standing to challenge DoD's alleged failure to implement the Kurta Memo.

Likewise, the Court concludes that Plaintiffs have put forth allegations sufficient to establish standing to challenge DoD's counter intelligence and continuous monitoring policies articulated in the Sept. 30, 2016, Memo issued by Peter Levine.  *See* Complaint ¶¶ 21–24.  Plaintiffs assert that the effect of these policies "have created a permanent cloud of suspicion" over MAVNI recruits.  *Id.* at ¶ 23.

In reaching this conclusion, the Court finds Defendant's reliance on *Warth v. Seldin*, 422 U.S. 490 (1975) and its progeny untenable.  These cases do not apply because they dealt with claimants seeking "to assert the legal claims of third parties."  *Sprint Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 289–90 (2008).  In contrast, Plaintiffs are not asserting the rights of some third party.  Instead, they allege discrimination against a defined group of individuals of which they are members.

The issue is whether alleged treatment as a "second class citizen"—or the fact of unequal treatment—is an injury adequate to confer standing.  Such a stigmatic injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct[.]"  *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler*, 465 U.S. at 739–40), *abrogated in part on other grounds by Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  Here, each Plaintiff specifically alleges that the counter intelligence and continuous monitoring policies have treated him or her as a second class citizen.  Thus, Plaintiffs allege a

stigmatic injury suffered as a direct result of having been subjected to these policies.[6]
Plaintiffs have therefore alleged facts sufficient to establish injury and withstand
Defendant's standing challenge. *See Heckler*, 465 U.S. at 739–40; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 668 F. Supp. 1361, 1368 (N.D. Cal. 1987) ("The fact of unequal treatment is sufficient injury."), *rev. in part, vacated in part on other grounds*, 895 F.2d 563 (9th Cir. 1990).

For these reasons, Plaintiffs have standing to challenge the counter intelligence and continuous monitoring policies. Defendant's request to dismiss this action for lack of subject matter jurisdiction is DENIED.

### B. Failure to State a Claim

#### 1. Standard

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

---

[6] This is unlike the "abstract stigmatic injury" cases discussed in *Allen* concerned with "transform[ing] the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Id.* at 756 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

ORDER - 15

1       In ruling on a motion to dismiss, the Court must assume the truth of a plaintiff's
2 allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of*
3 *Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether
4 the facts in the complaint sufficiently state a "plausible" ground for relief. *Twombly*, 550
5 U.S. at 570.

### 2.     Plaintiffs' Equal Protection Claim

7       Defendant contends that Plaintiffs have failed to state a legally cognizable claim
8 for national origin discrimination in violation of the Fifth Amendment. Defendant's
9 argument is unsupported by legal authority. A "classification will deny equal protection
10 only if it is not 'rationally related to a legitimate state interest.'" *Coal. for Econ. Equity*
11 *v. Wilson*, 122 F.3d 692, 702 (9th Cir. 1997) (quoting *City of Cleburne v. Cleburne*
12 *Living Ctr.*, 473 U.S. 432, 440 (1985)); *see also Doe v. United States*, 419 F.3d 1058,
13 1062 (9th Cir. 2005). This "general rule does not apply, however, when a law classifies
14 individuals by race or gender. Any governmental action that classifies persons by race is
15 presumptively unconstitutional and subject to the most exacting judicial scrutiny."
16 *Wilson*, 122 F.3d at 702 (citing *Adarand Constructors v. Pena*, 515 U.S. 200, 115 S. Ct.
17 2097, 2114 (1995)).

18       Under *Wilson*, the issue is whether a law treats a person unequally "because of"
19 that person's race, nationality, gender, religion, or some other protected classification.
20 122 F.3d at 701–02. In resolving this issue, the Court must first identify the classification
21 that the policies at issue draw. *Id.* at 702. A plaintiff can meet its burden of showing that
22 such a classification violates the Equal Protection Clause by demonstrating that the

policies in question are "applied in a discriminatory manner or impose[] different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Here, Plaintiffs allege that DoD has applied the challenged MAVNI policies in a discriminatory manner. Plaintiffs allege that the policies in question effectively divide the universe of recruits into two categories: those who are naturalized through the MAVNI program and those who are not. Plaintiffs allege that pursuant to these policies, DoD is subjecting MAVNI recruits to increased burdens. The Complaint states that DoD is failing to enforce the Kurta Memo by subjecting MAVNI recruits to more onerous criteria than those applied to any other U.S. citizen. Complaint ¶¶ 27–31. Likewise, the Complaint states that MAVNI recruits are subjected to different levels of continuous monitoring and counter intelligence efforts. *Id.* at ¶ 24.

Because these policies impose different burdens on MAVNI recruits that are not applied to other U.S. citizen recruits, Plaintiffs have met their burden of alleging that this classification violates the Fifth Amendment. Likewise, Defendant has not articulated any relationship between this impermissible classification and a governmental interest sufficient to render Plaintiffs' claims implausible. *See Huynh v. Carlucci*, 679 F. Supp. 61, 67 (D.D.C. 1988); *Faruki v. Rogers*, 349 F. Supp. 723, 733 (D.D.C. 1972). Assuming the truth of Plaintiff's allegations and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have stated a claim.[7]

---

[7] The Western District of Washington is a correct venue for this action.

ORDER - 17

**Conclusion**

For the foregoing reasons, Defendant's Motion, docket no. 70, is DENIED. Plaintiffs' Motion to Certify Class, docket no. 64, is RENOTED to February 23, 2018. Defendant's opposition to the Motion to Certify Class shall be due by February 2, 2018. Plaintiffs' reply shall be due by February 16, 2018. The Court GRANTS Plaintiffs' Motion to Lift Stay of Discovery, docket no. 67.

IT IS SO ORDERED.

Dated this 19th day of December, 2017.

_Thomas S. Zilly_
Thomas S. Zilly
United States District Judge