UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIRTI TIWARI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES MATTIS, Secretary, U.S. Department of Defense, in his official capacity,<br><br>Defendant. | C17-242 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiffs' motion for preliminary injunction, docket no. 78 (the "Motion"). The Motion presents the following question: Should the Department of Defense ("Defendant") be required to treat non-U.S. citizens recruited through the Military Accessions Vital to National Interest ("MAVNI") program the same way it treats all other U.S. citizen soldiers when issuing interim security clearances?  For the reasons stated on the record during oral argument on March 21, 2018, *see* docket no. 114, the Court answered this question in the affirmative and GRANTED the Motion.  This Order further explains those reasons.

ORDER - 1

**Background**

### A. The MAVNI program recruits highly trained individuals pursuing professional careers to serve the military in specialized roles.

The Plaintiffs in this lawsuit are skilled professionals who abandoned educational and professional aspirations as civilians to enlist in the U.S. Army through the MAVNI program. Authorized in 2008, the MAVNI program expanded military recruiting to non-U.S. citizens who: (1) are fully licensed health care professionals in critically short specialties; or (2) speak one of 44 strategic languages. *See* December 2014 Enlisted MAVNI Information Paper, docket no. 63–2, at 1. "The language portion of MAVNI recruits highly qualified Soldiers to provide broadened language and cultural diversity to the force." *Id.* Through the MAVNI program, the Army recruited Plaintiffs from their citizen careers to serve in these specialized roles.

The military achieved its objective of recruiting a diverse group of skilled professionals with sought-after specialties. Plaintiff Amandeep Singh, for example, is a native of India who came to the United States to attend a university. Declaration of Amandeep Singh, docket no. 112–1 ("Singh Declaration"), at ¶ 2. He graduated from Texas Tech University with a degree in electrical/electronic engineering and, prior to enlisting in the Army, worked as an engineer in the wireless and radio frequency fields for such companies as Blackberry, Ltd., Microsoft Corporation, and Honeywell International, Inc. *Id.* at ¶ 3. With nearly a decade of professional experience, Mr. Singh enlisted in the U.S. Army Reserve on July 23, 2015, through the MAVNI program. *Id.* at ¶ 4.

Plaintiff Qi "Eva" Xiong is another highly qualified MAVNI recruit. Ms. Xiong is a native of China who received a Doctor of Dental Surgery from the University of Colorado. Declaration of Qi "Eva" Xiong, docket no. 105–2 ("Xiong Declaration"), at ¶ 2. Since becoming a licensed board certified dentist, she has worked as a dentist in both Illinois and Missouri. *Id.* Ms. Xiong enlisted in the U.S. Army Reserve on November 10, 2015, to serve as a dentist through the MAVNI program. *Id.* at ¶¶ 3–4. Despite enlisting as a dentist, Xiong has not been allowed to practice dentistry with the Army because she has not received a security clearance. *Id.*

Valdeta Mehanja is a native of Kosovo who lived in extreme poverty before fleeing to Germany as a child. Declaration of Valdeta Mehanja, docket no. 73–1 ("Mehanja Declaration"), at ¶ 3. After finishing high school, Mehanja worked for several contractors in the IT function, obtained various IT certifications, and became experienced with "ground-to-air and aircraft-to-aircraft communications . . . ." Mehanja Declaration at ¶¶ 4–5. Using the money she had saved, she paid her way through Embry Riddle University where she earned a degree in Aeronautical Science. *Id.* at ¶ 6. She received a series of ratings and licenses while at Embry Riddle and began working as a flight instructor during her third year. *Id.* at ¶¶ 7–8. Among other honors and accolades, Mehanja was selected by Embry Riddle "to serve as Pilot-in-Command of the school's entry in the Women's Air Race Classic, a four-day transcontinental flight competition." *Id.* at ¶ 8. She has logged approximately 2,000 hours of flight time. *Id.*

Mehanja enlisted in the Army through the MAVNI program on February 27, 2015. During Basic Combat Training, she graduated with the highest female Army Physical

Test score in her platoon. *Id.* at ¶ 11. She finished Advanced Individual Training as a UH-60 Blackhawk repairer with a 97% GPA and honors from the Aviation Logistics School. *Id.* Her Battalion Commander stated that "[s]he is without a doubt one of the most competent, caring, and professional leaders I have worked with in 22 years of service." *Id.* at ¶ 17.

Despite her qualifications, she too was told that she was not eligible to obtain a security clearance and proceed with the necessary training and education to become a Warrant Officer—the position she had hoped to attain when she enlisted. *Id.* at ¶¶ 18, 29. Her goal is to become a Blackhawk Helicopter pilot. *Id.* at ¶ 12. Prior to initiating this lawsuit and filing the Motion, Mehanja was unable to fly for the Army because she had been denied a security clearance. *Id.* at ¶ 29; *see also* Declaration of Neil T. O'Donnell, docket no. 90-3 ("O'Donnell Declaration"), at ¶ 8 (as of February 2, 2018, "Valdeta Mehanja has not received either a final or an interim security clearance.").

Like Mr. Singh, Ms. Xiong, and Ms. Mehanja, the other Plaintiffs in this lawsuit enlisted in the Army, became naturalized citizens, and serve the United States by using their specialized skills. Like all other soldiers serving in the Army, the MAVNI soldiers must oftentimes complete additional specialized schooling—such as officer command school or Warrant Officer school—before Defendant promotes them to their desired roles. *See, e.g.*, Singh Declaration, at ¶¶ 6–7; Xiong Declaration, at ¶ 6; Mehanja Declaration, at ¶ 29.

To participate in these programs, MAVNI soldiers must obtain a security clearance or "interim security clearance." *See, e.g.*, *id.* Sometimes Defendant enforces

this requirement before allowing the soldiers to enroll. Other times, MAVNI soldiers have been permitted to attend OCS, complete all necessary coursework, but have then been designated "security holdovers" pending a security clearance determination. *See, e.g.*, Declaration of Yang Zhidong, docket no.105–6 ("Zhidong Declaration"),[1] at ¶¶ 5–6. Even though these soldiers have completed OCS, they have been relegated to various administrative roles pending their security clearance determinations. For example, Mr. Zhidong—who holds a Master's Degree in International Economics from Johns Hopkins—is an administrative assistant to an infantry battalion chaplain, where he performs routine tasks such as planning events, logistics, and travel. *Id.* at ¶ 6.

Regardless of when Defendant requires a MAVNI soldier to obtain an interim security clearance, the record shows that these interim security clearances are necessary for MAVNI soldiers to progress in rank and serve in the specialized roles the Army recruited them for.

### B. Plaintiffs challenge their inability to receive interim security clearances on the same terms, conditions, and criteria as all other U.S. citizen soldiers.

Since the program's inception, Defendant has subjected soldiers enlisted through the MAVNI program to various counter intelligence policies designed to detect and

---

[1] Mr. Zhidong is a native of China. Zhidong Declaration, at ¶ 2. Upon graduating college with a degree in Political Science, Mr. Zhidong worked as a research assistant before starting graduate school at the Johns Hopkins School of Advanced International Studies. *Id.* In May 2017, Mr. Zhidong completed his Master's Degree in International Economics and Western Hemisphere Studies. *Id.* Mr. Zhidong joined the Army in April 2015. Three years have passed and Defendant has continued to deny Mr. Zhidong a security clearance. *Id.* at ¶¶ 3–8.

assess potential threats to national security.[2] These policies have delayed or outright prevented MAVNI soldiers from obtaining security clearances which, in turn, has precluded these soldiers from advancing their military careers and serving in their areas of expertise.

Plaintiffs contest the constitutionality of these counter intelligence policies, which Defendant does not impose on other soldiers who did not enlist through the MAVNI program. Plaintiffs' Third Amended Complaint, docket no. 63 (the "Complaint"), specifically challenges these policies and asserts a single claim for declaratory and injunctive relief "prohibiting Defendant from engaging in actions that discriminate against naturalized U.S citizen MAVNI soldiers in violation of Plaintiffs' . . . equal protection rights as guaranteed by the Due Process clause of the Fifth Amendment of the U.S. Constitution." *Id.* at ¶¶ 289–90.

Plaintiffs' Motion requests a preliminary injunction prohibiting Defendant "from enforcing a blanket rule precluding naturalized U.S. citizens in the Military Accessions Vital to National Interest (MAVNI) program from obtaining **<u>interim</u>** security clearances." Motion at 1. Defendant originated the policy at issue in a September 30, 2016, memorandum entitled Military Accessions Vital to the National Interest Pilot

---

[2] The Court recognizes the importance of obtaining a security clearance and the need to process these requests with care. The Court also recognizes that the military should be afforded considerable deference with regard to matters of security clearance determinations. *See Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988). However, Plaintiffs make a strong showing that MAVNI soldiers are treated differently and Defendant has not applied the same policies to non-MAVNI soldiers. The Court is satisfied that the injunctive relief Plaintiffs request, if properly tailored, will cure this unequal treatment without intruding on Defendant's ability to make security clearance determinations using legitimate criteria equally applied to all soldiers.

Program Extension." Sept. 30, 2016, Memorandum from Peter Levine, docket no. 63–3 (the "Sept. 30, 2016, Memo"). The Sept. 30, 2016, Memo precluded MAVNI recruits from being considered for interim security clearances until he or she had completed a first enlistment—a limitation Defendant does not impose on other soldiers. *Id.* at 7 ("Security Clearance Eligibility Requirements"); Motion at 4.[3]

**C.    Defendant's repeated attempts to revoke the challenged policy.**

The thrust of Defendant's opposition to the Motion is that the challenged policy has since been revoked and, accordingly, Plaintiffs cannot satisfy the factors necessary for a preliminary injunction. *See, e.g.*, Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction, docket no. 79, at 5–9. Similar to the approach it took in opposing Plaintiffs' first request for emergency relief, Defendant states that it withdrew this challenged policy on June 21, 2017, by issuing a memorandum declaring that MAVNI soldiers "may be considered for a security clearance under the same terms, conditions,

---

[3] This is Plaintiffs' second request for emergency relief from the Sept. 30, 2016, Memo. On April 5, 2017, Plaintiffs filed an initial Motion for Preliminary Injunction, docket no. 7, asking the Court to "prohibit[] Defendant from enforcing any guidance memoranda or other rules prohibiting U.S. Citizen MAVNI soldiers as a class from applying for or receiving a security clearance in their initial term of enlistment." On June 26, 2017, Plaintiffs voluntarily withdrew their first motion for preliminary injunction, docket no. 8, because Plaintiffs had understood that Defendant had "partially withdrawn the policies and practices challenged in this litigation and the remaining issues in this case will therefore require further and different briefing." Docket no. 48. On August 14, 2017, Plaintiffs filed their Complaint, docket no. 63, adding additional plaintiffs who were still allegedly subject to Defendant's discriminatory prohibition on applying for a security clearance. Plaintiffs argue that Defendant's discriminatory conduct continues in practice.

ORDER - 7

and criteria as any other U.S. citizen." *See* Declaration of Christopher P. Arendt, docket no. 50, ¶ 4, Exhibit 1 (June 21, 2017, Memorandum from A.M. Kurta ("Kurta Memo")).[4]

Defendant further argues that it has circulated subsequent guidance clarifying any remaining confusion as to whether MAVNI soldiers are eligible for interim security clearances. *See, e.g.*, Defendant's Supplemental Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, docket no. 103, at 1–2, 4–5.[5] Defendant therefore argues that a preliminary injunction enjoining the challenged policy is unnecessary because the policy no longer exists, either on its face or as applied.[6]

---

[4] The Kurta Memo is also attached as Exhibit 5 to the Third Amended Complaint, docket no. 63–5. The Kurta Memo does not distinguish between interim security clearances and other security clearances.

[5] At oral argument, Defendant presented the Court with additional guidance dated March 18, 2018—three days before the hearing on March 21, 2018. That guidance provides in relevant part:

> 3.B.1. (U) ALL ARMY COMMANDERS WILL ENSURE THAT THEIR SECURITY MANAGERS UNDERSTAND THAT ALL SOLDIERS WHO ENLISTED UNDER THE MAVNI PILOT PROGRAM AND BECAME NATURALIZED UNITED STATES CITIZENS BASED ON THEIR HONORABLE MILITARY SERVICE WILL BE CONSIDERED FOR SECURITY CLEARANCE ELIGIBLITY UNDER THE SAME TERMS, CONDITIONS, AND CRITERIA AS ANY OTHER UNITED STATES CITIZEN.
>
> 3.B.2. (U) COMMANDERS WILL CONSIDER REQUESTS FOR INTERIM SECURITY CLEARANCE ELIGIBILITY FOR SOLDIERS WHO ENLISTED UNDER THE MAVNI PILOT PROGRAM AND WHO ARE UNITED STATES CITIZENS IN THE SAME MANNER AS THEY WOULD FOR ANY OTHER SOLDIER WHO IS A UNITED STATES CITIZEN.

*See* docket no. 118.

[6] On December 19, 2017, the Court denied Defendant's motion to dismiss which argued, among other things, that Plaintiffs' equal protection claim is moot. *See* docket no. 82. Defendant took a nearly identical position to the one it takes here; namely, that Defendant's attempts to revoke the challenged policy rendered any decision from this Court unnecessary. This Court concluded that Defendant's voluntary cessation of the challenged policy alone was not enough to moot Plaintiffs' claim: "The mere fact that [Defendant] has continued to revise the MAVNI program since this lawsuit was filed is insufficient to show that the challenged conduct (improper enforcement of the questioned policies) could not reasonably be expected to recur. In addition, acting on the alleged unlawful MAVNI policies challenged in this lawsuit is not the same as voluntarily withdrawing those policies." *Id.* at 10–11.

In support of its position, Defendant also points to various instances in which MAVNI soldiers have already received interim security clearances. *See, e.g.*, January 22, 2018, Memorandum from Michael F. Randazzo, docket no. 90–6; Declaration of Mary Dandridge, docket no. 104 ("Dandridge Declaration") at ¶ 2; February 9, 2018, Memorandum from Mary Dandridge, docket no. 104; *see also* O'Donnell Declaration, at ¶ 6. Defendant argues that these soldiers would not have received interim security clearances if the challenged policy was still in place.[7]

### D. Plaintiffs provide evidence that Defendant is still applying the challenged policy in practice which has caused setbacks to their careers.

Notwithstanding Defendant's argument that the challenged policy is no longer in place, other MAVNI soldiers have still not received interim clearances and have submitted evidence that they have recently been subjected to stricter screening standards than other, non-MAVNI soldiers. *See* Xiong Declaration, at ¶ 7 (suggesting Defendant is requiring a second CI interview); Singh Declaration, at ¶¶ 9–10 (stating that he was denied an interim security clearance on March 5, 2018, as "I am still not eligible for an interim clearance because I am a MAVNI.").

---

[7] Plaintiffs filed the Motion in November 2017 alleging two plaintiffs, Keigni di Satchou and Valdeta Mehanja had been denied security clearances. Satchou, a native of Cameroon enlisted in the Army under the MAVNI program in January 2014 and has been a citizen since August 2014. Di Satchou Declaration, docket no. 80–2 at ¶¶ 2–3. His interim clearance was not approved until January 22, 2018. O'Donnell Declaration, at ¶ 6. Similarly, Mehanja was unable to obtain an interim secret clearance until February 9, 2018. Dandridge Declaration, at ¶ 2. These facts strongly suggest the clearances were granted in response to the Motion and corresponding allegations in the Complaint.

ORDER - 9

Regardless of whether their interim security clearance requests were ultimately granted, the delays experienced by the MAVNI soldiers in securing their clearance determinations have caused significant setbacks to their careers. *See* Xiong Declaration, at ¶ 9 ("I enlisted in the Army through the MAVNI program going on two and a half years ago. [Defendant's] failure to issue me a clearance is preventing me from providing the professional dental services the Army recruited me to provide in the first place; wasting my time, skills and talents; [and] derailing my military career . . . ."); Declaration of "Patrick" Dongwoo Kim, docket no. 105–5 ("Kim Declaration")[8] ("I was supposed to deploy with my United to the 595 Brigade in Kuwait on March 9, 2018. However, I was told on February 15, 2018 that I cannot get a clearance because I am a MAVNI soldier in my first term of enlistment and that I cannot deploy without a security clearance. . . . Not deploying will adversely affect my military career, prevent me from serving my country, and substantially and adversely affect my pay."); Zhidong Declaration, at ¶¶ 7–8. ("I inquired about receiving an interim clearance as many other officer candidates in my class were commissioned with only an interim clearance. In late January or early February 2018, I was orally told by phone . . . that I am not eligible for an interim clearance because I am a MAVNI. . . . My lack of a security clearance and my resulting inability to commission as an officer is directly harming my career; preventing me from performing the responsibilities for the Army that I was trained for at OCS; underutilizing

---

[8] Mr. Kim is a native of South Korea who came to the United States at age 16 to attend high school. He attended Texas A&M University for several years before leaving to enlist in the Army Reserve through the MAVNI program. Kim Declaration at ¶ 2.

my skills and talents and willingness to work hard; and dramatically reducing my pay."); Singh Declaration, at ¶ 12 ("I also recently requested an interim clearance but I was told that I am ineligible for an interim clearance. Obviously, my promotion to officer would allow me to better use my talents and education to benefit the Army; would advance my military career; and would substantially increase my earnings.").

Valdeta Mehanja further describes the consequences of these setbacks as follows:

> I had planned to make the Army my lifetime career. As the months and years roll by without a security clearance, it is less and less likely that I will remain in the Army. As time goes by, I continue to lose currency in all my flight ratings, which makes me less competitive for a Warrant Officer 153A position and less employable as a civilian pilot. I had expected the opportunity to go apply to Warrant Officer school and fly for the Army in my first term of enlistment. Now it appears I would have to re-enlist for another six years following two years of flight training, assuming I am ever allowed to apply for and be selected for flight school.

Mehanja Declaration, at ¶ 29.

Through the Motion, Plaintiffs seek the Court's help in remedying these impediments. The Motion seeks to require Defendant to grant MAVNI soldiers interim security clearances on the same terms, conditions, and criteria as all other soldiers—so that they have an equal opportunity to advance in their military careers in the same way as all non-MAVNI soldiers.

**<u>Discussion</u>**

To succeed on a motion for preliminary injunctive relief, plaintiff bears the burden of "establish[ing] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, these elements are balanced so that "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (alteration in original) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

The Court is satisfied that Plaintiffs are likely to succeed on the merits of their equal protection claim. Defendant's position that the interim security policy no longer exists is contrary to the evidence before the Court and the procedural history of this case. Notwithstanding Defendant's issuance of the Kurta Memo and follow-on guidance purporting to revoke the challenged policy, Plaintiffs have presented evidence demonstrating that, as recently as March 8, 2018, MAVNI soldiers have still been unable to advance in their military careers because they cannot obtain interim security clearances under the same terms, conditions, or criteria as non-MAVNI soldiers.

This evidence establishes that, even though Defendant may have attempted to revoke the challenged policy, individual decision makers responsible for determining interim security requests are still failing to consider requests from MAVNI soldiers under the same terms, conditions, and criteria as non-MAVNI soldiers. Moreover, the record before the Court shows a pattern in which Defendant purports to modify or revoke a challenged policy but, subsequent to that modification or revocation, officials continue to deny MAVNI soldiers interim clearances pursuant to the challenged policy. That Defendant continues to treat MAVNI soldiers differently than all other soldiers seeking

interim security clearances—even though the MAVNI soldiers are otherwise qualified to receive these clearances—is enough to demonstrate that Plaintiffs are likely to succeed on the merits for purposes of the instant Motion. *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1063–65 (9th Cir. 2014) ("Plaintiffs may prevail on their equal protection claim by showing 'that a class that is similarly situated has been treated disparately.'" (quoting *Christian Gospel Church, Inc. v. City and Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990)).

The unequal treatment experienced by the MAVNI soldiers and their failure to receive interim security clearances on equal terms has caused, and will continue to cause, irreparable harm. Many of these MAVNI soldiers are highly educated and experienced professionals Defendant specifically recruited because of their specialties. Defendant continues to limit these soldiers' military careers by failing to process their security clearance requests in the same way as requests from non-MAVNI peers. Among other setbacks, this limitation has precluded MAVNI soldiers from performing in the roles they were recruited for, prevented them from advancing in their careers, spoiled the currency of their qualifications and training, and reduced the amount of pay they are eligible to receive.

MAVNI soldiers who enlisted in the Army will continue to suffer irreparable harm in the absence of a preliminary injunction enjoining Defendant from enforcing the challenged policy. *See Arizona Dream Act Coal.*, 757 F.3d at 1068 ("Setbacks early in their careers are likely to haunt Plaintiffs for the rest of their lives."); *Enyart v. Nat'l*

*Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) ("loss of opportunity to pursue [one's] chosen profession" constitutes irreparable harm).

The Court is further satisfied that serious questions going to the merits of this dispute have been raised and that the balance of the equities strongly favors a preliminary injunction. Defendant claims that it has already revoked the challenged policy. If true, Defendant will be little harmed, if at all, in requiring its personnel to recognize and adopt the revocation and consider interim security clearances from MAVNI soldier on the same terms and conditions as all other soldiers. The scope of this relief is therefore necessarily limited, as it will only apply to situations in which Defendant is still applying the challenged policy.

MAVNI soldiers still seeking interim clearances will benefit from an injunction by being considered for interim clearances under the same criteria imposed on all soldiers. Assuming these soldiers meet the remaining, legitimate criteria to receive an interim security clearance, they will be able to advance in their military careers and serve in the specialized roles they were recruited for. Plaintiffs have met their burden of demonstrating they are entitled to a preliminary injunction enjoining Defendant from applying the challenged policy.

**Conclusion**

Plaintiffs have demonstrated they are entitled to a preliminary injunction. MAVNI soldiers are still unable to receive interim security clearances under the same terms, conditions, and criteria Defendant applies to non-MAVNI soldiers.

NOW THEREFORE:

Defendant is prohibited from enforcing any rule, policy, or guidance memoranda preventing U.S. citizen MAVNI soldiers enlisted in the Army as a class from equal treatment in connection with their applications for interim security clearances. Defendant shall consider requests for interim security clearance eligibility for U.S. citizen MAVNI soldiers in the same manner as it would for any other soldier who is a U.S. citizen.

IT IS SO ORDERED.

Dated this 11th day of April, 2018.

*Thomas S. Zilly*

Thomas S. Zilly
United States District Judge